# 18-2404

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

THE ESTATE OF STANLEY KAUFFMANN,

*Plaintiff-Appellant,*

—against—

ROCHESTER INSTITUTE OF TECHNOLOGY,

*Defendant-Third-Party-*
*Plaintiff-Appellee,*

—against—

ROBERT J. CARDULLO,

*Third-Party-Defendant.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

**JOINT APPENDIX**
**VOLUME I OF III**
**(Pages A-1 to A-200)**

JEREMY P. OCZEK
BOND, SCHOENECK & KING, PLLC
Avant Building
200 Delaware Avenue, Suite 900
Buffalo, New York 14202
(716) 416-7000

MARY P. MOORE
BOND, SCHOENECK & KING, PLLC
350 Linden Oaks, Third Floor
Rochester, New York 14625
(585) 362-4700

*Attorneys for Defendant-Appellee*

KENNETH P. NORWICK
NORWICK & SCHAD
110 East 59th Street
New York, New York 10022
(212) 751-4440

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

PAGE

District Court Docket Entries ............................................ A-1

Complaint for Copyright Infringement, dated April 5, 2016 ............. A-12

    Exhibit A to Complaint—
    Biography of Stanley Kauffmann ................................... A-19

    Exhibit B to Complaint—
    Press Release issued by RIT, dated October 23, 2015 ............... A-22

    Exhibit C to Complaint—
    Table of Contents, along with other "Front Matter" of
    "The Millennial Critic Stanley Kauffmann on Film 1999-2000" ..... A-25

    Exhibit D to Complaint—
    Article, "Film Review by Noted Critic a Rerun, Retracted" ......... A-35

    Exhibit E to Complaint—
    Article, "Where Did I Read That Before?", dated April 18, 2012 .... A-39

    Exhibit F to Complaint—
    Article, "A Fake is a Fake", dated April 3, 2015 .................... A-44

    Exhibit G to Complaint—
    Retraction, "Whose Life Is It, Anyway?: Shaw, *The Doctor's
    Dilemma* and Modern Tragedy" ................................... A-47

    Exhibit H to Complaint—
    Retraction, "Play Doctor, Doctor Death: Shaw, Ibsen, and
    Modern Tragedy" ................................................. A-50

    Exhibit I to Complaint—
    Retraction: Married to the Job: Ermanno Olmi's "Il Posto" and
    "I Fidanzati" Reconsidered ........................................ A-53

    Exhibit J to Complaint—
    Apology, "The Hudson Review"
    (Hudson Review Table of Contents) ................................ A-56

ii

PAGE

Exhibit K to Complaint—
Email from Bruce Austin to Henry Thayer,
dated November 30, 2015 .......................................... A-59

Exhibit L to Complaint—
Letter from Christine A. McGuinness to Robert Cardullo,
dated February 12, 2014 .......................................... A-61

Exhibit M to Complaint—
Email from Robert Cardullo to Henry Thayer,
dated December 3, 2015........................................... A-63

Answer and Third-Party Complaint, dated February 10, 2017............ A-65

Summons on a Third-Party Complaint, dated February 10, 2017 ......... A-79

Defendant and Third-Party Plaintiff Rochester Institute of
    Technology's Notice of Motion for Summary Judgment,
    dated December 4, 2017........................................... A-81

Defendant and Third-Party Plaintiff Rochester Institute of
    Technology's Local Rule 56 Statement of Undisputed
    Material Facts, dated December 4, 2017 .......................... A-83

Appendix to Defendant's Local Rule 56 Statement of Undisputed
    Material Facts, dated December 4, 2017 .......................... A-87

Declaration of Mary P. Moore, Defendant and Third-Party Plaintiff
    Rochester Institute of Technology, in Support of Motion for
    Summary Judgment, dated December 4, 2017 ....................... A-90

Exhibit 1 to Moore Declaration—
Complaint for Copyright Infringement, dated April 5, 2016,
without Exhibits ................................................. A-96

Exhibit 2 to Moore Declaration—
Answer and Third-Party Complaint, dated February 10, 2017 ..... A-104

Exhibit 3 to Moore Declaration—
Certificate of Registration...................................... A-119

iii

PAGE

Exhibit 4 to Moore Declaration—
Subpoena Duces Tecum served on The New Republic ............ A-128

Exhibit 5 to Moore Declaration—
Subpoena Duces Tecum served on Brandt & Hochman............ A-133

Exhibit 6 to Moore Declaration—
Email from Bruce Austin to Henry Thayer,
dated November 30, 2015 ........................................ A-139

Exhibit 7 to Moore Declaration—
Email from Henry Thayer to Bruce Austin,
dated November 24, 2015 ........................................ A-142

Exhibit 8 to Moore Declaration—
Transfer Documents produced by Brandt & Hochman............. A-144

Exhibit 9 to Moore Declaration—
Transfer Documents produced by Brandt & Hochman
in Response to the Subpoena .................................... A-158

Exhibit 10 to Moore Declaration—
Email produced by Brandt & Hochman containing
Mr. Kauffmann's Obituary ....................................... A-191

Exhibit 11 to Moore Declaration—
Letter produced by  Plaintiff .................................... A-198

Declaration of David Myer, Controller for The New Republic,
in Support of Motion for Summary Judgment,
executed on November 30, 2017 ................................. A-201

Exhibit A to Myer Declaration—
Letter Agreement, dated March 22, 2004......................... A-203

Exhibit B to Myer Declaration—
Letter from Laura Obolensky to Stanley Kauffmann,
dated April 2, 1993 ............................................. A-205

iv

PAGE

Defendant and Third-Party Plaintiff Rochester Institute of
    Technology's Memorandum of Law in Support of Its Motion for
    Summary Judgment, dated December 4, 2017 .................... A-207

Notice of Withdrawal of Certain Affirmative Defenses,
    dated December 13, 2017 ....................................... A-225

Plaintiff's Notice of Cross-Motion for an Order Granting Partial
    Summary Judgment to it Establishing Defendant's Liability for
    Copyright Infringement, dated January 12, 2018.................. A-227

Plaintiff's Rule 56 Statement of Undisputed Material Facts,
    dated January 12, 2018......................................... A-229

Declaration of Kenneth P. Norwick in Support of Cross-Motion for
    an Order Granting Partial Summary Judgment to it Establishing
    Defendant's Liability for Copyright Infringement,
    dated January 12, 2018......................................... A-242

    Exhibit A to Norwick Declaration—
    Front and Back Covers of the Infringing Book.................... A-258

    Exhibit B to Norwick Declaration—
    The New Republic's Eight-Page Tribute to Stanley Kauffmann.... A-261

    Exhibit C to Norwick Declaration—
    The New York Times' Obituary for Stanley Kauffmann........... A-270

    Exhibit D to Norwick Declaration—
    Referenced: Complaint for Copyright Infringement,
    dated April 5, 2016 ........................................... A-276

    Exhibit E to Norwick Declaration—
    Letter from Christine A. McGuinness to Robert Cardullo,
    dated February 12, 2014 ....................................... A-277

    Exhibit F to Norwick Declaration—
    Email from Stanley Kauffmann to Robert Cardullo,
    dated April 22, 2013 .......................................... A-279

v

PAGE

Exhibit G to Norwick Declaration—
Letter from Kenneth P. Norwick, Esq. to Marilyn Schleyer,
dated January 4, 2016, with attachments ......................... A-281

Exhibit H to Norwick Declaration—
Email from Robert Cardullo to Henry Thayer,
dated December 3, 2015......................................... A-292

Exhibit I to Norwick Declaration—
Email from Robert Cardullo to Kenneth P. Norwick, Esq.,
dated March 4, 2017 ........................................... A-294

Exhibit J to Norwick Declaration—
Email from Robert Cardullo to Jeremy Oczek,
dated March 3, 2017 ........................................... A-296

Exhibit K to Norwick Declaration—
Letter Agreement, dated March 22, 2004........................ A-298

Exhibit L to Norwick Declaration—
Author Agreement for Back of the Book, dated March 9, 2007 .... A-300

Declaration of Robert Marx, Executor of the Estate of Stanley
Kauffmann, in Support of Cross-Motion for an Order Granting
Partial Summary Judgment to it Establishing Defendant's
Liability for Copyright Infringement, dated January 2, 2018 ...... A-305

Exhibit A to Marx Declaration—
Relevant Documents ........................................... A-311

Exhibit B to Marx Declaration—
Email from Stanley Kauffmann to Robert Cardullo,
dated April 22, 2013 ........................................... A-318

Declaration of Henry Thayer in Support of Cross-Motion for an
Order Granting Partial Summary Judgment to it Establishing
Defendant's Liability for Copyright Infringement,
dated December 20, 2017 ...................................... A-320

vi

PAGE

Declaration of Leon Wieseltier in Support of Cross-Motion for an
    Order Granting Partial Summary Judgment to it Establishing
    Defendant and Third-Party Plaintiff Rochester Institute of
    Technology's Liability for Copyright Infringement,
    dated December 15, 2017, with attachment ....................... A-322

Plaintiff's Memorandum of Law in Opposition to Defendant and
    Third-Party Plaintiff Rochester Institute of Technology's Motion
    for Summary Judgment and in Support of Its Cross-Motion for
    Partial Summary Judgment on Liability, dated January 12, 2018 ... A-325

Defendant and Third-Party Plaintiff Rochester Institute of
    Technology's Memorandum of Law in Further Support
    of Its Motion for Summary Judgment & in Opposition to
    Plaintiff's Cross-Motion for Partial Summary Judgment,
    dated February 26, 2018 ........................................ A-361

Declaration of Mary P. Moore, for Defendant and Third-Party
    Plaintiff Rochester Institute of Technology, in Further
    Support of Motion for Summary Judgment and in Opposition
    to Plaintiff's Cross-Motion for Partial Summary Judgment,
    executed on February 26, 2018 ................................. A-394

    Exhibit 1 to Moore Declaration—
    Plaintiff's Initial Disclosures, dated July 26, 2017 ................ A-398

    Exhibit 2 to Moore Declaration—
    License Agreements Produced by Brandt & Hochman that
    Purport to License Articles that were Published by The New
    Republic between the years 1959-1965 and 1967-1979 ............ A-403

    Exhibit 3 to Moore Declaration—
    License Agreements produced by Brandt & Hochman Licensing
    Articles that were First Published by The New Republic
    in the 1980s .................................................. A-457

    Exhibit 4 to Moore Declaration—
    Publication Agreement for Distinguishing Features ............... A-470

vii

PAGE

Exhibit 5 to Moore Declaration—
Publication Agreement for *Regarding Film*...................... A-475

Exhibit 6 to Moore Declaration—
Cover Pages, Copyright Notices, and Prefaces contained in
*A World On Film*, *Figures of Light*, *Living Images*,
*Persons of the Drama*, and *Before My Eyes* ...................... A-480

Exhibit 7 to Moore Declaration—
Cover Pages, Copyright Notices, and Prefaces contained in
*Theatre Criticisms*, *Field of View*, *Distinguishing Features*,
and *Regarding Film*............................................. A-501

Defendant and Third-Party Plaintiff Rochester Institute of
  Technology's Opposing Statement in Response to
  Plaintiff's Rule 56 Statement of Undisputed Material
  Facts, dated February 26, 2018 .................................. A-515

Plaintiff's Reply Memorandum of Law in Support of Its
  Cross-Motion for Partial Summary Judgment on Liability,
  dated March 26, 2018 ........................................... A-533

Transcript of Proceedings, dated July 26, 2018 ...................... A-561

Decision and Order of the Honorable Charles J. Siragusa,
  dated August 6, 2018 ........................................... A-598

Judgment Appealed From, dated August 7, 2018 ...................... A-607

Plaintiff's Notice of Appeal, dated August 14, 2018.................. A-608

# A-1

APPEAL,CASREF,MEDIATION

# U.S. DISTRICT COURT
## U.S. District Court, Western District of New York (Rochester)
## CIVIL DOCKET FOR CASE #: 6:17-cv-06061-CJS-MWP

The Estate of Stanley Kauffmann v. Rochester Institute of Technology

Assigned to: Hon. Charles J. Siragusa

Referred to: Hon. Marian W. Payson

Case in other court: New York Southern, 1:16-cv-02509

Cause: 17:501 Copyright Infringement

Date Filed: 01/30/2017

Jury Demand: Defendant

Nature of Suit: 820 Copyright

Jurisdiction: Federal Question

**Plaintiff**

**The Estate of Stanley Kauffmann**          represented by  **Kenneth P. Norwick**
Norwick Schad & Goering
110 East 59th Street
29th Floor
New York, NY 10022
(212) 751-4440
Fax: (212) 604-9997
Email: ken@norwickschad.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Rochester Institute of Technology**          represented by  **Jeremy P. Oczek**
Bond, Schoeneck & King, PLLC
Avant Building
200 Delaware Avenue
Suite 900
Buffalo, NY 14202
716-416-7037
Fax: 716-416-7337
Email: jpoczek@bsk.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mary Patricia Moore**
Bond Schoeneck & King PLLC
350 Linden Oaks
3rd Floor
Rochester, NY 14625
585-362-4724
Fax: 585-362-4774
Email: mmoore@bsk.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Alan Weiss**

Holland & Knight LLP (NY)
31 West 52nd Street
New York, NY 10019
212-513-3200
Fax: 212-385-9010
*TERMINATED: 09/11/2017*

**Michael D. Hess**
Michael D. Hess, Esq.,
203 East 72nd Street
New York, NY 10021
(917) 207-4405
Fax: (212) 931-7342
*TERMINATED: 09/11/2017*

**ThirdParty Plaintiff**

**Rochester Institute of Technology**            represented by   **Jeremy P. Oczek**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Mary Patricia Moore**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Charles Alan Weiss**
                                                                  (See above for address)
                                                                  *TERMINATED: 09/11/2017*

                                                                  **Michael D. Hess**
                                                                  (See above for address)
                                                                  *TERMINATED: 09/11/2017*

V.

**ThirdParty Defendant**

**Robert J. Cardullo**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/05/2016 | 1 | COMPLAINT against Rochester Institute of Technology. (Filing Fee $ 400.00, Receipt Number 0208-12146817)Document filed by The Estate of Stanley Kauffmann. (Attachments: # 1 exhibit, # 2 exhibit, # 3 exhibit, # 4 exhibit, # 5 exhibit, # 6 exhibit, # 7 exhibit, # 8 exhibit, # 9 exhibit, # 10 exhibit, # 11 exhibit, # 12 exhibit, # 13 exhibit) (Norwick, Kenneth) [Transferred from nysd on 1/30/2017.] (Entered: 04/05/2016) |
| 04/05/2016 | 2 | **FILING ERROR - DEFICIENT PLEADING -PDF ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to Rochester Institute of Technology, re: 1 Complaint,. Document filed by The Estate of Stanley Kauffmann. (Norwick, Kenneth) Modified on 4/6/2016 (dgo). [Transferred from nysd on 1/30/2017.] (Entered: 04/05/2016) |
| 04/05/2016 | 3 | CIVIL COVER SHEET filed. (Norwick, Kenneth) [Transferred from nysd on 1/30/2017.] |

| | | |
|---|---|---|
| | | (Entered: 04/05/2016) |
| 04/06/2016 | | ***NOTICE TO ATTORNEY TO SUBMIT AO 121 FORM COPYRIGHT. Notice to Attorney Kenneth P. Norwick to submit a completed AO 121 Form Copyright to court for review. Use the event type AO 121 Copyright - Notice of Submission by Attorney found under the event list Other Documents. (dgo) [Transferred from nysd on 1/30/2017.] (Entered: 04/06/2016) |
| 04/06/2016 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Naomi Reice Buchwald. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges/District. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (dgo) [Transferred from nysd on 1/30/2017.] (Entered: 04/06/2016) |
| 04/06/2016 | | Magistrate Judge Sarah Netburn is so designated. (dgo) [Transferred from nysd on 1/30/2017.] (Entered: 04/06/2016) |
| 04/06/2016 | | Case Designated ECF. (dgo) [Transferred from nysd on 1/30/2017.] (Entered: 04/06/2016) |
| 04/06/2016 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney to RE-FILE Document No. 2 Request for Issuance of Summons,. The filing is deficient for the following reason(s): the form used for the summons is not the official A.O. Summons form;. Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (dgo) [Transferred from nysd on 1/30/2017.] (Entered: 04/06/2016) |
| 04/06/2016 | 4 | AO 121 FORM COPYRIGHT - NOTICE OF SUBMISSION BY ATTORNEY. AO 121 Form Copyright for case opening submitted to court for review.(Norwick, Kenneth) [Transferred from nysd on 1/30/2017.] (Entered: 04/06/2016) |
| 04/06/2016 | 5 | REQUEST FOR ISSUANCE OF SUMMONS as to Rochester Institute of Technology, re: 1 Complaint,. Document filed by The Estate of Stanley Kauffmann. (Norwick, Kenneth) [Transferred from nysd on 1/30/2017.] (Entered: 04/06/2016) |
| 04/11/2016 | 6 | ELECTRONIC SUMMONS ISSUED as to Rochester Institute of Technology. (dgo) [Transferred from nysd on 1/30/2017.] (Entered: 04/11/2016) |
| 04/11/2016 | 7 | AO 121 FORM COPYRIGHT - CASE OPENING - SUBMITTED. In compliance with the provisions of 17 U.S.C. 508, the Register of Copyrights is hereby advised that a court action has been filed on the following copyright(s) in the U.S. District Court Southern District of New York. Form e-mailed to Register of Copyrights. (dgo) [Transferred from nysd on 1/30/2017.] (Entered: 04/11/2016) |
| 04/13/2016 | 8 | NOTICE OF APPEARANCE by Charles Alan Weiss on behalf of Rochester Institute of Technology. (Weiss, Charles) [Transferred from nysd on 1/30/2017.] (Entered: 04/13/2016) |
| 04/22/2016 | 9 | NOTICE OF APPEARANCE by Michael D. Hess on behalf of Rochester Institute of Technology. (Hess, Michael) [Transferred from nysd on 1/30/2017.] (Entered: 04/22/2016) |
| 05/02/2016 | 10 | LETTER MOTION for Conference *in advance of a motion to dismiss or in the alternative to transfer this matter,* addressed to Judge Naomi Reice Buchwald from Charles A. Weiss dated May 2, 2016. Document filed by Rochester Institute of Technology.(Weiss, Charles) [Transferred from nysd on 1/30/2017.] (Entered: 05/02/2016) |
| 05/02/2016 | 11 | LETTER RESPONSE to Motion addressed to Judge Naomi Reice Buchwald from |

| | | |
|---|---|---|
| | | Kenneth P. Norwick dated May 2, 2016 re: 10 LETTER MOTION for Conference *in advance of a motion to dismiss or in the alternative to transfer this matter,* addressed to Judge Naomi Reice Buchwald from Charles A. Weiss dated May 2, 2016. . Document filed by The Estate of Stanley Kauffmann. (Norwick, Kenneth) [Transferred from nysd on 1/30/2017.] (Entered: 05/02/2016) |
| 05/11/2016 | 12 | LETTER addressed to Judge Naomi Reice Buchwald from Charles A. Weiss dated May 11, 2016 re: in response to Plaintiff's letter dated May 2, 2016 (Doc #11). Document filed by Rochester Institute of Technology.(Weiss, Charles) [Transferred from nysd on 1/30/2017.] (Entered: 05/11/2016) |
| 05/12/2016 | 13 | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Telephone Conference held on 5/12/2016. (Harris, Karen) [Transferred from nysd on 1/30/2017.] (Entered: 05/13/2016) |
| 05/27/2016 | 14 | LETTER MOTION for Extension of Time *to File Motion to Dismiss or Transfer,* addressed to Judge Naomi Reice Buchwald from Charles A. Weiss dated May 27, 2016. Document filed by Rochester Institute of Technology.(Weiss, Charles) [Transferred from nysd on 1/30/2017.] (Entered: 05/27/2016) |
| 05/31/2016 | 15 | ORDER granting 14 Letter Motion for Extension of Time. SO ORDERED. Motions due by 6/9/2016. (Signed by Judge Naomi Reice Buchwald on 5/31/2016) (ama) [Transferred from nysd on 1/30/2017.] (Entered: 06/01/2016) |
| 06/09/2016 | 16 | MOTION to Dismiss ., MOTION to Change Venue . Document filed by Rochester Institute of Technology.(Weiss, Charles) [Transferred from nysd on 1/30/2017.] (Entered: 06/09/2016) |
| 06/09/2016 | 17 | MEMORANDUM OF LAW in Support re: 16 MOTION to Dismiss . MOTION to Change Venue . . Document filed by Rochester Institute of Technology. (Weiss, Charles) [Transferred from nysd on 1/30/2017.] (Entered: 06/09/2016) |
| 06/09/2016 | 18 | DECLARATION of Laura Diponzio Heise in Support re: 16 MOTION to Dismiss . MOTION to Change Venue .. Document filed by Rochester Institute of Technology. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Weiss, Charles) [Transferred from nysd on 1/30/2017.] (Entered: 06/09/2016) |
| 06/10/2016 | 19 | DECLARATION of Laura Diponzio Heise (to provide more legible copy of Exhibit A) in Support re: 16 MOTION to Dismiss . MOTION to Change Venue .. Document filed by Rochester Institute of Technology. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Weiss, Charles) [Transferred from nysd on 1/30/2017.] (Entered: 06/10/2016) |
| 06/30/2016 | 20 | REPLY AFFIRMATION of Kenneth P. Norwick in Opposition re: 16 MOTION to Dismiss . MOTION to Change Venue .. Document filed by The Estate of Stanley Kauffmann. (Attachments: # 1 exhibit, # 2 exhibit, # 3 exhibit, # 4 exhibit, # 5 exhibit, # 6 exhibit, # 7 exhibit, # 8 exhibit, # 9 exhibit)(Norwick, Kenneth) [Transferred from nysd on 1/30/2017.] (Entered: 06/30/2016) |
| 06/30/2016 | 21 | DECLARATION of Robert Marx in Opposition re: 16 MOTION to Dismiss . MOTION to Change Venue .. Document filed by The Estate of Stanley Kauffmann. (Norwick, Kenneth) [Transferred from nysd on 1/30/2017.] (Entered: 06/30/2016) |
| 06/30/2016 | 22 | DECLARATION of Phillip Blumberg in Opposition re: 16 MOTION to Dismiss . MOTION to Change Venue .. Document filed by The Estate of Stanley Kauffmann. (Norwick, Kenneth) [Transferred from nysd on 1/30/2017.] (Entered: 06/30/2016) |
| 06/30/2016 | 23 | MEMORANDUM OF LAW in Opposition re: 16 MOTION to Dismiss . MOTION to Change Venue . . Document filed by The Estate of Stanley Kauffmann. (Norwick, Kenneth) [Transferred from nysd on 1/30/2017.] (Entered: 06/30/2016) |

| 07/14/2016 | 24 | REPLY MEMORANDUM OF LAW in Support re: 16 MOTION to Dismiss . MOTION to Change Venue . . Document filed by Rochester Institute of Technology. (Weiss, Charles) [Transferred from nysd on 1/30/2017.] (Entered: 07/14/2016) |
| 01/20/2017 | 25 | MEMORANDUM AND ORDER denying as moot 16 Motion to Dismiss; granting 16 Motion to Change Venue. For the foregoing reasons, RIT's motion to transfer venue to the Western District of New York pursuant to 28 U.S.C. § 1404(a) is granted. The remainder of RIT's motion is denied as moot. (As further set forth in this Order.) (Signed by Judge Naomi Reice Buchwald on 1/19/2017) (mro) Modified on 1/23/2017 (mro). [Transferred from nysd on 1/30/2017.] (Entered: 01/20/2017) |
| 01/20/2017 |  | CASE TRANSFERRED OUT ELECTRONICALLY from the U.S.D.C. Southern District of New York to the United States District Court - Western District of New York (mro) [Transferred from nysd on 1/30/2017.] (Entered: 01/27/2017) |
| 01/30/2017 | 26 | Case transferred in from District of New York Southern; Case Number 1:16-cv-02509. (Entered: 01/30/2017) |
| 01/30/2017 |  | AUTOMATIC REFERRAL to Mediation The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution(TF) (Entered: 01/30/2017) |
| 01/30/2017 |  | Notice of Availability of Magistrate Judge: A United States Magistrate of this Court is available to conduct all proceedings in this civil action in accordance with 28 U.S.C. 636c and FRCP 73. The Notice, Consent, and Reference of a Civil Action to a Magistrate Judge form (AO-85) is available for download at http://www.uscourts.gov/services-forms/forms. (TF) (Entered: 01/30/2017) |
| 01/30/2017 |  | E-Filing Notification: If you are not admitted in the WDNY you must either file a motion to appear Pro hac vice or seek admission in this District and register to file and receive service of documents electronically through the district's Case Management/Electronic Case Filing system (CM/ECF). The registration form and attorney admission instructions and forms can be located on the Court's Public Web site at www.nywd.uscourts.gov (TF) (Entered: 01/30/2017) |
| 02/02/2017 | 27 | NOTICE of Appearance by Jeremy P. Oczek on behalf of Rochester Institute of Technology (Oczek, Jeremy) (Entered: 02/02/2017) |
| 02/02/2017 | 28 | STIPULATION *EXTENDING TIME TO ANSWER OR OTHERWISE RESPOND TO THE COMPLAINT up to and including February 10, 2017* by Rochester Institute of Technology. (Oczek, Jeremy) (Entered: 02/02/2017) |
| 02/10/2017 | 29 | ANSWER to 1 Complaint, *and Affirmative Defenses*, THIRD PARTY COMPLAINT against Robert J. Cardullo by Rochester Institute of Technology. (Attachments: # 1 Summons for Third Party Defendant)(Oczek, Jeremy) (Entered: 02/10/2017) |
| 02/13/2017 | 30 | Third Party Summons Issued as to third party defendant Robert J. Cardullo. (TF) (Entered: 02/13/2017) |
| 02/17/2017 | 31 | TEXT ORDER REFERRING CASE to Magistrate Judge Hon. Jonathan W. Feldman.The Magistrate Judge is hereby designated to act in this case as follows: Pursuant to 28 U.S.C. Section 636(b)(1)(A) and (B), all pre-trial matters in this case are referred to the above-named United States Magistrate Judge, including but not limited to: (1) conduct of a scheduling conference and entry of a scheduling order pursuant to Fed. R. Civ. P. 16, (2) hearing and disposition of all non-dispositive motions or applications, (3) supervision of discovery, and (4) supervision of all procedural matters involving the aforementioned or involving the preparation of the case or any matter therein for consideration by the District Judge. All non-dispositive motions or applications shall be filed with the Clerk and made returnable before the Magistrate Judge. The parties are encouraged to consider the |

| | | |
|---|---|---|
| | | provisions of 28 U.S.C. Section 636(c) governing consent to either partial or complete disposition of the case, including trial if necessary, by the Magistrate Judge. Consent forms are available from the office of the Magistrate Judge or the office of the Clerk of Court. IT IS SO ORDERED. Signed by Hon. Charles J. Siragusa on 2/17/17. (KJA) (Entered: 02/17/2017) |
| 02/21/2017 | 32 | ORDER, Scheduling Conference set for 4/12/2017 10:30 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Jonathan W. Feldman. Signed by Hon. Jonathan W. Feldman on 02/21/2017. (JKT) (Entered: 02/21/2017) |
| 02/23/2017 | 33 | TEXT ORDER, at the request of plaintiff's counsel, and with no objection from the defense, re 32 Scheduling Conference reset for 7/12/2017 10:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Jonathan W. Feldman. Plaintiff's counsel my appear by telephone and is directed to dial the Court's chambers at (585) 613-4070. Signed by Hon. Jonathan W. Feldman on 02/23/2017. (JKT) (Entered: 02/23/2017) |
| 03/01/2017 | 34 | TEXT ORDER vacating 31 Order Referring Case to Magistrate Judge Jonathan W. Feldman due to conflict. Signed by Hon. Charles J. Siragusa on 3/1/17. (KJA) (Entered: 03/01/2017) |
| 03/01/2017 | 35 | TEXT ORDER REFERRING CASE to Magistrate Judge Hon. Marian W. Payson. The Magistrate Judge is hereby designated to act in this case as follows: Pursuant to 28 U.S.C. Section 636(b)(1)(A) and (B), all pre-trial matters in this case are referred to the above-named United States Magistrate Judge, including but not limited to: (1) conduct of a scheduling conference and entry of a scheduling order pursuant to Fed. R. Civ. P. 16, (2) hearing and disposition of all non-dispositive motions or applications, (3) supervision of discovery, and (4) supervision of all procedural matters involving the aforementioned or involving the preparation of the case or any matter therein for consideration by the District Judge. All non-dispositive motions or applications shall be filed with the Clerk and made returnable before the Magistrate Judge. The parties are encouraged to consider the provisions of 28 U.S.C. Section 636(c) governing consent to either partial or complete disposition of the case, including trial if necessary, by the Magistrate Judge. Consent forms are available from the office of the Magistrate Judge or the office of the Clerk of Court. IT IS SO ORDERED. Signed by Hon. Charles J. Siragusa on 3/1/17. (KJA) (Entered: 03/01/2017) |
| 03/02/2017 | | Scheduling Conference set for July 12, 2017 is canceled. Signed by Hon. Jonathan W. Feldman on 03/02/2017. (JKT) (Entered: 03/02/2017) |
| 03/07/2017 | 36 | ORDER **(Scheduling Conference set for 7/12/2017 10:20 AM before Hon. Marian W. Payson.)** Signed by Hon. Marian W. Payson on 3/7/17. (KAH) (Entered: 03/07/2017) |
| 03/20/2017 | 37 | AFFIDAVIT of Service for Third-Party Complaint served on Robert J. Cardullo on 03/03/2017, filed by Rochester Institute of Technology. (Oczek, Jeremy) (Entered: 03/20/2017) |
| 05/12/2017 | 38 | NOTICE of Appearance by Mary Patricia Moore on behalf of Rochester Institute of Technology (Moore, Mary) (Entered: 05/12/2017) |
| 05/15/2017 | 39 | REQUEST for Clerk's Entry of Default by Rochester Institute of Technology against Robert J. Cardullo. (Attachments: # 1 Supplement Declaration in Support, # 2 Text of Proposed Order, # 3 Certificate of Service)(Moore, Mary) (Entered: 05/15/2017) |
| 05/16/2017 | 40 | Clerk's ENTRY OF DEFAULT as to Robert J. Cardullo. (TF) (Entered: 05/16/2017) |
| 07/06/2017 | 41 | DISCOVERY PLAN by Rochester Institute of Technology.(Moore, Mary) (Entered: 07/06/2017) |
| 07/12/2017 | 43 | Minute Entry for proceedings held before Hon. Marian W. Payson: Scheduling Conference |

|  |  | held on 7/12/2017. Appearances: Andrew J. Ryan, Esq., Anthony J. DiOrio, Esq. by telephone, Scott P. Rogoff, Esq. (CAM) (Entered: 07/17/2017) |
|---|---|---|
| 07/14/2017 | 42 | SCHEDULING ORDER (Please Note: This docket text may not contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.) **Status Conference set for 12/6/2017 11:20 AM before Hon. Marian W. Payson.** Stipulation of Selection of Mediator due by 8/21/2017. First Mediation Session due by 9/22/2017. Mediation To End by 11/22/2017. Mandatory Disclosures due by 7/26/2017. Motions to Join Parties/Amend Pleadings due by 8/31/2017. Fact Discovery to be completed by 12/29/2017. Motions to Compel Discovery due by 12/29/2017. Plaintiff Expert Witness ID due by 1/31/2018. Defendant Expert Witness ID due by 2/28/2018. Expert Discovery to be completed by 3/20/2017. Dispositive Motions due by 4/27/2018 (unless plaintiff does not identify experts, in which case dispositive motions would be due by 2/28/2018). Signed by Hon. Marian W. Payson on 7/12/2017. (KAH) (Entered: 07/14/2017) |
| 08/14/2017 | 44 | STIPULATED PROTECTIVE ORDER. Signed by Hon. Marian W. Payson on 8/14/17. (CAM) (Entered: 08/14/2017) |
| 08/22/2017 | 45 | LETTER ORDER granting request to extend the deadline to file the Stipulation of Selection of Mediator to 8/28/2017. (Stipulation of Selection of Mediator due by 8/28/2017.) Signed by Hon. Marian W. Payson on 8/22/2017. (KAH) (Entered: 08/22/2017) |
| 08/28/2017 | 46 | Stipulation-Selection of Mediator by The Estate of Stanley Kauffmann. (Norwick, Kenneth) (Entered: 08/28/2017) |
| 08/28/2017 | 47 | Stipulation-Selection of Mediator by The Estate of Stanley Kauffmann. (Norwick, Kenneth) (Entered: 08/28/2017) |
| 08/29/2017 |  | E-Filing Notification: 46 Stipulation-Selection of Mediator, filed in error, please disregard filing, corrected filing re-filed as document 47 (TF) (Entered: 08/29/2017) |
| 09/11/2017 | 48 | LETTER ORDER granting request of Charles A. Weiss, Esq. and Michael D. Hess, Esq. to be removed from the docket to prevent receipt of orders and notices. Signed by Hon. Marian W. Payson on 9/11/2017. (KAH) (Entered: 09/14/2017) |
| 10/05/2017 | 49 | Mediation Certification by Gary Muldoon(AGB) (Entered: 10/05/2017) |
| 11/29/2017 | 50 | LETTER ORDER (This suggestion will be discussed at the conference on 12/6/2017. The Court will determine at that time whether to schedule another conference to address discovery disputes.) Signed by Hon. Marian W. Payson on 11/29/2017. (KAH) (Entered: 11/29/2017) |
| 11/29/2017 | 51 | LETTER ORDER granting Mr. Norwick's request to appear by telephone for the 12/6/2017 status conference. Signed by Hon. Marian W. Payson on 11/29/2017. (KAH) (Entered: 12/01/2017) |
| 12/04/2017 | 52 | MOTION for Summary Judgment by Rochester Institute of Technology. (Attachments: # 1 Statement of Undisputed Facts, # 2 Appendix to Statement of Undisputed Facts, # 3 Declaration, # 4 Exhibit Exhibit 2 to Declaration of Mary P. Moore, Esq., # 5 Exhibit Exhibit 2 of Declaration of Mary P. Moore, Esq., # 6 Exhibit Exhibit 3 of Declaration of Mary P. Moore, Esq., # 7 Exhibit Exhibit 4 of Declaration of Mary P. Moore, Esq., # 8 Exhibit Exhibit 5 of Declaration of Mary P. Moore, Esq., # 9 Exhibit Exhibit 6 of Declaration of Mary P. Moore, Esq., # 10 Exhibit Exhibit 7 of Declaration of Mary P. Moore, Esq., # 11 Exhibit Exhibit 8 of Declaration of Mary P. Moore, Esq., # 12 Exhibit Exhibit 9 of Declaration of Mary P. Moore, Esq., # 13 Exhibit Exhibit 10 of Declaration of |

|  |  |  |
|---|---|---|
|  |  | Mary P. Moore, Esq., # 14 Exhibit Exhibit 11 of Declaration of Mary P. Moore, Esq., # 15 Declaration, # 16 Memorandum in Support)(Moore, Mary) (Entered: 12/04/2017) |
| 12/06/2017 | 53 | MOTION SCHEDULING ORDER re 52 MOTION for Summary Judgment filed by Rochester Institute of Technology.( Responses due by 1/5/2018. Replies due by 1/19/2018. Motion Hearing set for 5/3/2018 02:15 PM before Hon. Charles J. Siragusa.). Signed by Hon. Charles J. Siragusa on 12/6/17. (KAP) (Entered: 12/06/2017) |
| 12/06/2017 | 54 | Minute Entry for proceedings held before Hon. Marian W. Payson: Status Conference held on 12/6/2017. Appearances: Kenneth P. Norwick, Esq. by telephone; Mary Moore, Esq. (CAM) (Entered: 12/07/2017) |
| 12/13/2017 | 55 | NOTICE by Rochester Institute of Technology *Withdrawing Certain Affirmative Defenses* (Moore, Mary) (Entered: 12/13/2017) |
| 12/19/2017 | 56 | ORDER STAYING DISCOVERY (Counsel shall submit a joint proposed amended scheduling order within fourteen days of the Court's determination of the pending summary judgment motion.) Signed by Hon. Marian W. Payson on 12/19/2017. (KAH) (Entered: 12/21/2017) |
| 12/27/2017 | 57 | LETTER ORDER granting plaintiff's request for extension of time to respond 52 MOTION for Summary Judgment filed by Rochester Institute of Technology, ( Responses due by 1/12/2018. In view of the extension granted to respond to the motion, the Court also directs that the reply date is also extended. Replies due by 1/26/2018. Plaintiff's request for extension on page limitation to 45 pages is also granted to accommodate a cross motion.. Signed by Hon. Charles J. Siragusa on 12/27/17. (KAP) (Entered: 12/27/2017) |
| 01/12/2018 | 58 | Cross MOTION for Partial Summary Judgment by The Estate of Stanley Kauffmann. (Norwick, Kenneth) (Entered: 01/12/2018) |
| 01/12/2018 | 59 | STATEMENT OF FACTS *PURSUANT TO RULE 56* by The Estate of Stanley Kauffmann Related document: 58 Motion for Partial Summary Judgment. (Norwick, Kenneth) (Entered: 01/12/2018) |
| 01/12/2018 | 60 | AFFIDAVIT in Support re 58 Cross MOTION for Partial Summary Judgment filed by The Estate of Stanley Kauffmann. (Attachments: # 1 Exhibit AI, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L)(Norwick, Kenneth) (Entered: 01/12/2018) |
| 01/12/2018 | 61 | AFFIDAVIT in Support re 58 Cross MOTION for Partial Summary Judgment filed by The Estate of Stanley Kauffmann. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Norwick, Kenneth) (Entered: 01/12/2018) |
| 01/12/2018 | 62 | AFFIDAVIT in Support re 58 Cross MOTION for Partial Summary Judgment filed by The Estate of Stanley Kauffmann. (Norwick, Kenneth) (Entered: 01/12/2018) |
| 01/12/2018 | 63 | AFFIDAVIT in Support re 58 Cross MOTION for Partial Summary Judgment filed by The Estate of Stanley Kauffmann. (Norwick, Kenneth) (Entered: 01/12/2018) |
| 01/12/2018 | 64 | MEMORANDUM in Support re 58 Cross MOTION for Partial Summary Judgment filed by The Estate of Stanley Kauffmann. (Norwick, Kenneth) (Entered: 01/12/2018) |
| 01/16/2018 |  | E-Filing Notification: Incorrect event used to electronically file documents. For future reference, use DECLARATION event. Note that all four documents are Declarations. No action required RE 61 AFFIDAVIT, 60 AFFIDAVIT, 62 AFFIDAVIT and 63 AFFIDAVIT. (TF) (Entered: 01/16/2018) |
| 01/19/2018 | 65 | LETTER ORDER re 52 MOTION for Summary Judgment filed by Rochester Institute of |

| | | |
|---|---|---|
| | | Technology granting defendant RIT's request for extension of time to reply in further support of motion and respond to plaintiff's cross motion. ( Replies/Response due by 2/26/2018.). Signed by Hon. Charles J. Siragusa on 1/19/18. (KAP) (Entered: 01/19/2018) |
| 01/25/2018 | 66 | LETTER ORDER re 58 Cross MOTION for Partial Summary Judgment filed by The Estate of Stanley Kauffmann, 52 MOTION for Summary Judgment filed by Rochester Institute of Technology granting plaintiff's request for adjournment of motion argument. ( Motion Hearing set for 7/26/2018 02:15 PM before Hon. Charles J. Siragusa.). Signed by Hon. Charles J. Siragusa on 1/25/18. (KAP) (Entered: 01/25/2018) |
| 02/20/2018 | 67 | LETTER ORDER granting defendant and third party plaintiff, RIT's, request for page extension on combined response and reply to not exceed 28 pages.. Signed by Hon. Charles J. Siragusa on 2/20/18. (KAP) (Entered: 02/20/2018) |
| 02/26/2018 | 68 | RESPONSE in Support re 52 MOTION for Summary Judgment filed by Rochester Institute of Technology. (Attachments: # 1 Declaration of Mary P. Moore, Esq., # 2 Supplement Defendant's Opposing Statement in Response to Plaintiff's Rule 56 Statement of Undisputed Facts)(Moore, Mary) (Entered: 02/26/2018) |
| 02/27/2018 | 69 | LETTER ORDER re 52 MOTION for Summary Judgment filed by Rochester Institute of Technology granting plaintiff's request for extension of time. ( Replies due by 3/26/2018.). Signed by Hon. Charles J. Siragusa on 2/27/18. (KAP) (Entered: 02/27/2018) |
| 03/14/2018 | 70 | LETTER ORDER granting plaintiff's request for page extension of reply brief. Brief is not to exceed 25 pages.. Signed by Hon. Charles J. Siragusa on 3/14/18. (KAP) (Entered: 03/14/2018) |
| 03/26/2018 | 71 | REPLY to Response to Motion re 58 Cross MOTION for Partial Summary Judgment filed by The Estate of Stanley Kauffmann. (Norwick, Kenneth) (Entered: 03/26/2018) |
| 07/26/2018 | 72 | Minute Entry for proceedings held before Hon. Charles J. Siragusa: Kenneth Norwick, Esq. appearing on behalf of plaintiff. Mary Moore, Esq. appearing with defendant. Motion Hearing held on 7/26/2018 re 58 Cross MOTION for Partial Summary Judgment filed by The Estate of Stanley Kauffmann, 52 MOTION for Summary Judgment filed by Rochester Institute of Technology. Motions Submitted: 58 Cross MOTION for Partial Summary Judgment, 52 MOTION for Summary Judgment. Court reserves and will issue a written decision. (Court Reporter Diane Martens.) (KJA) (Entered: 07/27/2018) |
| 08/06/2018 | 73 | DECISION AND ORDER granting 52 Motion for Summary Judgment; denying 58 Motion for Partial Summary Judgment. RIT's motion for summary judgment, ECF No. 52, is granted with respect to The Estates copyright infringement claim on the 44 registered articles reproduced in the book The Millennial Critic: Stanley Kauffmann on Film: 1999-2009 and detailed above in the Back-ground section of this decision. Kauffmanns cross-motion for summary judgment, ECF No. 58, is denied. The Clerk is directed to enter judgment for RIT. RIT may have until September 30, 2018, to move for a default judgment against third party defendant Cardullo. If no such motion is made by then, the Clerk is directed to close this case.Signed by Hon. Charles J. Siragusa on 8/6/18. (KAP)<br><br>-CLERK TO FOLLOW UP- (Entered: 08/06/2018) |
| 08/07/2018 | 74 | JUDGMENT in favor of Rochester Institute of Technology against The Estate of Stanley Kauffmann. Signed by Clerk of Court on 8/7/18. (TF) (Entered: 08/07/2018) |
| 08/14/2018 | 75 | NOTICE OF APPEAL by The Estate of Stanley Kauffmann. Filing fee $ 505, receipt number 0209-3189608. (Norwick, Kenneth) (Entered: 08/14/2018) |
| 08/15/2018 | | Pursuant to Local Rule 12.1 of the US Court of Appeals for the Second Circuit, Forms C and D must be completed within 14 days after the filing of a notice of appeal. Forms C and |

|            |    | D can be obtained at www.ca2.uscourts.gov. (TF) (Entered: 08/15/2018) |
|------------|----|----------------------------------------------------------------------|
| 08/21/2018 | 76 | MOTION for Attorney Fees , *Full Costs, Pursuant to 17 U.S.C. 505* by Rochester Institute of Technology. (Attachments: # 1 Declaration of Mary P. Moore, # 2 Exhibit Ex 1 to Moore Declaration, # 3 Exhibit Ex 2 to Moore Declaration, # 4 Exhibit Ex 3 to Moore Declaration, # 5 Exhibit Ex 4 to Moore Declaration, # 6 Exhibit Ex 5 to Moore Declaration, # 7 Exhibit Ex 6 to Moore Declaration, # 8 Exhibit Ex 7 to Moore Declaration, # 9 Exhibit Ex 8 to Moore Declaration, # 10 Exhibit Ex 9 to Moore Declaration, # 11 Exhibit Ex 10 to Moore Declaration, # 12 Memorandum in Support) (Moore, Mary) (Entered: 08/21/2018) |
| 08/22/2018 | 77 | MOTION SCHEDULING ORDER re 76 MOTION for Attorney Fees , *Full Costs, Pursuant to 17 U.S.C. 505* filed by Rochester Institute of Technology, ( Responses due by 9/5/2018., Replies due by 9/12/2018., Motion Hearing set for 9/20/2018 02:15 PM before Hon. Charles J. Siragusa.). Signed by Hon. Charles J. Siragusa on 8/22/18. (KAP) (Entered: 08/22/2018) |
| 08/22/2018 | 78 | MOTION to Stay re 76 MOTION for Attorney Fees , *Full Costs, Pursuant to 17 U.S.C. 505* by The Estate of Stanley Kauffmann.(Norwick, Kenneth) (Entered: 08/22/2018) |
| 08/22/2018 | 79 | Letter filed by Rochester Institute of Technology as to Rochester Institute of Technology in response to 78 motion to stay. (Moore, Mary) Modified on 8/23/2018 (TF). (Entered: 08/22/2018) |
| 08/23/2018 |    | E-Filing Notification: 79 Letter filed by Rochester Institute of Technology as to Rochester Institute of Technology in response to 78 motion to stay. Modified entry to link to motion on 8/23/2018 (TF). (TF) (Entered: 08/23/2018) |
| 08/23/2018 | 80 | LETTER ORDER denying 78 Motion to Stay. After due consideration, plaintiffs request for a stay, or in the alternative, an extension of time to September 25, 2018, to file opposing papers is denied. The briefing and argument schedule set by the Court [ECF No. 77] remains in effect. Signed by Hon. Charles J. Siragusa on 8/23/18. (KAP) (Entered: 08/23/2018) |
| 09/05/2018 | 81 | DECLARATION re 76 MOTION for Attorney Fees , *Full Costs, Pursuant to 17 U.S.C. 505* filed by The Estate of Stanley Kauffmann filed by The Estate of Stanley Kauffmann. (Norwick, Kenneth) (Entered: 09/05/2018) |
| 09/05/2018 | 82 | MEMORANDUM in Opposition re 76 MOTION for Attorney Fees , *Full Costs, Pursuant to 17 U.S.C. 505* filed by The Estate of Stanley Kauffmann. (Norwick, Kenneth) (Entered: 09/05/2018) |
| 09/05/2018 | 83 | DESIGNATION of Record on Appeal by The Estate of Stanley Kauffmann re 75 Notice of Appeal CLERK TO FOLLOW UP (Attachments: # 1 Appendix docket)(Norwick, Kenneth) (Entered: 09/05/2018) |
| 09/06/2018 | 84 | CLERKS CERTIFICATE filed and electronically sent to Court of Appeals re 83 DESIGNATION of Record on Appeal by The Estate of Stanley Kauffmann re 75 Notice of Appeal (TF) (Entered: 09/06/2018) |
| 09/11/2018 | 85 | REPLY/RESPONSE to re 76 MOTION for Attorney Fees , *Full Costs, Pursuant to 17 U.S.C. 505* filed by Rochester Institute of Technology. (Attachments: # 1 Declaration of Mary P. Moore, Esq.)(Moore, Mary) (Entered: 09/11/2018) |

| **PACER Service Center** |
|---|
| **Transaction Receipt** |

**A-11**

CM/ECF LIVE(C) - U.S. District Court:nywd

| 09/24/2018 10:52:36 | | | |
|---|---|---|---|
| **PACER Login:** | teamrpacc | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:17-cv-06061-CJS-MWP |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
THE ESTATE OF STANLEY KAUFFMANN,

                                    Plaintiff,              COMPLAINT FOR
                                                            COPYRIGHT INFRINGEMENT

              - against -

ROCHESTER INSTITUTE OF TECHNOLOGY,                          JURY DEMANDED

                                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

         This is an action for copyright infringement involving the unauthorized and unlawful

international exploitation by the defendant's book publishing enterprise of -- for present purposes

-- forty-four separate copyrighted works created by the late and internationally-renowned critic

and author Stanley Kauffmann, who died on October 9, 2013.  Acknowledging that Mr. Kauff-

mann, and now his Estate, owns all the infringed copyrights, the defendant's infringing book

itself declares: "[D]uring his long career [Mr. Kauffmann] always copyrighted his articles,

reviews and essays in his own name rather than the name of the publication in which they first

appeared."

                                    THE PARTIES

         1.  Plaintiff THE ESTATE OF STANLEY KAUFFMANN ("the Estate") is the succes-

sor owner of all copyrights owned in his lifetime by Stanley Kauffmann.  It is based in New York

County in the State of New York.  ROBERT MARX was duly designated Preliminary Executor

of the Estate by Order of the New York Surrogate's Court in February 2016.

         2.  Upon information and belief, and according to its website, defendant ROCHESTER

INSTITUTE OF TECHNOLOGY ("RIT") was founded in 1829 and is "a privately endowed,

coeducational university with nine colleges emphasizing career education and experiential

learning."  Upon information and belief, RIT conducts business throughout the State of New

York, the United States, and the rest of the world.

3. Upon information and belief, and according to its website, RIT PRESS "is a scholarly publishing enterprise at Rochester Institute of Technology. . . . As its editorial policies have evolved, the Press has broadened its reach to include content that supports all academic disciplines offered at Rochester Institute of Technology, our host institution. These include    but are not limited to — business, computer science, applied science and technology, engineering, graphic arts, deaf studies, and liberal arts. In 2007, an additional imprint, RIT Press, was established for all titles not related to the graphic arts. As of 2013, all publications will carry this imprint." (In this Complaint, "RIT" refers to both RIT itself and to its "enterprise" RIT PRESS.)

<u>JURISDICTION AND VENUE</u>

4. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1338. This is an action for copyright infringement under the United States Copyright Act. Venue in this district is proper pursuant to 28 U.S.C. §§1391(b) and 1400(a).

<u>UNDERLYING FACTS</u>

5. The infringing book, discussed more fully in the following paragraphs, contains a "Biography" of Stanley Kauffmann. That Biography is reprinted in full as Exhibit "A" to this Complaint. In short, Stanley Kauffmann was an internationally-renowned critic and author whose work was published and widely read for over 50 years.

6. In late 2015, RIT published a book entitled "THE MILLENNIAL CRITIC: Stanley Kauffmann on Film: 1999-2009" ("The Infringing Book"). (Annexed hereto as Exhibit "B" is a copy of the press release issued by RIT in connection with its publication of the Infringing Book.) The Table of Contents of the Infringing Book lists 141  separate works that it acknowledges were the copyright property of Stanley Kauffmann (and now his Estate), and each of those works was included in the Infringing Book as published by RIT. (A copy of that Table of Contents, along with other "front matter," is set forth in full as Exhibit "C" to this Complaint.)

7. RIT had no lawful authorization or legal right to publish any of those works in the

Infringing Book, and thus the Infringing Book contains and constitutes 141 separate infringe-ments of copyrights owned by the Estate. As of the date of this Complaint, however, only 44 of those works have been duly registered with the United States Copyright Office, a prerequisite to suing for infringement. Thus, at present, this action is limited to those 44 separate infringements. Referring to the Table of Contents of the Infringing Book, those 38 works are: "Shakespeare in Love"; "Hurlyburly"; "The Thin Red Line"; "Affliction"; "Private Confessions"; "Dr. Akagi"; "The Children of Heaven"; "The Dreamlife of Angels"; "Devil's Island"; "EdTV"; "The Wins-low Boy"; "A Midsummer's Night's Dream"; "Tea with Mussolini"; "Star Wars"; "Besieged"; "Eternity and a Day"; "An Ideal Husband"; "Autumn Tale"; "My Son the Fanatic"; "The Gambler"; "Lucie Aubrac"; "West Beirut"; "American Beauty"; "Breakfast of Champions"; "Jakob the Liar"; "Three Kings"; "The Straight Story"; "Bringing Out the Dead"; "Rosetta"; "The Insider"; "Ride with the Devil"; "Sweet and Lowdown"; "The End of the Affair"; "Natural Born Killers"; "Grand Illusion"; "D'Artagnan's Daughter"; "Greed"; "Photographer"; "Close Up 1927-1933"; "Projections 9"; "The Death of Film"; "American Film Audiences"; "Stanley Kubrick"; and "Marcello Mastroianni." The remaining infringed works will be registered in due course and those infringements will either be added to this action or made the subject of a sep-arate action.

8. Upon information and belief, RIT may have -- or may claim to have -- relied on representations by one Bert Cardullo in publishing the Infringing Book. If so, any such reliance was manifestly and shockingly reckless and irresponsible. In short, RIT had no basis or justi-fication to rely on any such representations from a person who was then and is now a notorious plagiarist and abuser of the rights of others. Had RIT conducted even a minimal investigation into the character and reputation of Cardullo, it would have known then what it knows now -- that it should never have published the Infringing Book in the first place.

9. A limited recapitulation of the public information about Cardullo that, on information and belief, was readily available to RIT on the Internet includes:

a. The very first entry in a recent Google search for "Bert Cardullo" was from "Retraction Watch" and is entitled "Film review by noted critic a rerun, retracted." (That entire article, detailing Cardullo's history and reputation as a plagiarist, is annexed hereto as Exhibit "D.")

b. That same Google search also produced, on the first page, an article entitled "Where Did I Read That Before?," which also details Cardullo's history and reputation as a plagiarist. (A copy of that article is annexed hereto as Exhibit "E.")

c. A different Google search also produced an article entitled "A Fake is a Fake," which contains the following opening paragraph:

> From time to time, without expecting much, I follow the fate of Bert Cardullo, once respected film and theater scholar, whose voluminous plagiarisms have been exposed to the eyes of an unsuspecting -- and mostly uncaring -- public since *Senses of Cinema* published my article "A Hard Act to Follow" in 2006. Despite further exposure of his pilfering by Richard Brody in *The New Yorker* in 2010, as well as other reports sent to this blog, many of Cardullo's suspect texts remain in print and for sale on Amazon, and he himself remains a faculty member at a university in Izmir, Turkey.

(A copy of that article is annexed hereto as Exhibit "F.")

d. That same Google search also produced a public retraction by the editors of "SHAW: The Annual of Bernard Shaw Studies" and Penn State University Press of an article by Cardullo that was published in that journal. (A copy of that retraction is annexed hereto as Exhibit "G.")

e. That same Google search also produced a public retraction by the editors of "Comparative Drama" and Western Michigan University of an article by Cardullo that was published in that journal. (A copy of that retraction is annexed hereto as Exhibit "H.")

f. That same Google search also produced a public retraction by Oxford University Press of an article by Cardullo that was published in "The Cambridge Quarterly." That retraction stated in part as follows:

> The editors of Comparative Drama published this article in good faith, trusting in Mr. Cardullo's assertion that the article was original work that had not been published elsewhere. Unfortunately, this was not the case; as we later learned, Mr. Cardullo had published the same article repeatedly, changing only the title.

# A-16

(A copy of that full retraction is annexed hereto as Exhibit "I.")

10. In addition, The Hudson Review, for which Cardullo served as a regular film reviewer, published the following apology in its Autumn 2007 issue:

> TO OUR READERS
>
> It has been called to our attention that several recent film reviews by Bert Cardullo published in this magazine have been inappropriately similar to reviews by Stanley Kauffmann that appeared in *The New Republic*. When asked for an explanation, Bert Cardullo apologized. We very much regret this occurrence and extend our own apologies to Stanley Kauffmann, to *The New Republic* and to our readers.

(A copy of that apology is annexed hereto as Exhibit "J.")

11. When The Estate first advised RIT that the Infringing Book was unauthorized and violated the rights of the Estate, RIT justified its publication of the book in part as follows:

> I can confirm that Mr. Cardullo did provide the RIT Press with a letter from ShiffHardin LLP [sic] which confirmed that Stanley Kauffmann's will did in fact assert that Mr. Cardullo, and only Mr. Cardullo, may anthologize any and all reviews by Mr. Kauffmann, from the New Republic or any other journal, that are previously uncollected or un-anthologized in book form, however this letter is not information that the RIT Press would release to anyone absent a validly issued subpoena.

(A copy of that email is annexed hereto as Exhibit "K.")

12. Although RIT originally refused to produce a copy of that letter to the Estate without a "validly issued subpoena" for it, a copy of it was subsequently obtained by the Estate. (A copy of that "letter" is annexed hereto as Exhibit "L.") That letter is a crude and obvious forgery, and on information and belief RIT made no attempt to confirm its authenticity until after the Estate challenged the Infringing Book. RIT's purported reliance on it is both laughable and shameful.

13. The "copyright notice" in the Infringing Book states: "Copyright © 2015 Rochester Institute of Technology and Bert Cardullo." Insofar as RIT is concerned, it must have known at the time it made that claim that it was utterly false, since RIT had absolutely no copyright ownership of the contents of the Infringing Book. And insofar as Cardullo is concerned, RIT also must have known that Cardullo had absolutely no copyright ownership of the contents of the Infringing Book, if only because Cardullo makes that clear in the book itself.. Notably, the copyright

notice contains no reference whatever to Mr. Kauffmann or the Estate, although RIT clearly knew at the time that only the Estate owned all the underlying copyrights. To the extent Cardullo may have represented to RIT that he owned the underlying copyrights, as claimed in the copyright notice, RIT must have known that any such representation was manifestly false and fraudulent.

14.   A recent and deplorable manifestation of Cardullo's character and utter disdain and disregard for Kauffmann's works and copyrights is his threat that if the Estate did not withdraw its objections to the infringements described in this Complaint, "I shall upload the attached pdf of the book to the Internet for anyone to read at his or her leisure, free of charge. . . And there will be nothing you or anyone else can do about it." (A copy of that email is annexed hereto as Exhibit "M.")

15.   Thereafter, copies of the Infringing Book, and others, suddenly became freely available on the Internet. RIT was notified of this, but, on information and belief, it has not done anything to have those further infringements taken down, choosing instead to leave them freely available.

16.   If RIT made even a rudimentary first-page only Google search for "Bert Cardullo" before relying on, if it did, any representations by him, it would have readily discovered his history and reputation as a plagiarist. To the extent RIT did not bother even to conduct such a simple, cost-free, Google search, it plainly acted in an entirely reckless and irresponsible manner in proceeding to publish the Infringing Book in (ostensible) reliance on Cardullo's representations.

17.   Indeed, RIT has effectively admitted that its publication of the Infringing Book was irresponsible, indefensible, and illegal by its post-publication statement to the Estate -- but only after the Estate challenged the book -- that it has withdrawn the Infringing Book from publication.

18. Notwithstanding the public retractions by the distinguished publishers and publications cited above in Paragraph 9, and notwithstanding RIT's full awareness (and effective admission) of the illegality of the Infringing Book, on information and belief it has not issued a single public retraction or disavowal of the Infringing Book, not to mention any apology -- public or private -- to the Estate.

19. Prior to commencing this action, the Estate sought to explore with RIT a pre-litigation resolution of this matter, and it asked RIT to provide to it any documents that were submitted to it by Cardullo. However, RIT, through its General Counsel, Robert A. Colon, flatly refused both of those requests, thus in effect daring and forcing the Estate to bring this action. However, about three months later, RIT's outside counsel apparently overruled Mr. Colon's refusal and provided some, but not all, of the underlying documents requested by the Estate.

### CAUSE OF ACTION FOR COPYRIGHT INFRINGEMENT

20. Plaintiff incorporates here the contents of Paragraphs 1 through 19 above.

21. The unauthorized publication by RIT of the copyrighted works identified in Paragraph 7 above constitutes wilful infringement of the registered copyrights therein.

WHEREFORE, with respect to each act of copyright infringement by RIT, the Estate demands judgment a) adjudicating that RIT infringed the Estate's copyrights in the relevant works; b) issuing a permanent injunction preventing RIT from making any further use or publication of the Infringing Book or its contents; c) awarding to the Estate RIT's profits attributable to the infringements and all damages sustained by the Estate; d) awarding to the Estate its costs and attorneys' fees; c) awarding to the Estate punitive damages; and e) awarding such other relief as the Court deems just.

Dated: April 4, 2016

NORWICK, SCHAD & GOERING

By: _____
Kenneth P. Norwick (KN 4622)
110 East 59th Street
New York, New York 10022
(212) 751-4440
Attorneys for Plaintiff
ken@norwickschad.com

**A-19**

# EXHIBIT "A"

**A-20**

## BIOGRAPHY

Stanley Kauffmann was born in New York City on April 24, 1916, and was graduated from the College of Fine Arts of New York University in 1935. He spent ten years, from 1931 to 1941, as an actor and stage manager with the Washington Square Players and published a large number of short as well as long plays. He was also the author of seven novels, published in the United States and abroad, and two collections of memoirs; for Bantam, Ballantine, and Knopf, he worked as a book publisher's editor from 1949 to 1960. From 1967 to 1986, Kauffmann taught drama and film at Yale University; between the years 1973 and 2006, he also taught at The City University of New York, Hunter College, and Adelphi University.

Starting in 1958, Kauffmann became active in criticism. At that time he was appointed the film critic of *The New Republic*, with which magazine he was associated ever since, except for an eight-month period in 1966 when he was exclusively the theater critic of *The New York Times*. In addition to his film reviews, he wrote a large number of book reviews for *The New Republic*; from 1969 to 1979 he served as both film and theater critic for this magazine; and earlier, from 1963 to 1965, Kauffmann also served as the drama critic for the Public Broadcasting television station in New York, WNET. He continued as film critic for *The New Republic* but wrote theater criticism for the *Saturday Review* for five years, from 1979 to 1985. He contributed reviews and articles to many other journals, as well—among them *Horizon, Commentary, Salmagundi, Yale Review, Kenyon Review, Theater,* and *The American Scholar*.

Kauffmann published eight collections of film criticism in his lifetime: *A World on Film* (1966), *Figures of Light* (1971), *Living Images* (1975), *Before My Eyes* (1980), *Field of View* (1986), *Distinguishing Features* (1994), *Regarding Film* (2001), and *Ten Great Films* (2012). He was the editor of the anthology *American Film Criticism: From the Beginnings to Citizen Kane* (1972). He also published three collections of theater criticism, *Persons of the Drama* (1976), *Theater Criticisms* (1983), and *About the Theater* (2010), together with two collections of interviews: *Conversations with Stanley Kauffmann* (2003) and *Film Critic Talks: Interviews with Stanley Kauffmann, 1972-2012* (2013).

In 1974 Kauffmann was given the George Jean Nathan Award for Dramatic Criticism; from 1972 to 1976 he was a member of the Theater-and-Film Advisory Panel of the National Endowment for the Arts; in 1969 and 1975 he was a juror for the National Book Awards; and in 1982 he received the George Polk Award for Film Criticism as well as the

**A-21**

Edwin Booth Award in 1986, in addition to the 1986 Birmingham Film Festival Prize for Lifetime Achievement and the 1999 Telluride Film Festival Award for Criticism. A former Ford Foundation (1964, 1971), Rockefeller (1978), Guggenheim (1979–80), Japan Foundation (1986), and New York Institute for the Humanities (1995) fellow, Kauffmann received an Emmy award for the first-ever television series about film, which he conducted for five years in the 1960s on WNET-TV, the New York PBS station. He also received, in 1995, the Outstanding Teacher Award from the Association for Theater in Higher Education.

Pre-deceased in 2012 by his wife since 1943, Laura Cohen Kauffmann, Stanley Kauffmann died in New York City on October 9, 2013, at the age of ninety-seven.

**A-22**

# EXHIBIT "B"

New book explores works of Stanley Kauffmann 'The Millennial Critic' – RIT News                    12/16/15, 1:36 PM



New book explores works of Stanley Kauffmann 'The Millennial Critic'
Book published by RIT Press features collection of influential film critic's final pieces

Oct. 23, 2015
by Ron Hilaire.

Stanley Kauffmann's career as a film critic began long before the advent of simplified
thumbs-up, thumbs-down reviewing. For more than 50 years, the influential critic used
precision, wit and wisdom to help readers discover the art of movies.

The spirit of Kauffmann is recaptured in the first posthumous collection of the writer's film
criticism, *The Millennial Critic: Stanley Kauffmann on Film 1999–2009*. The new book was
edited by film critic Bert Cardullo and published by RIT Press, the scholarly publishing
enterprise at Rochester Institute of Technology.

*The Millennial Critic* features pieces written during the last decade of Kauffmann's life,
including reviews for fiction films, such as Theo Angelopoulos's *Eternity and a Day*, Sam
Mendes's *American Beauty* and Roman Polanski's *The Pianist*. Throughout his writing,
Kauffmann regularly comments on the nature, as well as what can be called the crisis, of film
criticism.

"A particular value of his work was his willingness to go against critical consensus," said
Cardullo. "He was a man at home in film history, conversant with culture and the arts
generally, informative without being preachy, using his writing to think about his subject and
pleased to take us into his confidence."

Starting in 1958, Kauffmann became film critic for *The New Republic*, where he would
continue writing for the next 55 years, publishing his last review in 2013. He also worked for
a time as a film and theater critic for *The New York Times* and *Saturday Review* and was one
of the first critics to use television as a means of consistently investigating film culture,
hosting "The Art of Film" from 1963 to 1967.

The book contains pieces from the final years of Kauffmann's career, including reviews of
notable fiction releases, such as Terence Malick's *The Thin Red Line*; reconsiderations of
classic films, such as Erich von Stroheim's *Greed*; reviews of significant social
documentaries, such as Michael Moore's *Fahrenheit 9/11*; essays on other works, such as
*Cinema and Modernism*; and remembrances of notable artists, such as Stanley Kubrick,
Marcello Mastroianni and John Gielgud.

In his writing, Kauffmann routinely touches on the relationship between theater and film—



Emma Dodge Hanson

Stanley Kauffmann with his wife, Laura, Saratoga Springs, N.Y.,
2002.



RIT Press

The Millennial Critic: Stanley Kauffann on Film 1999–2009
features a collection of the late Stanley Kauffmann's film
criticism from the final years of his career.

# A-24

New book explores works of Stanley Kauffmann 'The Millennial Critic' - RIT News                12/16/15, 1:36 PM

particularly the difference between stage and screen acting—the relationship between novels and the movies made from them, Shakespeare and the cinema, sex and sexuality, as well as realism, taste and violence in film.

Bert Cardullo, the editor of *The Millennial Critic*, was the regular film critic for *The Hudson Review*. A graduate of Yale University, where he studied with Stanley Kauffmann, Cardullo has authored and edited a number of books, including *Bazin on the Global Cinema* and *In Search of Cinema: Writings on International Film Art*.

"In the end, Stanley Kauffmann's film writing creates the kind of evocative and sensitive critical world that recharges a work of art while searching out and probing its parts." Cardullo said. "If the role of art is to criticize life, then Stanley Kauffmann ceaselessly demonstrated that criticism can be a way, for those to whom it speaks most directly, to live a life in art."

*The Millennial Critic: Stanley Kauffmann on Film 1999–2009* is available in softcover for $29.95 at the RIT Press website or by calling RIT Press at 585-475-6766.

**A-25**

# EXHIBIT "C"

# THE MILLENNIAL CRITIC

## Stanley Kauffmann on Film
### 1999–2009

*Edited by*
**Bert Cardullo**

RIT Press
Rochester, New York

*The Millennial Critic: Stanley Kauffmann on Film, 1999-2009*
Copyright © 2015 Rochester Institute of Technology and Bert Cardullo

All rights reserved.
No part of this book may be reproduced in any form or by any mechanical or electronic means without permission of the publisher and/or the copyright holders, except in the case of brief quotations.

RIT Press
90 Lomb Memorial Drive
Rochester, New York 14623-5604
http://ritpress.rit.edu


Book and cover design by Lisa Mauro


ISBN 978-1-939125-26-2 (print)
ISBN 978-1-939125-27-9 (e-book)


Library of Congress Cataloging-in-Publication Data

Kauffmann, Stanley, 1916-2013.
[Essays. Selections]
The millennial critic : Stanley Kauffmann on film, 1999-2009 / edited
by Bert Cardullo.
     pages cm
ISBN 978-1-939125-26-2 (print : alk. paper) -- ISBN 978-1-939125-27-9
(e-book)
1. Motion pictures--Reviews. I. Cardullo, Bert, editor. II. Title.
PN1995.K2965 2015
791.43'75--dc23
                    2015028360

TABLE OF CONTENTS

xi   **Acknowledgments**

xii   **Biography**

xiv   **Introduction** Man of the Movies: The Film Criticism of Stanley Kauffmann
by Bert Cardullo

**Reviews (Fiction)**

1   *Shakespeare in Love*, John Madden (4–11 January 1999)

3   *Hurlyburly*, Anthony Drazan (18 January 1999)

5   *The Thin Red Line*, Terrence Malick (25 January 1999)

7   *Affliction*, Paul Schrader (1 February 1999)

9   *Private Confessions*, Liv Ullmann (1 February 1999)

10   *Dr. Akagi*, Shohei Imamura (8 February 1999)

11   *The Children of Heaven*, Majid Majidi (22 February 1999)

12   *The Dreamlife of Angels*, Erick Zonca (22 March 1999)

14   *Devil's Island*, Fridrik Thor Fridriksson (12 April 1999)

15   *EdTV*, Ron Howard (26 April–3 May 1999)

17   *The Winslow Boy*, David Mamet (24 May 1999)

19   *A Midsummer Night's Dream*, Michael Hoffman (31 May 1999)

22   *Tea with Mussolini*, Franco Zeffirelli (7 June 1999)

24   *Star Wars, Episode 1: The Phantom Menace*, George Lucas (14 June 1999)

26   *Besieged*, Bernardo Bertolucci (21 June 1999)

27  *Eternity and a Day*, Theo Angelopoulos (28 June 1999)

29  *An Ideal Husband*, Oliver Parker (19–26 July 1999)

32  *Autumn Tale*, Eric Rohmer (2 August 1999)

33  *My Son the Fanatic*, Udayan Prasad (9 August 1999)

34  *The Gambler*, Károly Makk (23 August 1999)

35  *Lucie Aubrac*, Claude Berri (13 September 1999)

37  *West Beirut*, Ziad Doueiri (27 September 1999)

38  *American Beauty*, Sam Mendes (11 October 1999)

40  *Breakfast of Champions*, Alan Rudolph (18 October 1999)

41  *Jakob the Liar*, Peter Kassovitz (25 October 1999)

42  *Three Kings*, David O. Russell (1 November 1999)

44  *The Straight Story*, David Lynch (15 November 1999)

46  *Bringing Out the Dead*, Martin Scorsese (22 November 1999)

48  *Rosetta*, Jean-Pierre and Luc Dardenne (29 November 1999)

50  *The Insider*, Michael Mann (6 December 1999)

52  *Ride with the Devil*, Ang Lee (20 December 1999)

53  *Sweet and Lowdown*, Woody Allen (20 December 1999)

54  *The End of the Affair*, Neil Jordan (27 December 1999)

57  *Miss Julie*, Mike Figgis (3 January 2000)

59  *Any Given Sunday*, Oliver Stone (17 January 2000)

60  *The Talented Mr. Ripley*, Anthony Minghella (17 January 2000)

62  *All About My Mother*, Pedro Almodóvar (31 January 2000)

63  *Not One Less*, Zhang Yimou (14 February 2000)

65  *Kadosh*, Amos Gitai (14 February 2000)

66  *Ghost Dog*, Jim Jarmusch (6 March 2000)

68  *What Planet Are You From?* Mike Nichols (27 March 2000)

70  *Erin Brockovich*, Steven Soderbergh (3 April 2000)

72  *Waking the Dead*, Keith Gordon (10 April 2000)

73  *High Fidelity*, Stephen Frears (1 May 2000)

74  *Black and White*, James Toback (8 May 2000)

76   *Small Time Crooks*, Woody Allen (12 June 2000)

77   *Decalogue*, Krzysztof Kieślowski (26 June 2000)

79   *Love's Labour's Lost*, Kenneth Branagh (10 July 2000)

81   *Humanité*, Bruno Dumont (31 July 2000)

84   *The Wind Will Carry Us*, Abbas Kiarostami (14 August 2000)

87   *Solas*, Benito Zambrano (2 October 2000)

88   *Tigerland*, Joel Schumacher (16 October 2000)

89   *Dancer in the Dark*, Lars von Trier (16 October 2000)

90   *Billy Elliott*, Stephen Daldry (6 November 2000)

93   *Boesman and Lena*, John Berry (13 November 2000)

96   *The House of Mirth*, Terence Davies (15 January 2001)

98   *Faithless*, Liv Ullmann (12 February 2001)

100   *The Pledge*, Sean Penn (19 February 2001)

103   *Me You Them*, Andrucha Waddington (26 March 2001)

104   *Under the Sand*, François Ozon (21 May 2001) 208

105   *The Road Home*, Zhang Yimou (28 May 2001) 211

107   *Aberdeen*, Hans Petter Moland (24 September 2001)

109   *A Beautiful Mind*, Ron Howard (28 January 2002)

110   *What Time Is It There?*, Tsai Ming-liang (4 February 2002)

113   *The Son's Room*, Nanni Moretti (25 February 2002)

114   *The Piano Teacher*, Michael Haneke (15 April 2002)

117   *13 Conversations About One Thing*, Jill Sprecher (17 June 2002)

118   *The Hours*, Stephen Daldry (27 January 2003)

120   *The Pianist*, Roman Polanski (27 January 2003)

120   *The Son*, Jean-Pierre and Luc Dardenne (3 February 2003)

123   *People I Know*, Dan Algrant (19 May 2003)

124   *Friday Night*, Claire Denis (21 July 2003)

126   *Lost in Translation*, Sofia Coppola (6 October 2003)

128   *Osama*, Siddiq Barmak (8 March 2004)

129   *Kitchen Stories*, Bent Hamer (15 March 2004)

131    *Abouna*, Mahamat-Saleh Haroun (15 March 2004)

132    *Eternal Sunshine of the Spotless Mind*, Michel Gondry (5 April 2004)

134    *Son Frère*, Patrice Chéreau (3 May 2004)

136    *The Twilight Samurai*, Yoji Yamada (10 May 2004)

138    *Strayed*, André Téchiné (17 May 2004)

139    *Since Otar Left*, Julie Bertucelli (24 May 2004)

141    *Carandiru*, Hector Babenco (31 May 2004)

142    *Facing Windows*, Ferzan Özpetek (5 July 2004)

144    *The Terminal*, Steven Spielberg (26 July 2004)

146    *Stage Beauty*, Richard Eyre (1 November 2004)

148    *Vera Drake*, Mike Leigh (8 November 2004)

149    *Nobody Knows*, Hirokazu Kore-eda (28 February 2005)

150    *Up and Down*, Jan Hrebejk (28 February 2005)

151    *Nina's Tragedies*, Savi Gabizon (11 April 2005)

152    *Me and You and Everyone We Know*, Miranda July (11 July 2005)

154    *Lila Says*, Ziad Doueiri (25 July 2005)

155    *My Summer of Love*, Pawel Pawlikowski (25 July 2005)

156    *Saraband*, Ingmar Bergman (8 August 2005)

159    *Broken Flowers*, Jim Jarmusch (5 September 2005)

160    *Keane*, Lodge Kerrigan (19 September 2005)

161    *Brokeback Mountain*, Ang Lee (16 January 2006)

163    *Fateless*, Lajos Koltai (6 March 2006)

164    *Battle in Heaven*, Carlos Reygadas (13 March 2006)

166    *Woman Is the Future of Man*, Hong Sang-soo (3 April 2006)

167    *L'Enfant (The Child)*, Jean-Pierre and Luc Dardenne (10 April 2006)

169    *Edmond*, Stuart Gordon (7 August 2006)

171    *The Bridesmaid*, Claude Chabrol (14 August 2006)

174    *The Departed*, Martin Scorsese (30 October 2006)

175    *Climates*, Nuri Bilge Ceylan (6 November 2006)

176    *Flags of Our Fathers*, Clint Eastwood (13 November 2006)

178   *Letters from Iwo Jima*, Clint Eastwood (29 January 2007)

180   *The Italian*, Andrei Kravchuk (5 February 2007)

181   *Day Night Day Night*, Julia Loktev (4 June 2007)

182   *Private Property*, Joachim Lafosse (18 June 2007)

183   *12:08 East of Bucharest*, Corneliu Porumboiu (18 June 2007)

185   *4 Months, 3 Weeks and 2 Days*, Cristian Mungiu (30 January 2008)

186   *Roman de Gare*, Claude Lelouch (28 May 2008)

187   *Savage Grace*, Tom Kalin (11 June 2008)

189   *The Edge of Heaven*, Fatih Akin (25 June 2008)

190   *Adam Resurrected*, Paul Schrader (31 December 2008)

191   *Cherry Blossoms*, Doris Dörrie (4 February 2009)

193   *Defiance*, Edward Zwick (18 February 2009)

195   *Katyn*, Andrzej Wajda (18 March 2009)

197   *Nightwatching*, Peter Greenaway (7 November 2009)

199   *The Messenger*, Oren Moverman (30 December 2009)

**Reconsiderations (Classics)**

201   *Natural Born Killers*, Oliver Stone (12 July 1999)

204   *Grand Illusion*, Jean Renoir (23 August 1999)

205   *D'Artagnan's Daughter*, Bertrand Tavernier (11 October 1999)

206   *Greed*, Erich von Stroheim (13 December 1999)

209   *The Leopard*, Luchino Visconti (21 August 2000)

**Reviews (Documentaries)**

212   *Photographer*, Dariusz Jablonski (10 May 1999)

213   *A Trial in Prague*, Zuzana Justman (8 October 2001)

215   *Fahrenheit 9/11*, Michael Moore (19 July 2004)

218   *Note by Note: The Making of Steinway L1037*, Ben Niles (19 November 2007)

219   *The Beaches of Agnès*, Agnès Varda (15 July 2009)

**Reports (Film Books/Film Art)**

221  *Close Up 1927–1933: Cinema and Modernism* (1 March 1999)

223  *Projections 9: French Filmmakers on Filmmaking* (17 May 1999)

224  "The Death of Film" (6 September 1999)

228  *American Film Audiences: From the Turn of the Century to the Early Sound Era* (4 October 1999)

230  "The State of the Cinema: Humming Again" (22 May 2000)


**In Memoriam**

233  Stanley Kubrick (16 August 1999)

237  Marcello Mastroianni (30 August 1999)

239  Robert Bresson (17 January 2000)

239  John Gielgud (19 June 2000)

240  Valerio Zurlini (25 September 2000)


241  **Conclusion** "The Critic as Writer," by Stanley Kauffmann


246  **Stanley Kauffmann Bibliography**


248  **Index**

**A-34**

## ACKNOWLEDGMENTS

All of the material in *The Millennial Critic: Stanley Kauffmann on Films, 1999–2009* originally appeared in *The New Republic*, except where noted. My thanks to the editors of this publication for their cooperation in this project; permission to reprint came from Stanley Kauffmann himself, who during his long career always copyrighted his articles, reviews, and essays in his own name rather than the name of the publication in which they first appeared.

My deep gratitude goes out to the late Mr. Kauffmann and his wife, Laura, for their valuable support of and assistance on this project during the final years of their lives.

**A-35**

# EXHIBIT "D"

# Retraction Watch

Tracking retractions as a window into the scientific process

## Film review by noted critic a rerun, retracted

<u>with 3 comments</u>



Many devotees of French film consider Jean Renoir's 1939 <u>La Règle du jeu</u> (The Rules of the Game) to be the best example of the genre, and indeed of movie making writ large.

Bad cut alert: One of the rules of the publishing game is, "ne pas plagier," which we don't think we need to translate here.

But that's something that <u>Robert Cardullo</u> seems to have neglected. Cardullo, of Izmir University of Economics in Turkey, isn't a nobody in the world of film criticism (you can say movie reviewing if you like, we won't mind). Here's a bio from <u>Mellen Press</u>:

> Dr. Bert Cardullo has his Doctor of Fine Arts degree from Yale University. An editor and translator as well as a critic and dramaturg, Professor Cardullo has published over twenty books, among them *Theater of the Avant-Garde, 1890-1950: A Critical Anthology* and *Screening the Stage: Studies in Cinedramatic Art*. His articles have appeared in such leading journals as *The Yale Review, Cambridge Quarterly*, and *American Theatre*, and he is the regular film critic for *The Hudson Review* in New York. Dr. Cardullo has served on the theatre-and-film advisory panel of the National Endowment for the Humanities, and he has twice been appointed a Fulbright Scholar.

The paper in question appeared last year in *Studies in French Cinema*. Titled "<u>Cinema as social documentary</u>," it reviewed the work of the legendary French critic <u>André Bazin</u>:

> Traditionally, the discipline of film studies has associated the idea that cinema can bring the 'truth' to the screen with one theorist: André Bazin. But this notion is highly simplistic. Only 6 per cent of Bazin's total writings (amounting to almost 2600 articles and reviews) saw the light of day later through republication in anthologies or edited collections; and any reading of the remaining 94 per cent of these writings (which basically are little known to date) makes it clear that Bazin was not so naïve. Fiction films do tell the truth, but mainly in the way that dreams do: that is, by revealing what people 'really' think or want or believe regardless of their conscious awareness. What is the nature of this 'truth' as told by any fiction film? How can one reconcile such a theoretical perspective on the truth with what is

4/1/2016                        Film review by noted critic a rerun, retracted - Retraction Watch at Retraction Watch

regarded as the Bazinian ontologically realist theory of the cinema? This article will attempt
to answer these questions through the in-depth analysis of a specific article by Bazin, one of
his early (dated 1947) and important ones: 'Tout film est un documentaire social'/'Every
film is a social documentary', as well as through a wide range of examples taken from other,
mostly unfamiliar writings by Bazin.

Evidently, that was a movie readers had seen before. According to the retraction notice:

The article by Cardullo, 'Cinema as social documentary', first published in *Studies in French
Cinema*, Volume 13, Issue 1 (2013) (DOI:10.1386/sfc.13.1.33_1) has been retracted. This
article contains significant overlap with the article 'André Bazin: film as social
documentary' previously published by Marco Grosoli, in the journal *New Readings*,
(http://ojs.cf.ac.uk/index.php/newreadings/article/view/41).

This notice on IngentaConnect gives us a bit of a closeup on the matter (and we have no idea why it's
different):

The article by Bert Cardullo, 'Cinema as social documentary', in volume 13 number 1
(2013) has been retracted due to plagiarism. Fifty-eight per cent of the article reproduces an
article previously published in 2012 by Marco Grosoli, 'André Bazin: film as social
documentary', in the online journal 'New Readings'
(http://ojs.cf.ac.uk/index.php/newreadings/article/view/41).

Here's the abstract from that article:

Traditionally in Film Studies, the idea of cinema being able to put the truth on screen has
been associated with one particular film theorist, namely André Bazin. However, only 6% of
Bazin's almost 2600 articles has been republished in anthologies or edited essay collections
and reading the remaining 94% of these writings (which to date basically remains widely
unread) makes it clear that Bazin was not so naïve. This paper focuses on an essay from
1947, one of Bazin's first and most important, "Tout film est un documentaire social"
["Every Film is a Social Documentary"]. It suggests that fiction films can tell the truth, but
mainly in the way that dreams do, by revealing what people really think, or their collective
unconsciousness, regardless of their conscious awareness. What is this truth which is told by
any fiction film? How can one reconcile this theoretical perspective with Bazinian
ontological theory of cinema in general? This article seeks to answer these questions by
means of an in-depth analysis of that essay and of a wide range of examples taken from
other, mostly unknown writings by Bazin.

In fact, Cardullo's, um, originality as a thinker and writer has already come up for questioning. The blog
Widower's Tango, for example, has called him out, including in a 2012 post titled "Where Did I Read
That Before?"

Quite by chance, in August 2010, I read an article in *The New Yorker* (on its website, that is)
by Richard Brody called "Truffaut's Last Interview", reprinting an interview with a seriously
ill Truffaut (he died soon after from a brain tumor) purportedly conducted by Bert Cardullo.
An observant reader left a comment mentioning the coincidence of the wording in the
interviews with material included on the Criterion DVD of The 400 Blows. Since I had the
DVD with me, I checked them for similarities and published my discoveries on this blog in
October 2010, "Francois and Bert, Parts I & II".

When I brought this to the attention of Gary Morris, who had co-edited the book of interviews with Cardullo, he forwarded my articles, including one I wrote in 2006 for Senses of Cinema which I then republished concerning the first instance of plagiarism from Cardullo that I discovered, to Richard Brody, who discovered even further examples of Cardullo's plagiarizing and published them in another article, "About Truffaut's Last Interview".

This inspired further revelations from other readers, and what I believed, and perhaps hoped, would be my last word on the subject, "An Unravelling" in December 2010. That article inspired yet further comments from readers, including two from just last week, that I have decided to reprint below – if only to get them more out in the open.

Could it be, then, that Cardullo's work is nothing but a … Grand Illusion?

Update, 4:30 p.m. Eastern, 1/28/14: Thanks to a reader, we now know that Cardullo's got something of a body of work in the plagiarism department. The *Cambridge Quarterly* in 2012 retracted four of his articles:

Bert Cardullo, 'Attention, Attention Must Finally Be Unpaid: *Death of a Salesman* and the Reputation of Arthur Miller', *Cambridge Quarterly* 40/4 (2011) pp. 328-341

Bert Cardullo, 'Farce, Dreams, and Desire: *Some Like It Hot* Re-Viewed', *Cambridge Quarterly* 39/2 (2010) pp.142-151

Bert Cardullo, 'Married to the Job: Ermanno Olmi's *Il posto* and *I fidanzati* Reconsidered', *Cambridge Quarterly* 38/2 (2009) pp.120-129

Bert Cardullo, 'Look Back in Bemusement: The New American Cinema, 1965-1970', *Cambridge Quarterly* 37/4 (2008) pp. 375-386

The articles listed above have been retracted at the request of the Editors with the support of the Publisher owing to issues of plagiarism and duplicate publication.

We thank the reader who alerted us to the plagiarism in 'Farce, Dreams and Desire', which is substantially copied from Stanley Kauffmann's 'Billy Wilder's Some Like it Hot' (*Horizon* XV/1 (1973) pp. 65-70), and in 'Married to the Job', which is substantially copied from Stanley Kauffman's reviews of 'The Sound of Trumpets' (*The New Republic*, 12 August 1963) and 'The Fiancés' (*The New Republic*, 15 February 1964).

Following further investigation, it was determined that 'Look Back in Bemusement' was a duplicate publication of Bert Cardullo, 'Look Back in Bemusement: The New American Cinema, 1965-1970', in *Cinematic Illusions: Realism, Subjectivity, and the Avant-Garde* (Cambridge Scholars Publishing, Newcastle upon Tyne 2007) pp.1-7, while 'Attention, Attention' was a duplicate publication of Bert Cardullo, 'Death of a Salesman, life of a Jew: ethnicity, business, and the character of Willy Loman', *Southwest Review* (2007) 22 September.

*Hat tip: Rolf Degen*

**Share this:**

**A-39**

# EXHIBIT "E"

Widower's Tango: Where Did I Read That Before?

4/1/2016

G+1  0    More    Next Blog»                                                Create Blog    Sign In

# Widower's Tango

Wednesday, April 18, 2012

## Where Did I Read That Before?



Quite by chance, in August 2010, I read an article in *The New Yorker* (on its website, that is) by Richard Brody called "Truffaut's Last Interview", reprinting an interview with a seriously ill Truffaut (he died soon after from a brain tumor) purportedly conducted by Bert Cardullo. An observant reader left a comment mentioning the coincidence of the wording in the interviews with material included on the *Criterion DVD* of *The 400 Blows*. Since I had the DVD with me, I checked them for similarities and published my discoveries on this blog in October 2010, "Francois and Bert, Parts I & II".

When I brought this to the attention of Gary Morris, who had co-edited the book of interviews with Cardullo, he forwarded my articles, including one I wrote in 2006 for *Senses of Cinema* which I then republished concerning the first instance of plagiarism from Cardullo that I discovered, to Richard Brody, who discovered even further examples of Cardullo's plagiarizing and published them in another article, "About Truffaut's Last Interview".

This inspired further revelations from other readers, and what I believed, and perhaps hoped, would be my last word on the subject, "An Unravelling" in December 2010. That article inspired yet further comments from readers, including two from just last week, that I have decided to reprint below - if only to get them more out in the open.

Since I am presently living in the Sticks (provincial Philippines), I am in no position to verify any of the claims made. I therefore present them without any editorial caveats. I leave it to someone in a better position than I to assist me in this rather important process. I take the charge of plagiarism very seriously. Even with incontrovertible evidence of it, I try to be careful with the word. After reading from all the links I included here, some might agree that we have been too careful with Bert Cardullo.

Anonymous said...
This is indeed not the only plagiarism that Cardullo has undertaken. The introduction (which he "wrote") to *Theater of the Avant Garde*, a book he coedited with Robert Knopf, has whole passages in it directly out of Christopher Innes's *Avant Garde Theatre*. It's so disappointing to look at a career that prolific and realize it is built on theft.
November 17, 2010

Jerry White said...
I read what you wrote in Senses of Cinema, largely because I had read and enjoyed Cardullo's writing. I found what you wrote there sad; I suppose a more intense emotion was probably called for. Anyway, I wonder if you have seen this, specifically the first blurb there: http://goo.gl/NfnPH
December 17, 2010

Dan Harper said...
I suppose the less intense emotion you felt when you read my article is a general one, but

### Blog Archive

▶ 2016 (14)
▶ 2015 (54)
▶ 2014 (60)
▶ 2013 (57)
▼ 2012 (99)
  ▶ December (9)
  ▶ November (6)
  ▶ October (9)
  ▶ September (9)
  ▶ August (7)
  ▶ July (8)
  ▶ June (8)
  ▶ May (8)
  ▼ April (6)
    Whitewashing
    The Girl With the Dragon Tattoo
    Where Did I Read That Before?
    The Depths of Loss
    The Sun Stood Still
    Among the Converts"
  ▶ March (9)
  ▶ February (9)
  ▶ January (11)
▶ 2011 (132)
▶ 2010 (105)
▶ 2009 (100)
▶ 2008 (20)
▶ 2007 (21)

### About Me



View my

complete profile

# A-41

Widower's Tango: Where Did I Read That Before?

4/1/2016

I suspect that the cat may finally be out of the bag for Cardullo.
December 17, 2010

Jerry White said...
Well, I think you oughta see this. These are the blurbs on the publisher website for his
new book, Screen Writings, published in March 2010:

'Among my contemporaries, the best film critic writing in English in America is Bert
Cardullo, and 'Screen Writings' proves why.' Dan Harper, American film scholar

'A lot of what Bert Cardullo has to say about contemporary world cinema would be
interesting to a very wide audience. He is someone with an impressive and stimulating
command of the difficult dance of the film review.' Jerry White, University of Alberta

'Bert Cardullo's articles and reviews are invariably intelligent, original, and highly informed.
I have been a sturdy admirer of his work for years; he's a solid writer and an equally solid
judge.' Frederick Morgan, American poet

The full link is at http://www.anthempress.com/index.php/subject-areas/browse-by-
type/anthem-monograph-edited-volume/screen-writings-1.html
December 18, 2010

Dan Harper said...
That blurb is also on the Amazon page. Just shows you how a favorable blurb can be
extracted from even a negative review (mine was as favorable as I could make it, under
the circumstances).

The late Fred Morgan gave Cardullo a job at The Hudson Review in the '80s. It's a mercy
that he isn't around any more to see what a mess Cardullo has made of his trust.

But I'm beginning to believe that Cardullo would have to commit murder before anyone
else would notice how much "borrowing" (I'm in a generous mood) he's been doing over
the years.

Thanks for the link.
December 19, 2010

Anonymous said...
Pages 70-72 and pages 85-86 of Cardullo's "Vittorio De Sica" are plagiarized from Stanley
Kauffmann's reviews of "Two Women" and "A Brief Vacation" in "The New Republic" (May
22, 1961 and March 8, 1975 issues). Several sentences are lifted verbatim; Kauffmann's
reviews are not quoted, cited, or acknowledged as sources.

Pages 56-58 and page 195 of Cardullo's book "Waves from the East" are lifted directly
from Kauffmann's "New Republic" reviews of "Turtles Can Fly" and "What Time is it
There?" (March 7, 2005 and February 4, 2002 issues).

Cardullo's two-volume "Screen Writings" is replete with plagiarisms from Kauffmann's old
reviews. In Volume 1: pages 94-98 are stolen from the reviews of Olmi's films "The Sound
of Trumpets" and "The Fiances" in the August 17, 1963 and February 15, 1964 issues of
"The New Republic"; and pages 198-199 are taken almost verbatim from Kauffmann's
review of "The Last Picture Show" in the October 16, 1971 issue of "The New Republic".
In Volume 2: large portions of pages 16-21 are stolen from Kauffmann's reviews of "The
Goodbye Girl" and "Manhattan" in the December 17, 1977 and May 19, 1979 issues of
"The New Republic"; and pages 36-46 include several paragraphs Cardullo lifted from
Kauffmann's reviews of "Eternal Sunshine of the Spotless Mind" and "Me You and
Everyone We Know" (April 5, 2005 and July 11/18, 2005 issues of "The New Republic").

Cardullo's "The Films of Robert Bresson" includes an essay ("Dostoyevskian Surge,
Bressonian Spirit") in which he plagiarizes virtually all of Kauffmann's review of "L'Argent"
(April 16, 1984 issue of "The New Republic").

Cardullo's "Screening the Stage" is filled with plagiarisms: pages 47-49 are taken from
Kauffmann's review of "Betrayal" (February 28, 1983 issue of "The New Republic"); and a

# A-42

Widower's Tango: Where Did I Read That Before?

4/1/2016

large portion of the essay "The Sounds (and Sights) of Silence: 'Way Down East' as Play and Film" (pages 91-99) have been stolen from Kauffmann's essay "D.W. Griffith's 'Way Down East'" in the journal "Horizon" (Spring, 1972).

In the January, 2011 issue of "Notes on Contemporay Literature" the following notice was published:

"This is to inform the readership of 'Notes' that 'Marguerite Ida-Helena Annabel in Gertrude Stein's Doctor Faustus Lights the Lights,' Vol. 40.4:4-6, by Bert Cardullo, is largely plagiarized from pages 82 through 85 of Professor Sarah Bey-Cheng's book 'Mama Dada: Gertrude Stein's Avant-Garde Theater' (Routledge, 2004; reprinted in paper 2005). We condemn Bert Cardullo's dishonesty and apologize to Professor Bey-Cheng and our readers that it escaped our editorial scrutiny."

Cardullo is not a scholar, but, rather, a charlatan and thief who has ransacked the work of critics he professes to respect and admire.
March 30, 2012

Dan Harper said...
Your pains-taking (!) is appreciated. There is an interview of Mr. Kauffmann conducted by Cardullo online. I wonder if Kauffmann was even there? My chief reaction is surprise that all this has gone unnoticed for so long.
March 30, 2012

Anonymous said...
Do you know what's disturbing? As a professor, Cardullo had a history of being extremely strict about plagiarism, warning of expulsion and other consequences for those who plagiarized.

Also disturbing? Sarah Bay-Cheng, from whom he stole material as listed above in the comments, was once his student.
April 15, 2012

Posted by Dan Harper at 12:47 PM

# 4 comments:

Anonymous said...
from Cambridge Quarterly 2012

Editorial Notice
Bert Cardullo, 'Attention, Attention Must Finally Be Unpaid: Death of a Salesman and the Reputation of Arthur Miller', Cambridge Quarterly 40/4 (2011) pp. 328–341

Bert Cardullo, 'Farce, Dreams, and Desire: Some Like It Hot Re-Viewed', Cambridge Quarterly 39/2 (2010) pp.142–151

Bert Cardullo, 'Married to the Job: Ermanno Olmi's Il posto and I fidanzati Reconsidered', Cambridge Quarterly 38/2 (2009) pp. 120–129

Bert Cardullo, 'Look Back in Bemusement: The New American Cinema, 1965–1970', Cambridge Quarterly 37/4 (2008) pp. 375–386

The articles listed above have been retracted at the request of the Editors with the support of the Publisher owing to issues of plagiarism and duplicate publication.

We thank the reader who alerted us to the plagiarism in 'Farce, Dreams and Desire', which is substantially copied from Stanley Kauffmann's 'Billy Wilder's Some Like It Hot' (Horizon XV/1 (1973) pp. 65–70), and in 'Married to the Job', which is substantially copied from Stanley Kauffmann's reviews of 'The Sound of Trumpets' (The New Republic, 12 August 1963) and 'The Fiances' (The New Republic, 15 February 1964).

Following further investigation, it was determined that 'Look Back in Bemusement' was a duplicate publication of Bert Cardullo, 'Look Back in Bemusement: The New American Cinema, 1965–1970', in Cinematic Illusions: Realism, Subjectivity, and the Avant-Garde (Cambridge Scholars Publishing, Newcastle upon Tyne 2007) pp.1–7, while 'Attention, Attention' was a duplicate publication of Bert Cardullo, 'Death of a

4/1/2016
Widower's Tango: Where Did I Read That Before?

Salesman, life of a Jew: ethnicity, business, and the character of Willy Loman',
Southwest Review (2007) 22 September.

http://muse.jhu.edu.proxy.lib.umich.edu/journals/cambridge_quarterly/v041/41.3.editor.h
tml

October 24, 2012 at 2:45 AM

---

EJ said...

Unbelievably, he's still at it. A piece that just came out in the Journal for Dramatic
Theory and Criticism is reprint of stuff from two of his books. It's disturbing that he is
still being published and that no one checks!

March 21, 2014 at 7:40 AM

---

Anonymous said...

One of Cardullo's articles has appeared in the following journals:

1) "The Doctored Dilemma: Shaw's Approach to Tragedy in The Doctor's Dilemma" in
An Idea of the Drama: Six Modern Playwrights in One Movement, ed. Bert Cardullo
(Peter Lang, 2011): 83-96.

2) "The Doctored Dilemma: Shaw's Approach to Tragedy in The Doctor's Dilemma" in
Modern Language Review 106. 3 (July 2011): 647-661.

3) "Play Doctor, Doctor Death: Shaw, Ibsen and Modern Tragedy" in Comparative
Drama 45.3 (Fall 2011): 271-288.

4) "Whose Life is It, Anyway? Shaw, The Doctor's Dilemma and Modern Tragedy" in
SHAW: The Annual of Bernard Shaw Studies 31 (2011): 102-117.

Another article, "Shaw, The Philanderer, and the (Un)Making of Shavian Drama,"
appears in the following three publications:

1) Forum Modernes Theater 25.1 (2010): 33-44.
2) Neophilologus 96.1 (Jan 2012): 137-50.
3) An Idea of the Drama: Six Modern Playwrights in One Movement (Peter Lang,
2011), ed. Bert Cardullo (pp. 65-82).

Michel W. Pharand, general editor
SHAW: The Journal of Bernard Shaw Studies

August 4, 2014 at 7:24 PM

---

 **Gonul Donmez-Colin said...**

Bert Cardullo took a chapter from my book 'Cinemas of the Other: A Personal Journey
with Filmmakers from the Middle East and Central Asia' (2006) and put it in his book
'Waves from the East: New World Cinema, Asian Style; Essays and Interviews' (2010)
without my permission

May 23, 2015 at 11:37 PM

Post a Comment

## Links to this post

Create a Link

---

Newer Post                    Home                    Older Post

Subscribe to: Post Comments (Atom)

**A-44**

# EXHIBIT "F"

4/1/2016                                    Widower's Tango: A Fake is a Fake

| G+1 | 0 |   More   Next Blog»                                    Create Blog   Sign in

# Widower's Tango

**Friday, April 3, 2015**

## A Fake is a Fake

From time to time, without expecting much, I follow the fate of Bert Cardullo, once respected film and theater scholar, whose voluminous plagiarisms have been exposed to the eyes of an unsuspecting - and mostly uncaring - public since *Senses of Cinema* published my article "A Hard Act to Follow" in 2006. Despite further exposure of his pilfering by Richard Brody in *The New Yorker* in 2010, as well as other reports sent to this blog, many of Cardullo's suspect texts remain in print and for sale on Amazon, and he himself remains a faculty member at a university in Izmir, Turkey.



This is disappointing, to put it mildly. While I have encountered a few persistent and pseudonymous personal attacks on this blog and on my *Twitter* account, which a source better acquainted with Cardullo tells me are unmistakably his handiwork, I have heard nothing from him directly. What I've managed to learn of him indirectly isn't encouraging, either.

A *Google* search last week of the words "Bert Cardullo plagiarism" turned up two particular items, one from a website called "Retraction Watch" and another from *The Penn*, website of Indiana University of Pennsylvania. The mission statement of "Retraction Watch" is "Tracking retractions as a window into the scientific process." The article on Cardullo, "Film review by noted critic a rerun, retracted," discusses a book by Cardullo on French film scholar Andre Bazin that was shown to be substantially stolen from another work and was retracted by its publisher. The author of the piece mentions me and several posts on this blog, as well as the retraction statement at website of The Cambridge Quarterly.

But the article at *The Penn* reports on a recent debate that took place at the start of what they called "Banned Book Week," in which it was proposed that, since the writings of Bert Cardullo have been proven to be spurious at worst and suspect at best, his books, that are carried by the IUP library, should be removed from its shelves. An associate professor of English pointed out that anyone consulting Cardullo's books "for scholarly purposes" would not only put his own work in critical jeopardy but would "compound" the error that publishers made and further enrich Cardullo with their citations.

This is an entirely sound argument, but it was countered by another speaker who insisted that it was not the policy of the IUP library to ban books, in accordance with what she called the "library bill of rights," and that it was the publisher's fault in creating the problem in the first place by not examining the material submitted to them more closely.

I see. So, since they didn't create the problem, it's not for librarians to pull books from their shelves simply because they've been proven to be works of plagiarism. That's like an art gallery refusing to remove a Manet painting from its wall just because someone has proved it's a forgery. The gallery wasn't at fault for hanging the painting. It was the art dealer who passed the forgery on to them.

And there are plenty of intellectual property laws around to prevent the library from passing around someone else's work as Cardullo's. Does the publisher have to recall every copy of every book by Cardullo to correct their mistake? That would be an ideal solution but an

### Blog Archive

▶ 2016 (14)
▼ 2015 (54)
  ▶ December (5)
  ▶ November (5)
  ▶ October (4)
  ▶ September (2)
  ▶ August (6)
  ▶ July (5)
  ▶ May (4)
  ▼ April (7)
    Nebraska
    The Killing Fields
    The 47 Ronin
    Priceless
    False & Infuriating
    Ballad of a Soldier
    A Fake is a Fake
  ▶ March (5)
  ▶ February (6)
  ▶ January (5)
▶ 2014 (60)
▶ 2013 (57)
▶ 2012 (99)
▶ 2011 (132)
▶ 2010 (105)
▶ 2009 (100)
▶ 2008 (20)
▶ 2007 (21)

### About Me



View my

complete profile

# A-46

4/1/2018                                     Widower's Tango: A Fake is a Fake

utterly impractical one.

If the library isn't prepared to pull the books, shouldn't it place a proviso inside them warning readers that their contents have been proven to be plagiarized, citing the texts from which Cardullo stole the material? The very lack of urgency demonstrated by professionals involved in the promulgation of these spurious texts shows how little anyone is prepared to take responsibility for them. The one person who could - Cardullo himself - will probably go to his grave denying he did anything wrong, as long as sales of his books and his tenure at a Turkish university remain seriously unchallenged.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Posted by Dan Harder at 8:16 AM

## 1 comment:

**Anonymous said...**

The books have value as historical documents, though, e.g., for someone writing about plagiarism. Maybe a note in the catalog or something. (My feelings on this are probably colored by the fact I've been trying to track down a library's one apparently lost copy of a specific edition of a book *because* it has errors.)

April 22, 2015 at 3:48 PM

Post a Comment

## Links to this post

Create a Link

Newer Post                    Home                    Older Post

Subscribe to: Post Comments (Atom)

Watermark template. Powered by Blogger.

**A-47**

# EXHIBIT "G"

Project MUSE - Whose Life Is It, Anyway?: Shaw, <i>The Doctor's Dilemma</i> and Modern Tragedy

4/1/2016

We cannot verify your location (Log in)

Annual | Contact | Help | Tools | Order | Serve Options (s)

*for Librarians    for Publishers    Advanced Search*

m

BROWSE   OR   Search

Conte

Browse > Area and Ethnic Studies > Irish Studies

## Whose Life Is It, Anyway?: Shaw, *The Doctor's Dilemma* and Modern Tragedy

Bert Cardullo

**From:** SHAW The Annual of Bernard Shaw Studies
Volume 31, 2011
pp. 102-117

Find using OpenURL

Rent from DeepDyve

**In lieu of an abstract, here is a brief excerpt of the content:**

Retraction

The editors of SHAW: The Annual of Bernard Shaw Studies and Penn State University Press, publisher of SHAW, are retracting the following article:

Bert Cardullo, "Whose Life is It, Anyway? Shaw, The Doctor's Dilemma and Modern Tragedy," SHAW 31 (2011): 102-117.

Penn State University Press has determined that the article originally appeared under another title and was thus not original to SHAW. Penn State University Press has requested that this retraction be printed. SHAW accepted and published the article in good faith, with warranties regarding originality made by the author, which now appear to have been breached. SHAW is committed to the highest standards of publication ethics and has accepted the request of Penn State University Press to retract the article.

The Doctor's Dilemma was not a great popular or critical success when it was originally produced in 1906, but the play is one of Shaw's most perplexing, intriguing works and deserves a more prominent place in the Shavian canon. Indeed, in his controversial book on Shaw, Colin Wilson goes so far as to declare that The Doctor's Dilemma "is the culmination of Shaw's career as a playwright." [1] The absurdity of this opinion aside (among the play's successors, after all, were Pygmalion [1913], Heartbreak House [1919], and Saint Joan [1923]), Wilson's praise for the play is veiled criticism of the philosophical preoccupation that he felt seriously diminished the strength of Shaw's later dramatic writing. Wilson reads The Doctor's Dilemma as a return to the nineteenth-century, well-made-play structure that Shaw had effectively adapted earlier; he does not consider the play a serious attempt to write a tragedy, or even as an attempt to write a play of importance. Instead, Wilson praises The Doctor's Dilemma as the last hurrah of the "playful" Shaw before the playwright became hopelessly mired in the politics—and drama—of "creative evolution." I want to argue here, by contrast, that The Doctor's Dilemma is much more interesting than Wilson contends. It is not simply an oddity or a throwback to nineteenth-century dramatic forms, but a serious attempt by Shaw to confront the traditional criteria for greatness in a play without compromising his own modern aesthetic determination of what a play should be.

One of those traditional criteria for greatness is that a dramatic work should aspire to tragedy, which The Doctor's Dilemma does do. Indeed, it was his only major play that Shaw specifically—and somewhat provocatively—labeled a tragedy. [2] To date, however, critics have not yet fully considered the complex relationship between the formal, classically tragic aspects of The Doctor's Dilemma and the play as an example of the new drama that Shaw espoused. [3] And it is precisely this complex relationship between "old" and "new" that renders The Doctor's Dilemma problematic and has so often caused the play—its plot, its dramatic structure, Shaw's artistic intent—to be misunderstood.

Shaw came to write The Doctor's Dilemma partly in response to a challenge from his friend and colleague William Archer. Shaw had criticized Ibsen's use of death in his plays in a column written to honor the Norwegian dramatist a few days after his death. [4] Here is part of Archer's response to Shaw's comments in his own column in The Tribune: "Shaw eschews those profounder revelations of character which come only in crises of tragic circumstance . . . it is not the glory but the limitation of Mr. Shaw's theatre that it is peopled by immortals." [5] A few weeks later, Shaw answered in the third person through the letters column, announcing that "Mr. Shaw" was writing a new play that "is the outcome of the article in which Mr. William Archer penned a remarkable dithyramb to Death, and denied that Mr. Shaw could claim the highest rank as a dramatist until he had faced the King of Terrors on the stage." [6] There can be little doubt that Archer had struck a nerve in his "offensive" defense of Ibsen's tragic drama, and Shaw could not duck the challenge to his abilities as a complete and serious artist...



penn state press

Research Areas

Area and Ethnic Studies > Irish Studies

Literature > English Literature

Recommend

Email a link to this page

Send

Get Permissions

Frequently Downloaded

View Citation

Save Citation

Related Content



The Doctor's Dilemma:
Problems That Do Not Go Away



The Doctor's Dilemma:
Adulterating a Muse



*drama*

Play Doctor, Doctor Death:
Shaw, Ibsen, and Modern
Tragedy



You have access to this content

4/1/2016          Project MUSE - Whose Life Is It, Anyway?: Shaw, <i>The Doctor's Dilemma</i> and Modern Tragedy

Free sample

Open Access

Restricted Access



Bert Cardullo

WHOSE LIFE IS IT, ANYWAY?
SHAW, *THE DOCTOR'S DILEMMA* AND
MODERN TRAGEDY



| Shibboleth | Project MUSE |
|---|---|
| Shibboleth authentication is only available to registered institutions. | For subscribing associations only. |
| | User Name: |
| Choose your institution ▼ | Password: |
| Go | Go |

## Welcome to Project MUSE

Use the simple Search box at the top of the page or the Advanced Search linked from the top of the page to find book and journal content. Refine results with the filtering options on the left side of the Advanced Search page or on your search results page. Click the Browse box to see a selection of books and journals by: Research Area, Titles A-Z, Publisher, Books only, or Journals only.

## Connect with Project MUSE

**Join our Facebook Page**

**Follow us on Twitter**

Project MUSE | 2715 North Charles Street | Baltimore, Maryland USA 21218 | (410) 516-6989 | About | Contact | Help | Tools | Order

©2015 Project MUSE. Produced by The Johns Hopkins University Press in collaboration with The Milton S. Eisenhower Library.

**A-50**

# EXHIBIT "H"

4/1/2016

Project MUSE - Play Doctor, Doctor Death: Shaw, Ibsen, and Modern Tragedy



We cannot verify your location (Log in)

About | Contact | Help | Tools | Order | Saved Citations (?)

for Librarians    for Publishers    Advanced Search

BROWSE   OR   Search                                                    Conte

Browse > Film, Theater, and Performing Arts > Theater and Performance Studies

## Play Doctor, Doctor Death: Shaw, Ibsen, and Modern Tragedy

Bert Cardullo                                                    Find using OpenURL

From: Comparative Drama
Volume 45, Number 3, Fall 2011
pp. 271-288 | 10.1353/cdr.2011.0017

In lieu of an abstract, here is a brief excerpt of the content:

Retraction

The editors of Comparative Drama and Western Michigan University, publisher of Comparative Drama, are retracting the following article:

Cardullo, Bert, "Play Doctor, Doctor Death: Shaw, Ibsen, and Modern Tragedy," Comparative Drama 45, no. 3 (Fall 2011): 271--288.

The editors of Comparative Drama published this article in good faith, trusting in Mr. Cardullo's assertion that the article was original work that had not been published elsewhere. Unfortunately, this was not the case: as we later learned, Mr. Cardullo had published the same article repeatedly, changing only the title.

The Doctor's Dilemma was not a great popular or critical success when it was originally produced in 1906, but the play is one of Bernard Shaw's most perplexing, intriguing works and deserves a more prominent place in the Shavian canon. Indeed, in his controversial book on Shaw, Colin Wilson goes so far as to declare that The Doctor's Dilemma "is the culmination of Shaw's career as a playwright."[1] The absurdity of this opinion aside (among the play's successors, after all, were Pygmalion [1913], Heartbreak House [1919], and Saint Joan [1923]), Wilson's praise for the play is veiled criticism of the philosophical preoccupation that he felt seriously diminished the strength of Shaw's later dramatic writing. Wilson reads The Doctor's Dilemma as a return to the nineteenth-century, well-made-play structure that Shaw had effectively adapted earlier; he does not consider the play a serious attempt to write a tragedy, or even an attempt to write a play of importance. Instead, Wilson praises The Doctor's Dilemma as the last hurrah of the "playful" Shaw before the playwright became hopelessly mired in the politics and drama of "creative evolution." I want to argue here, by contrast, that The Doctor's Dilemma is much more forgiving than Wilson contends. It is not simply an oddity or a throwback to nineteenth-century dramatic forms, but a serious attempt by Shaw to confront the traditional criteria for "greatness" in a play without compromising his own modern aesthetic determination of what a play should be.

One of those traditional criteria for greatness is that a dramatic work should aspire to tragedy, which The Doctor's Dilemma does do. Indeed, of all his major plays this is the only one that Shaw specifically—and somewhat provocatively—labeled a tragedy.[2] To date, however, critics have not yet fully considered the complex relationship between the formal, classically tragic aspects of The Doctor's Dilemma and the play as an example of the new drama that Shaw espoused.[3] And it is precisely this complex relationship between "old" and "new" that renders The Doctor's Dilemma problematic and has so often caused the play—its plot, its dramatic structure, Shaw's artistic intent—to be misunderstood.

Shaw came to write The Doctor's Dilemma partly in response to a challenge from his friend and colleague, William Archer. Shaw had criticized Ibsen's use of death in his plays in a column written to honor the Norwegian dramatist a few days after his death.[4] Here is part of Archer's response to Shaw's comments in his own column in the Tribune: "Shaw eschews those profounder revelations of character which come only in crises of tragic circumstance ... it is not the glory but the limitation of Mr. Shaw's theatre that it is peopled by immortals."[5] A few weeks later, Shaw answered in the third person through the letters column, announcing that "Mr. Shaw" was writing a new play that "is the outcome of the article in which Mr. William Archer penned a remarkable dithyramb to Death, and denied that Mr. Shaw could claim the highest rank as a dramatist until he had faced the King of Terrors on the stage."[6] There can be little doubt that Archer had struck a nerve in his "offensive" defense of Henrik Ibsen's tragic drama, and Shaw would not duck the challenge to his abilities as a complete and serious artist. From its inception, therefore, The Doctor's Dilemma was linked directly to Shaw's intellectual relationship with the work of Ibsen.

Because of the direct relationship of The Doctor...



The Doctor's Dilemma:
Problems That Do Not Go Away

The Doctor's Dilemma:
Adulterating a Muse

Whose Life Is It, Anyway?:
Shaw, The Doctor's Dilemma
and Modern Tragedy

You have access to this content

Free sample

Open Access

Restricted Access

4/1/2016

Project MUSE – Play Doctor, Doctor Death: Shaw, Ibsen, and Modern Tragedy

## RETRACTION

The editors of *Comparative Drama* and Western Michigan University,
publisher of *Comparative Drama*, are retracting the following article:

Cardullo, Bert, "Play Doctor, Doctor Death: Shaw, Ibsen, and Modern
Tragedy," *Comparative Drama* 45, no. 3 (Fall 2011): 271-288.

The editors of *Comparative Drama* published this article in good faith,
trusting in Mr. Cardullo's assertion that the article was original work
that had not been published elsewhere. Unfortunately, this was not the
case: as we later learned, Mr. Cardullo had published the same article
repeatedly, changing only the title.



You must be logged in through Shibboleth or an institution from subscribing to this journal or book to access the full text.

| Shibboleth | Project MUSE |
|---|---|
| Shibboleth authentication is only available to registered institutions. | For subscribing associations only. |
| | User Name: |
| Choose your institution ▼ | Password: |
| Go | Go |

## Welcome to Project MUSE

Use the simple Search box at the top of the page or the Advanced Search
linked from the top of the page to find book and journal content. Refine
results with the filtering options on the left side of the Advanced Search
page or on your search results page. Click the Browse box to see a
selection of books and journals by: Research Area, Titles A-Z, Publisher,
Books only, or Journals only.

## Connect with Project MUSE

Join our Facebook Page

Follow us on Twitter

Project MUSE | 2715 North Charles Street | Baltimore, Maryland USA 21218 | (410) 516-6989 | About | Contact | Help | Tools | Order

©2015 Project MUSE. Produced by The Johns Hopkins University Press in collaboration with The Milton S. Eisenhower Library.

**A-53**

# EXHIBIT "I"

4/1/2016    RETRACTION: Married to the Job: Ermanno Olmi's "Il Posto" and "I Fidanzati" Reconsidered on JSTOR





## RETRACTION: Married to the Job: Ermanno Olmi's "Il Posto" and "I Fidanzati" Reconsidered

Bert Cardullo
*The Cambridge Quarterly*
Vol. 38, No. 2 (June 2009), pp. 120-129

Published by: Oxford University Press
Stable URL: http://www.jstor.org/stable/42967097
Page Count: 11

Viewing page [unnumbered] of pages 120-129



Oxford University Press, publisher of Cambridge Quarterly, is retracting the following article:

Bert Cardullo, "Married to the Job: Ermanno Olmi's Il posto and I fidanzati Reconsidered," Cambridge Quarterly 38/2 (2009) pp.120-129

**A-55**

4/1/2016

RETRACTION: Married to the Job: Ermanno Olmi's "Il Posto" and "I Fidanzati" Reconsidered on JSTOR

The article listed above has been retracted at the request of the Editors with the support of the Publisher owing to issues of plagiarism and duplicate publication.

We thank the reader who alerted us to the plagiarism in 'Married to the Job', which is substantially copied from Stanley Kauffman's reviews of 'The Sound of Trumpets' (The New Republic, 12 August 1963) and 'The Fiancés' (The New Republic, 15 February 1964).

For more information, please contact JSTOR's Content development team at cd@ithaka.org.

*The Cambridge Quarterly* © 2009 Oxford University Press

JSTOR is part of ITHAKA, a not-for-profit organization helping the academic community use digital technologies to preserve the scholarly record and to advance research and teaching in sustainable ways.
©2000-2016 ITHAKA. All Rights Reserved. JSTOR®, the JSTOR logo, JPASS®, and ITHAKA® are registered trademarks of ITHAKA.

**A-56**

# EXHIBIT "J"

Table of contents
Anonymous
*The Hudson Review*; Autumn 2007; 60, 3; ProQuest Research Library
pg. 0_4

# The Hudson Review

## A magazine of literature and the arts

### VOLUME LX NUMBER 3 AUTUMN 2007

**ESSAYS**

The Way of All Flesh     BRUCE BAWER   413
Grease, Balance, and Point of
View in the Work of
Anthony Trollope     CLARA CLAIBORNE PARK   435

**MEMOIR**

End-Days in the Garden     ANDREW HUDGINS   369

**FICTION**

The Norwegian Captain     HERBERT GOLD   389

**POETRY**

The First Signs; The Nomoi;
The Copyists     D. NURKSE   403
Granddad and the
Humpbacks     LAURENCE LIEBERMAN   410
Painkiller; For My Part; Class Curse     LIAM RECTOR   423
Bald Spot     MICHAEL McFEE   426
Skating Upriver; The Laughter of
Women; A Wedding in Maine;
Ring Effect     MARY-SHERMAN WILLIS   429
The Interpreters; In Tide Pools     LOLA HASKINS   433

**CHRONICLES**

Art I     KAREN WILKIN   445
    *Daniel Libeskin's "Crystal" in Toronto; Richard Serra at MoMA*
Art II     ALFRED CORN   452
    *Panels from Lorenzo Ghiberti's "Gates of Paradise"*

Reproduced with permission of the copyright owner.  Further reproduction prohibited without permission.

Theatre                                    RICHARD HORNBY  461
   *Checkhov's "The Three Sisters" and Fugard's "Sizwe Banzi is Dead" in*
   *London*
Dance                                      SIOBHAN PHILLIPS  468
   *Merce Cunningham, performance and exhibition*

## REVIEWS
The Long and the Short of Robinson    DAVID MASON  475
   *"Edwin Arlington Robinson: A Poet's Life," by Scott Donaldson*
The Art of What Remains               PETER MAKUCK  485
   *Grace Schulman, Laure-Anne Bosselaar, Jeff Friedman, etc.*
How Dosty Did It                      THOMAS FILBIN  494
   *Benjamin Black, Michael Wallner, Sena Jeter Naslund, Ian McEwan, etc.*
Another Wharton                        DEAN FLOWER  501
   *"Edith Wharton," by Hermione Lee*
If Lucky Jim Could See Him Now     MICHAEL BARBER  509
   *"The Life of Kingsley Amis," by Zachary Leader*
Jim Crace's Violent Verities            SUSAN BALÉE  517
   *Cormac McCarthy's "The Road" vs. Jim Crace's "The Pesthouse"*

## COMMENT
Letter from India                JAYANTA MAHAPATRA  358

## NOTES ON CONTRIBUTORS                                    528

## TO OUR READERS

It has been called to our attention that several recent film reviews by
Bert Cardullo published in this magazine have been inappropriately
similar to reviews by Stanley Kauffmann that appeared in *The New
Republic*. When asked for an explanation, Bert Cardullo apologized.
We very much regret this occurrence and extend our own apologies
to Stanley Kauffmann, to *The New Republic* and to our readers.

Publication of this issue of THE HUDSON REVIEW is supported by
public funds from the New York State Council on the Arts, a
State Agency. We wish to express our appreciation to this 
organization for its generosity.

Reproduced with permission of the copyright owner.  Further reproduction prohibited without permission.

**A-59**

# EXHIBIT "K"

**A-60**

Henry Thayer

From:           Bruce Austin <baagll@rit.edu>
Sent:           Monday, November 30, 2015 10:25 AM
To:             Henry Thayer
Subject:        Re: Stanley Kauffmann collection

Dear Mr. Thayer:

I acknowledge receipt of your email of November 24, 2015 and have forwarded a copy of it to the editor of the book, Robert Cardullo, for further response.  I can confirm that Mr. Cardullo did provide the RIT Press with a letter from ShiffHardin, LLP which confirmed that Stanley Kauffmann's will did in fact assert that Mr. Cardullo, and only Mr. Cardullo, may anthologize any and all reviews by Mr. Kauffmann, from The New Republic or any other journal, that are previously uncollected or un-anthologized in book form, however this letter is not information that the RIT Press would release to anyone absent a validly issued subpoena.  As for obtaining a copy of the book, feel free to use the following link to purchase a copy of the book for your review:  http://ritpress.rit.edu/publications/books/millennial-critic-stanley-kauffmann-film-1999%E2%80%932009.html

Sincerely,

Bruce A. Austin, Ph.D.
Director, RIT Press
Rochester Institute of Technology
90 Lomb Memorial Drive
Rochester, NY 14623

585-475-2879
baagli@rit.edu
ritpress.rit.edu

On Nov 24, 2015, at 12:35 PM, Henry Thayer <HThayer@bromasite.com> wrote:

> Dear Mr. Austin,
>
> I'm writing to follow up on our telephone conversation on Friday about a collection of Stanley Kauffmann's writing recently published by RIT Press as THE MILLENIAL CRITIC. As Stanley Kauffmann's longtime literary representatives, we were surprised to see the title for sale, as we are not aware of any license for such a collection. After further discussion with the managers of Stanley's estate, they've let me know that they are not aware of any such license made by them or by Stanley to RIT Press or to the editor of the collection and have asked me to look into this for them. Since I don't know exactly what is in the book, I can't say with any certainty who holds the copyright to the material, but it is my understanding that Stanley retained the copyright in most of what he wrote. I think potentially the quickest way to clear this up would be for you to send me a copy of the documentation you mentioned that granted permission to you and the editor to use the material in question. Do you think you can send me a scan of it over email? Also, if you can spare a copy of the book, we'd appreciate a look at it.
>
> Sincerely,
>

1

# EXHIBIT "L"



666 Fifth Avenue
Suite 1700
New York, New York 10103
telephone: 212.753.5000
fax: 212.753.5044

February 12, 2014

Dear Mr. Cardullo:

Thank you for your inquiry concerning the estate of Stanley Kauffmann.

We can confirm that Mr. Kauffmann's will does in fact assert that you, and only you, may anthologize any and all reviews by him, from *The New Republic* or any other journal, that are previously uncollected or un-anthologized in book form. You need only make clear the place of original publication and, of course, give proper attribution to Stanley Kauffmann.

There is no fee attached to this re-publication of Mr. Kauffmann's work, and any royalties from the publication of such a book edited by you should go to you, and you alone. You have the sole authority to choose the press that publishes this work.

Please let me know if you have any further questions.

Sincerely,

Christine A. McGuinness
Coordinating Partner
Schiff Hardin, New York



NEW YORK   CHICAGO   WASHINGTON
SAN FRANCISCO

**A-63**

# EXHIBIT "M"

Henry Thayer

| | |
|---|---|
| From: | Robert Cardullo <robertcardullo@yahoo.com> |
| Sent: | Thursday, December 03, 2015 1:45 AM |
| To: | Henry Thayer |
| Cc: | Bruce Austin |
| Subject: | follow-up |
| Attachments: | Kauffmann_Round 3 Interior Pages_8-27_with Index copy.pdf |
| | |
| Follow Up Flag: | Follow up |
| Flag Status: | Completed |

Mr. Thayer,

Unless you desist and give RIT Press authority to continue publishing *The Millennial Critic*--and, by the way, let us see, in writing, *your* authority to act in Stanley Kauffmann's place--I shall upload the attached pdf of the book to the Internet for anyone to read at his or her leisure, free of charge.

You have until Friday, Dec. 4, 2015, by 5 PM EST to decide. If, at that point, the book is not once again advertised on the RIT Press website, I shall promptly upload it to multiple Internet sites. And there will be nothing you or anyone else can do about it. (Agents like you, I trust you realize, are fast becoming dinosaurs in the Age of the Internet.)

I am not in this for the money; RIT Press and I have performed a service for the late Mr. Kauffmann, in his memory. Please honor that memory by desisting. If you do not, I have spelled out the consequences.

Bert Cardullo
Editor, *Conversations with Stanley Kauffmann*
Editor, *Before His Eyes: Essays in Honor of Stanley Kauffmann*
Editor, *The Millennial Critical: Stanley Kauffmann on Film, 1999-2009*

**A-65**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

THE ESTATE OF STANLEY KAUFFMANN,

                     Plaintiff,

       v.

ROCHESTER INSTITUTE OF TECHNOLOGY,

                Defendant and
                Third-Party Plaintiff,

       v.

ROBERT J. CARDULLO,

                Third-Party Defendant.

Case No. 6:17-cv-06061-CJS

**JURY TRIAL DEMANDED**

## ANSWER AND THIRD-PARTY COMPLAINT

      Defendant Rochester Institute of Technology ("RIT"), by way of its Answer, responds to

Plaintiff's Complaint as follows:

## THE PARTIES

1.     *Plaintiff THE ESTATE OF STANLEY KAUFFMANN ("the Estate") is the successor owner of all copyrights owned in his lifetime by Stanley Kauffinann.  It is based in New York County in the State of New York.  ROBERT MARX was duly designated Preliminary Executor of the Estate by Order of the New York Surrogate's Court in February 2016.*

    **RESPONSE:**  RIT lacks knowledge or information sufficient to form a belief about the

truth of the allegation that Plaintiff is the successor owner of all copyrights owned by Stanley

Kauffmann in his lifetime.  Otherwise admitted.

2.     *Upon information and belief, and according to its website, defendant ROCHESTER INSTITUTE OF TECHNOLOGY ("RIT") was founded in 1829 and is "a privately endowed, coeducational university with nine colleges emphasizing career education and experiential learning." Upon information and belief, RIT conducts business throughout the State of New York, the United Stated, and the rest of the world.*

**RESPONSE:**  Admitted as to the first sentence.  Otherwise denied.

3.      *Upon information and belief, and according to its website, RIT PRESS "is a scholarly publishing enterprise at Rochester Institute of Technology. . . As its editorial policies have evolved, the Press has broadened its reach to include content that supports all academic disciplines offered at Rochester Institute of Technology, our host institution. These include – but are not limited to – business, computer science, applied science and technology, engineering, graphic arts, deaf studies, and liberal arts.  In 2007, an additional imprint, RIT Press, was established for all titles not related to the graphic arts.  As of 2013, all publications will carry this imprint." (In this Complaint, "RIT" refers to both RIT itself and to its "enterprise" RIT PRESS.)*

**RESPONSE:**  Admitted.

## JURISDICTION AND VENUE

4.      *This Court has jurisdiction over this case pursuant to 28 U.S.C. §1338.  This is an action for copyright infringement under the United States Copyright Act. Venue in this district is proper pursuant to 28 U.S.C. §§1391(b) and 1400(a).*

**RESPONSE:**  Admitted as to the first two sentences.  With respect to the third sentence, admitted with respect to this transferee district (Western District of New York) and to the extent necessary, denied as to the transferor district (Southern District of New York)

## ALLEGED UNDERLYING FACTS

5.      *The infringing book, discussed more fully in the following paragraphs, contains a "Biography" of Stanley Kauffmann. That Biography is reprinted in full as Exhibit "A" to this Complaint.  In short, Stanley Kauffmann was an internationally-renowned critic and author whose work was published and widely read for over 50 years.*

**RESPONSE:**  RIT admits that a "Biography" of Stanley Kauffmann published in "THE MILLENNIAL CRITIC:  Stanley Kauffmann on Film: 1999-2009" (the "Work") is attached to Plaintiff's Complaint.  RIT lacks knowledge or information sufficient to form a belief about the allegation that Stanley Kauffman was an internationally-renowned critic and author whose work was published and widely read for over 50 years.  Otherwise denied.

6.      *In late 2015, RIT published a book entitled "THE MILLENNIAL CRITIC: Stanley Kauffmann on Film: 1999-2009" ("The Infringing Book"). (Annexed hereto as Exhibit*

*"B" is a copy of the press release issued by RIT in connection with its publication of the Infringing Book.)   The Table of Contents of the Infringing Book lists 141 separate works that it acknowledges were the copyright property of Stanley Kauffmann (and now his Estate), and each of those works was included in the Infringing Book as published by RIT.  (A copy of that Table of Contents, along with other "front matter," is set forth in full as Exhibit "C" to this Complaint.)*

**RESPONSE:**  Admitted that RIT published the Work and that Exhibits B and C to the

Complaint were parts thereof.  Otherwise denied.

7.    *RIT had no lawful authorization or legal right to publish any of those works in Infringing Book, and thus the Infringing Book contains and constitutes 141 separate infringements of copyrights owned by the Estate. As of the date of this Complaint, however, only 44 of those works have been duly registered with the United States Copyright Office, a prerequisite to suing for infringement. Thus, at present, this action is limited to those 44 separate infringements. Referring to the Table of Contents of the Infringing Book, those 38 works are: "Shakespeare in Love"; "Hurlyburly"; "The Thin Red Line"; "Affliction"; "Private Confessions"; "Dr. Akagi"; "The Children of Heaven"; "The Dreamlife of Angels"; "Devil's Island"; "EdTV"; "The Winslow Boy"; "A Midsummer's Night's Dream"; "Tea with Mussolini"; "Star Wars"; "Besieged"; "Eternity and a Day"; "An Ideal Husband"; "Autumn Tale"; "My Son the Fanatic"; "The Gambler"; "Lucie Aubrac"; "West Beirut"; "American Beauty"; "Breakfast of Champions"; "Jakob the Liar"; "Three Kings"; "The Straight Story"; "Bringing Out the Dead"; "Rosetta"; "The Insider"; "Ride with the Devil"; "Sweet and Lowdown"; "The End of the Affair"; "Natural Born Killers"; "Grand Illusion"; "D'Artagnan's Daughter"; "Greed"; "Photographer"; "Close Up 1927-1933"; "Projections 9"; "The Death of Film"; "American Film Audiences"; "Stanley Kubrick"; and "Marcello Mastroianni." The remaining infringed works will be registered in due course and those infringements will either be added to this action or made the subject of a separate action.*

**RESPONSE:**  Admitted only that the 44 named works are now registered with the

United States Copyright Office.  Otherwise, RIT lacks knowledge or information sufficient to

form a belief about the truth of the allegations in Paragraph 7.

8.    *Upon information and belief, RIT may have -- or may claim to have -- relied on representations by one Bert Cardullo in publishing the Infringing Book. If so, any such reliance was manifestly and shockingly reckless and irresponsible. In short, RIT had no basis or justification to rely on any such representations from a person who was then and is now a notorious plagiarist and abuser of the rights of others. Had RIT conducted even a minimal investigation into the character and reputation of Cardullo, it would have known then what it knows now -- that it should never have published the Infringing Book in the first place.*

**RESPONSE:**  Denied.  RIT states that it was a party to a Publication Agreement (D.I. 19-2), in which the author/editor of the Work represented that he was the sole and exclusive owner of the pieces in the Work, that he would obtain any permissions necessary to publish the pieces therein, and that he granted RIT the exclusive rights to publish the Work throughout the world for the full term of the copyright.  RIT further states that Cardullo was a widely published author and film academic.

9. *A limited recapitulation of the public information about Cardullo that, on information and belief, was readily available to RIT on the Internet includes*:
   *a.   The very first entry in a recent Google search for "Bert Cardullo" was from "Retraction Watch" and is entitled "Film review by noted critic a rerun, retracted." (That entire article, detailing Cardullo's history and reputation as a plagiarist, is annexed hereto as Exhibit "D7.")*
   *b.   That same Google search also produced, on the first page, an article entitled "Where Did I Read That Before?," which also details Cardullo's history and reputation as a plagiarist. (A copy of that article is annexed hereto as Exhibit "E.")*
   *c.   A different Google search also produced an article entitled "A Fake is a Fake," which contains the following opening paragraph:*
      *From time to time, without expecting much, I follow the fate of Bert Cardullo, once respected film and theater scholar, whose voluminous plagiarisms have been exposed to the eyes of an unsuspecting -- and mostly uncaring -- public since Senses of Cinema published my article "A Hard Act to Follow" in 2006. Despite further exposure of his pilfering by Richard Brody in The New Yorker in 2010, as well as other reports sent to this blog, many of Cardullo's suspect texts remain in print and for sale on Amazon, and he himself remains a faculty member at a university in Izmir, Turkey.*
      *(A copy of that article is annexed hereto as Exhibit "F.")*
   *d.   That same Google search also produced a public retraction by the editors of "SHAW: The Annual of Bernard Shaw Studies" and Penn State University Press of an article by Cardullo that was published in that journal. (A copy of that retraction is annexed hereto as Exhibit "G.")*
   *e.   That same Google search also produced a public retraction by the editors of "Comparative Drama" and Western Michigan University of an article by Cardullo that was published in that journal. (A copy of that retraction is annexed hereto as Exhibit "H.")*
   *f.   That same Google search also produced a public retraction by Oxford University Press of an article by Cardullo that was published in "The Cambridge Quarterly." That retraction stated in part as follows:*
      *The editors of Comparative Drama published this article in good faith, trusting in Mr. Cardullo's assertion that the article was original work that*

> *had not been published elsewhere. Unfortunately, this was not the case; as*
> *we later learned, Mr. Cardullo had published the same article repeatedly,*
> *changing only the title.*
>
> *(A copy of that full retraction is annexed hereto as Exhibit "I.")*

**RESPONSE:** Admitted only that Exhibits D–I to the Complaint (which appear to have

been printed by Plaintiff and/or its counsel on April 1, 2016 as shown by the date printed in the

upper left-hand corner of the documents) contain, in part, the titles, sources, and quoted excerpts

as alleged in Paragraph 9.  Otherwise, RIT lacks the knowledge or information sufficient to form

a belief about the truth of the allegations in Paragraph 9.

10.  *In addition, The Hudson Review, for which Cardullo served as a regular film reviewer,*
     *published the following apology in its Autumn 2007 issue*:
> *TO OUR READERS*
> *It has been called to our attention that several recent film reviews by Bert*
> *Cardullo published in this magazine have been inappropriately similar to*
> *reviews by Stanley Kauffmann that appeared in The New Republic. When*
> *asked for an explanation, Bert Cardullo apologized. We very much regret*
> *this occurrence and extend our own apologies to Stanley Kauffmann, to The*
> *New Republic and to our readers.*
>
> *(A copy of that apology is annexed hereto as Exhibit "J.")*

**RESPONSE:**  Admitted only that Exhibit J contains, in part, the quoted excerpt as

alleged in Paragraph 10.  Otherwise, RIT lacks knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 10.

11.  *When The Estate first advised RIT that the Infringing Book was unauthorized and*
     *violated the rights of the Estate, RIT justified its publication of the book in part as*
     *follows*:
> *I can confirm that Mr. Cardullo did provide the RIT Press with a letter*
> *from ShiffHardin LLP [sic] which confirmed that Stanley Kauffmann's will*
> *did in fact assert that Mr. Cardullo, and only Mr. Cardullo, may*
> *anthologize any and all reviews by Mr. Kauffmann, from the New*
> *Republic or any other journal, that are previously uncollected or un-*
> *anthologized in book form, however this letter is not information that the*
> *RIT Press would release to anyone absent a validly issued subpoena.*
>
> *(A copy of that email is annexed hereto as Exhibit "K.")*

**RESPONSE:**   Admitted only that Exhibit K contains, in part, the quoted excerpt as alleged in Paragraph 11.   Otherwise, RIT lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11.

12.   *Although RIT originally refused to produce a copy of that letter to the Estate without a "validly issued subpoena" for it, a copy of it was subsequently obtained by the Estate. (A copy of that "letter" is annexed hereto as Exhibit "L.") That letter is a crude arid obvious forgery, and on information and belief RIT made no attempt to confirm its authenticity until after the Estate challenged the Infringing Book. RIT's purported reliance on it is both laughable and shameful.*

**RESPONSE:**   Denied.   RIT states that it received a copy of the letter attached as Exhibit K and notes that Schiff Hardin is the successor firm to the firm that drafted the will admitted to probate by the Executor of Plaintiff.

13.   *The "copyright notice" in the Infringing Book states: "Copyright © 2015 Rochester Institute of Technology and Bert Cardullo."   Insofar as RIT is concerned, it must have known at the time it made that claim that it was utterly false, since RIT had absolutely no copyright ownership of the contents of the Infringing Book.   And insofar as Cardullo is concerned, RIT also must have known that Cardullo had absolutely no copyright ownership of the contents of the Infringing Book, if only because Cardullo makes that clear in the book itself.   Notably, the copyright notice contains no reference whatever to Mr. Kauffmann or the Estate, although RIT clearly knew at the time that only the Estate owned all the underlying copyrights.   To the extent Cardullo may have represented to RIT that he owned the underlying copyrights, as claimed in the copyright notice, RIT must have known that any such representation was manifestly false and fraudulent.*

**RESPONSE:**   Admitted only that copyright notice in the Work is accurately quoted above.   Otherwise denied.

14.   *A recent and deplorable manifestation of Cardullo's character and utter disdain and disregard for Kauffmann's works and copyrights is his threat that if the Estate did not withdraw its objections to the infringements described in this Complaint, "I shall upload the attached pdf of the book to the Internet for anyone to read at his or her leisure, free of charge. . . And there will be nothing you or anyone else can do about it." (A copy of that email is annexed hereto as Exhibit "M.")*

**RESPONSE:**   Admitted only that Exhibit M contains, in part, the quoted excerpt as alleged in Paragraph 14.   Otherwise, RIT lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14.

15.   *Thereafter, copies of the Infringing Book, and others, suddenly became freely available on the Internet.  RIT was notified of this, but, on information and belief, it has not done anything to have those further infringements taken down, choosing instead to leave them freely available.*

   **RESPONSE:** As to the first sentence, RIT lacks knowledge or information sufficient to form a belief about the truth of the allegations.  As to the second sentence, denied.

16.   *If RIT made even a rudimentary first-page only Google search for "Bert Cardullo" before relying on, if it did, any representations by him, it would have readily discovered his history and reputation as a plagiarist. To the extent RIT did not bother even to conduct such a simple, cost-free, Google search, it plainly acted in an entirely reckless and irresponsible manner in proceeding to publish the Infringing Book in (ostensible) reliance on Cardullo's representations.*

   **RESPONSE:**   As to the first sentence, RIT lacks knowledge or information sufficient to form a belief about the truth of the allegations.  As to the second sentence, denied.

17.   *Indeed, RIT has effectively admitted that its publication of the Infringing Book was irresponsible, indefensible, and illegal by its post-publication statement to the Estate -- but only after the Estate challenged the book -- that it has withdrawn the Infringing Book from publication.*

   **RESPONSE:**  Denied.

18.   *Notwithstanding the public retractions by the distinguished publishers and publications cited above in Paragraph 9, and notwithstanding RIT's full awareness (and effective admission) of the illegality of the Infringing Book, on information and belief it has not issued a single public retraction or disavowal of the Infringing Book, not to mention any apology -- public or private -- to the Estate.*

   **RESPONSE:**  Denied.

19.   *Prior to commencing this action, the Estate sought to explore with RIT a pre-litigation resolution of this matter, and it asked RIT to provide to it any documents that were submitted to it by Cardullo.  However, RIT, through its General Counsel, Robert A. Colon, flatly refused both of those requests, thus in effect daring and forcing the Estate to bring this action.  However, about three months later, RIT's outside counsel apparently*

*overruled Mr. Colon's refusal and provided some, but not all, of the underlying documents requested by the Estate.*

**RESPONSE:**  Denied.

## ALLEGED CAUSE OF ACTION FOR COPYRIGHT INFRINGEMENT

20.     *Plaintiff incorporates here the contents of Paragraphs 1 through 19 above.*

**RESPONSE:**  In response to Paragraph 20, RIT repeats and re-alleges its responses to

Paragraphs 1-19 as though full set forth herein.

21.     *The unauthorized publication by RIT of the copyrighted works identified in Paragraph 7 above constitutes wilful infringement of the registered copyrights therein.*

**RESPONSE:**  Denied.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Claim for Relief)**

Plaintiff has failed to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE
**(No Statutory Damages)**

Plaintiff is not entitled to statutory damages under 17 U.S.C. § 504.

### THIRD AFFIRMATIVE DEFENSE
**(No Intentional or Willful Conduct)**

Plaintiff's claims are barred in whole or in part to the extent that RIT did not engage in

any intentional or willful conduct toward Plaintiff.

### FOURTH AFFIRMATIVE DEFENSE
**(Statute of Limitations)**

Plaintiff's claims are barred by the applicable statute of limitations.

### FIFTH AFFIRMATIVE DEFENSE
**(Fair Use)**

Plaintiff's claims are barred by the doctrine of fair use.

## SIXTH AFFIRMATIVE DEFENSE
### (Laches)

Plaintiff's claims are barred by the doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE
### (Estoppel)

Plaintiff's claims are barred by estoppel.

## EIGHTH AFFIRMATIVE DEFENSE
### (Waiver)

Plaintiff's claims are barred by waiver.

## NINTH AFFIRMATIVE DEFENSE
### (Invalidity or Unenforceability of Copyright)

Plaintiff's copyrights are invalid and/or unenforceable.

## TENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

To the extent Plaintiff suffered any damages, which RIT expressly denies, Plaintiff has failed to take the steps necessary to mitigate the damages sustained.

## ADDITIONAL DEFENSES

RIT reserves the right to supplement or amend this answer, including through the addition of further affirmative defenses, based upon the course of discovery and proceedings in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, RIT demands judgment in its favor against Plaintiff, (a) dismissing the Complaint with prejudice; (b) awarding RIT its costs, attorneys' fees, and expenses incurred in connection with this action; and (c) for any other and further relief as may be appropriate.

## THIRD-PARTY COMPLAINT AGAINST ROBERT J. CARDULLO

Third-Party Plaintiff RIT respectfully submits the following Third-Party Complaint against Robert J. Cardullo ("Cardullo") upon information and belief:

## PARTIES

1.      RIT is an educational institution located in Rochester, New York.  RIT is named as a defendant in a Complaint which was filed by the Estate of Stanley Kauffmann ("the Kauffmann Estate") in the Southern District of New York on or about April 5, 2016 and transferred to the Western District of New York on or about January 26, 2017.  D.I. 26.

2.      Upon information and belief, Cardullo is a U.S. citizen currently living in the Republic of Finland at the following address: Sorvaajankatu 3 B 35, 00880 Helsinki.

## JURISDICTION AND VENUE

3.      This Court has supplemental jurisdiction over these third-party claims pursuant to 28 U.S.C. § 1367(a) because this court has federal question jurisdiction over the copyright infringement action pursuant to 28 U.S.C. § 1338(a), and the third-party claims are so related to the claims in the original action as to comprise part of the same case or controversy.

4.      Personal jurisdiction over Cardullo and venue in the Western District are proper, as RIT and Cardullo entered into an agreement (the "Publication Agreement") prior to publication of the Work that stated in part, "Jurisdiction of any litigation with respect to this Agreement shall be in New York, with venue in a state or federal court of competent jurisdiction in Monroe County."  D.I. 19-2 ¶ XVIII.

## FACTS

5.      Cardullo and RIT are parties to that certain Publication Agreement, dated as of April 9, 2015, setting forth the mutual terms of the compilation, editing, and publication of a

- 10 -

book entitled "The Millenial Critic" (the "Work").  The Work was compiled and edited by Cardullo and published by RIT's academic press.

6.      The Kauffmann Estate alleges that it owns the copyrights to 141 separate pieces within the Work, and that 44 of those pieces have been duly registered with the United States Copyright Office.  D.I. 1 ¶ 7.

7.      The Kauffmann Estate alleges that Cardullo lacked license or authority to reproduce the contents of the Work and misrepresented to RIT that he had obtained and could grant such license or authority.  D.I. 1 ¶ 13.

8.      The Kauffmann Estate alleges that Cardullo provided RIT with a forged letter authorizing his use of the allegedly infringing material.  D.I. 1 ¶¶ 11-12.

9.      Cardullo represented to RIT that he was the "sole and exclusive owner of the Work and of all rights granted to [RIT] by [the Publication Agreement]."  Cardullo further represented to RIT that he had "full power to enter into [the Publication Agreement] and to grant the rights and perform [his] obligations set forth in [the Publication Agreement]."  D.I. 19-2 ¶ I.

10.     Cardullo represented to RIT that he granted [RIT] the exclusive rights to print, publish, use, distribute, transmit, display publicly, and sell the Work throughout the world . . . during the full term of the copyright of the [W]ork."  D.I. 19-2 ¶ II.

11.     Cardullo represented to RIT that he would "obtain promptly, at [his] own expense, any permission deemed necessary by [RIT], in [RIT's] sole discretion, to quote from or reproduce copyrighted material, and shall transmit such permissions in writing to [RIT] with the final manuscript upon [RIT's] request."  D.I. 19-2 ¶ III.

12.     Cardullo agreed to "indemnify and hold harmless [RIT] from any and all claims, demands, actions, suits, and proceedings, and all liabilities, losses, costs, damages, and expenses

**A-76**

(including, without limitation, reasonable attorneys' fees) to the extent caused by or arising out of, the Work or anything contained in it."  D.I. 19-2 ¶ X.

13.     Upon receiving allegations from the Kauffmann Estate that Cardullo lacked the rights to have the Work published, RIT referred the matter to Cardullo for resolution of the allegation.  Cardullo has failed and refused to resolve and remedy the allegations of infringement made by the Kauffmann Estate.

14.     The Kauffmann Estate now alleges that the Work infringed copyrights to certain movie reviews that it asserts are owned by the Kauffmann Estate and now alleges damages based on RIT's publication of the Work.

15.     To the extent that the Work infringed copyrights owned by the Kauffmann Estate, Cardullo is solely responsible, without any fault or liability on the part of RIT.

16.     To the extent that the Work infringed copyrights owned by the Kauffmann Estate, Cardullo has materially violated his representations and obligations to RIT under the Publication Agreement.

17.     To the extent that the Kauffmann Estate was damaged by the alleged copyright infringement, such damages were caused solely by Cardullo, without any fault or liability on the part of RIT.

### THIRD-PARTY CLAIM I
**(INDEMNITY)**

18.     RIT incorporates paragraphs 1 through 17 of the Third-Party Complaint as though set forth fully herein.

19.     As a direct and proximate result of the allegations and above-captioned case filed against RIT by the Kauffmann Estate, RIT is incurring and has incurred attorney's fees, court

costs, and other costs in connection with defending the claims asserted by the Kauffmann Estate, the exact nature and amount of which are accruing at this time.

20.     RIT asserts that it is not liable for the damages sought by the Kauffmann Estate in its Complaint.  However, if RIT is held liable or responsible for damages, such liability will be the direct and proximate result of the actions and failures to act of Cardullo.

21.     In such case, RIT is entitled to complete indemnification by Cardullo for any amount or amounts for which RIT may be adjudicated to pay to The Kauffmann Estate, with costs of defense and reasonable attorney's fees incurred in connection therewith.

## THIRD-PARTY CLAIM II
### (CONTRIBUTION)

22.     RIT incorporates paragraphs 1 through 21 of the Third-Party Complaint as though set forth fully herein.

23.     RIT asserts that it is in no way responsible to the Kauffmann Estate and that RIT is not liable for the damage sought by the Kauffmann Estate in its Complaint.  However, if RIT is held liable or responsible to the Kauffmann Estate for damages, such liability will be the direct and proximate result of the actions and failures to act of Cardullo.

24.     In such case, RIT requests that this Court determine the percentage of liability attributable to Cardullo, by way of contribution, for any amount or amounts for which the RIT may be adjudicated to pay to the Kauffmann Estate, with costs of defense and reasonable attorney's fees incurred in connection therewith.

## THIRD-PARTY CLAIM III
### (BREACH OF CONTRACT)

25.     RIT incorporates paragraphs 1 through 24 of the Third-Party Complaint as though set forth fully herein.

26.     RIT performed its obligations to Cardullo under the Publication Agreement.

27.     As a direct and proximate result of Cardullo's breach of his obligations and representations to RIT, RIT has been materially damaged and, in addition, has been required to defend itself from the Kauffmann Estate's allegations and claims.

<div align="center">

**JURY DEMAND**

</div>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, RIT requests a trial by jury.

<div align="center">

**PRAYER FOR RELIEF**

</div>

**WHEREFORE**, in the event that a judgement is rendered against RIT in connection with the Complaint by the Kauffmann Estate, RIT demands judgement against Cardullo for (a) any and all damages suffered by RIT; (b) an order declaring the percentage of fault, if any, between RIT and Cardullo, and each of them, for damages and losses allegedly caused to the Kauffmann Estate; (c) attorney's fees, court costs and other expenses incurred in the defense of this case; and (d) any such additional relief as the Court deems just and appropriate.

Dated:  February 10, 2017                              Respectfully submitted,

                                                       **BOND, SCHOENECK & KING, PLLC**

                                                       *s/ Jeremy P. Oczek*
                                                       Jeremy P. Oczek, Esq.
                                                       200 Delaware Avenue
                                                       Buffalo, New York 14202
                                                       Telephone: (716) 416-7037
                                                       Email: jpoczek@bsk.com

                                                       *Attorneys for Defendant*
                                                       *Rochester Institute of Technology*

AO 441 (Rev. 07/10)  Summons on Third-Party Complaint

# UNITED STATES DISTRICT COURT

for the

Western District of New York ▾

| | |
|---|---|
| THE ESTATE OF STANLEY KAUFFMANN | ) |
| *Plaintiff* | ) |
| v. | ) |
| ROCHESTER INSTITUTE OF TECHNOLOGY | ) |
| *Defendant, Third-party plaintiff* | ) |
| v. | ) |
| ROBERT J. CARDULLO | ) |
| *Third-party defendant* | ) |

Civil Action  No. 6:17-CV-06061-CJS

## SUMMONS ON A THIRD-PARTY COMPLAINT

To: *(Third-party defendant's name and address)*     Robert J. Cardullo
Sorvaajankatu 3 B 35
00880 HELSINKI
FINLAND

A lawsuit has been filed against defendant Rochester Institute of Technology who as third-party plaintiff is making this claim against you to pay part or all of what the defendant may owe to the plaintiff The Estate of Stanley Kauffmann.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff and on the defendant an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the defendant or defendant's attorney, whose name and address are:

Jeremy P. Oczek, Esq., Bond, Schoeneck & King, PLLC, 200 Delaware Avenue - Suite 900, Buffalo, New York 14202

It must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Kenneth P. Norwick, Esq., Norwick, Schad & Goering, 110 East 9th Street, 29th Floor, New York, New York 10022

If you fail to respond, judgment by default will be entered against you for the relief demanded in the third-party complaint.  You also must file the answer or motion with the court and serve it on any other parties.

A copy of the plaintiff's complaint is also attached.  You may — but are not required to — respond to it.

Date:  _____

*CLERK OF COURT*

_____

*Signature of Clerk or Deputy Clerk*

AO 441 (Rev. 07/10)  Summons on Third-Party Complaint (Page 2)

Civil Action No. 6:17-CV-06061-CJS

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):* _____

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____           _____
                                                    *Server's signature*

                                         _____
                                                    *Printed name and title*

                                         _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

**A-81**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THE ESTATE OF STANLEY KAUFFMANN,

                                Plaintiff,                    **NOTICE OF MOTION FOR**
                                                                  **SUMMARY JUDGMENT**

      v.

ROCHESTER INSTITUTE OF TECHNOLOGY,

                            Defendant and               Case No. 6:17-cv-06061-CJS-MWP
                            Third-Party Plaintiff,

      v.

ROBERT J. CARDULLO,

                            Third-Party Defendant.

| | |
|---|---|
| MOTION BY: | Defendant and Third-Party Plaintiff Rochester Institute of Technology ("Defendant") |
| DATE, TIME AND PLACE OF HEARING: | At the United States District Court, Western District of New York, United States Courthouse, 100 State Street, Rochester, New York before the Honorable Charles J. Siragusa, at a date and time to be determined by the Court. |
| RELIEF SOUGHT: | An order granting Defendant's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56, on Plaintiff's sole cause of action against Defendant for copyright infringement, and granting any other and further relief as the Court deems just and proper. |
| SUPPORTING PAPERS: | Defendant's Local Rule 56 Statement of Undisputed Material Facts; Appendix to Defendant's Local Rule 56 Statement of Undisputed Material Facts, which includes Declaration of Mary P. Moore, Esq., with exhibits, executed on December 4, 2017, and Declaration of David Myer, with exhibits, executed on November 30, 2017; and Defendant's Memorandum of Law in Support of Its Motion for Summary Judgement. |

**PLEASE TAKE FURTHER NOTICE** that Defendant intends to file and serve reply

papers.  Defendant requests oral argument on this motion.

December 4, 2017                    BOND, SCHOENECK & KING, PLLC

                                   /s/ Mary P. Moore
                                   Mary P. Moore, Esq.
                                   Jeremy P. Oczek, Esq.

                                   350 Linden Oaks, Third Floor
                                   Rochester, New York 14625
                                   Telephone: (585) 362-4724
                                   Email: mmoore@bsk.com

                                   200 Delaware Avenue
                                   Buffalo, New York 14202
                                   Telephone: (716) 416-7037
                                   Email: jpoczek@bsk.com

                                   *Attorneys for Defendant/Third-Party Plaintiff*
                                   *Rochester Institute of Technology*

To:     Ken Norwick
        Norwick & Schad
        110 East 59th Street
        New York, NY 10022
        Telephone: (212) 751-4440

        *Attorney for Plaintiff*

3053896.1

**A-83**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THE ESTATE OF STANLEY KAUFFMANN,

                    Plaintiff,

      v.

ROCHESTER INSTITUTE OF TECHNOLOGY,

                Defendant and
                Third-Party Plaintiff,

      v.

ROBERT J. CARDULLO,

                  Third-Party Defendant.

**DEFENDANT'S LOCAL RULE 56
STATEMENT OF UNDISPUTED
MATERIAL FACTS**

Case No. 6:17-cv-06061-CJS-MWP

       Defendant and Third-Party Plaintiff Rochester Institute of Technology ("Defendant"), through its counsel and pursuant to Local Rule 56(a)(1), respectfully submits the following Statement of Material Facts in support of Defendant's motion for summary judgment.

       1.     Stanley Kauffmann was the film critic for a periodical magazine called The New Republic from 1958 until at least 2012, with a brief break in 1966.  (Moore Decl. ¶ 27, Exhibit 10.)

       2.     Plaintiff produced one Certificate of Registration for the works RIT allegedly infringed by its publication of <u>The Millennial Critic: Stanley Kauffmann on Film, 1999-2009</u> ("The Millennial Critic").  (Moore Decl. ¶ 14, Exhibit 3.)

       3.     This Certificate of Registration has an effective date of March 7, 2016.  (Moore Decl., Exhibit 3.)

4.      This Certificate of Registration lists the Estate of Stanley Kauffmann as the copyright claimant.  (Moore Decl., Exhibit 3.)

5.      This Certificate of Registration shows that the works at issue in this litigation (*i.e.* the works that RIT allegedly infringed by publishing The Millennial Critic) are all film reviews written by Stanley Kauffmann as contributions to The New Republic.  (Moore Decl. ¶ 14-15, Exhibit 3.)

6.      This Certificate of Registration shows that the works at issue in this litigation were all first published in various issues of The New Republic in 1999.  (*Id.*)

7.      A letter from The New Republic to Stanley Kauffmann dated March 22, 2004 states the following:

> Our agreement with you has always been an oral understanding, and among other things we do want to ensure that we are not violating your rights in any way.  To that end, we'd like to confirm with you our understanding of our past relationship with you, as well as our relationship with you and your contributions to *The New Republic* going forward.
>
> We have always understood that you have been writing articles for *The New Republic* as a freelance contributor.  We have also always understood in doing business with you that, in light of our regular monthly compensation arrangement with you, all articles you have written for *The New Republic* have been "works made for hire," as that term is defined under the US Copyright laws.  We'd like to confirm with you that the above understanding of our business relationship with you is correct . . .
>
> Please acknowledge your agreement with us about this by so indicating with your signature below . . .

(Myer Decl. ¶ 5, Exhibit A.)

8.      This letter was signed by Leon Wieseltier on behalf of The New Republic and it was signed and dated by Stanley Kauffmann on March 22, 2004.  (Myer Decl., Exhibit A.)

9.      A letter from The New Republic to Stanley Kauffmann dated April 2, 1993 states the following:

2

> This is to confirm our telephone call this morning.  You may, of course, reprint any or all the film reviews you have done for TNR in your forthcoming anthology.  We'd simply request that there be some indication that the essays first appeared in our pages.

(Myer Decl. ¶ 6, Exhibit B.)

10.    The New Republic sold, assigned, and/or transferred to Stanley Kauffmann all right, title and interest in and to the copyrights for all works by Stanley Kauffmann that were published by The New Republic in the following years: 1959-1965, 1967-1969, 1970-1979.  (Moore Decl. ¶ 22, Exhibit 8.)

11.    The New Republic sold, assigned, and/or transferred to Stanley Kauffmann all right, title and interest in and to the copyrights for particular works by Stanley Kauffmann that were published by The New Republic on various particular dates in the years 1962, 1965, 1966, 1970, 1973-1977, 1979, 1981-1982, 1984, and 1986.  (Moore Decl. ¶ 22, Exhibit 9.)

12.    Stanley Kauffmann was formally invited to become the film critic for The New Republic in 1958, at which time The New Republic offered to pay Mr. Kauffmann $50 per column.  (Moore Decl. ¶ 27, Exhibit 11.)

13.    Between at least 1998 and 2001, Mr. Kauffmann was paid a flat fee each month for his contributions to The New Republic.  (MyerDecl. ¶ 8-11.)

14.    From January 1998 through February 1999, Mr. Kauffmann was paid a flat fee of $3,000 per month in exchange for his contributions to The New Republic.  (Myer Decl. ¶ 9.)

15.    Beginning in March 1999, this flat amount increased to $3,750 per month for Mr. Kauffmann's contributions to The New Republic for the remainder of 1999.  (Myer Decl. ¶ 10.)

16.    Mr. Kauffmann was paid $4,000 per month in exchange for his contributions to The New Republic in 2000 and 2001.  (Myer Decl. ¶ 11.)

December 4, 2017                                      BOND, SCHOENECK & KING, PLLC

/s/ Mary P. Moore_____
Mary P. Moore, Esq.
Jeremy P. Oczek, Esq.

350 Linden Oaks, Third Floor
Rochester, New York 14625
Telephone: (585) 362-4724
Email: mmoore@bsk.com

200 Delaware Avenue
Buffalo, New York 14202
Telephone: (716) 416-7037
Email: jpoczek@bsk.com

*Attorneys for Defendant/Third-Party Plaintiff*
*Rochester Institute of Technology*

To:    Ken Norwick
       Norwick & Schad
       110 East 59th Street
       New York, NY 10022
       Telephone: (212) 751-4440

       *Attorney for Plaintiff*

**A-87**

Case 6:17-cv-06061-CJS-MWP   Document 52-2   Filed 12/04/17   Page 1 of 3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THE ESTATE OF STANLEY KAUFFMANN,

                 Plaintiff,

    v.

ROCHESTER INSTITUTE OF TECHNOLOGY,

              Defendant and
              Third-Party Plaintiff,

    v.

ROBERT J. CARDULLO,

               Third-Party Defendant.

**APPENDIX TO DEFENDANT'S LOCAL RULE 56 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Case No. 6:17-cv-06061-CJS-MWP

       Defendant and Third-Party Plaintiff Rochester Institute of Technology, through its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56, respectfully submits its evidentiary materials in support of its motion for summary judgment.

| INDEX | | |
|---|---|---|
| **Exhibit** | **Description** | |
| A | Declaration of Mary P. Moore, Esq., Executed on December 4, 2017 | |
| | Exhibit 1 | Complaint filed by Plaintiff The Estate of Stanley Kauffmann on April 5, 2016 [ECF #1] |
| | Exhibit 2 | Answer and Third-Party Complaint filed by Defendant on February 10, 2017 [ECF #29] |
| | Exhibit 3 | Certificate of Registration with effective date of March 7, 2016 |
| | Exhibit 4 | Subpoena Duces Tecum served by Defendant on The New Republic |
| | Exhibit 5 | Subpoena Duces Tecum served by Defendant on Brandt & Hochman Literary Agents ("Brandt & |

| | | Hochman) |
|---|---|---|
| | Exhibit 6 | Exhibit K to the Complaint filed by Plaintiff on April 5, 2016 [ECF #1-11] |
| | Exhibit 7 | Full copy of final email dated November 24, 2015, which appears on Exhibit K to the Complaint |
| | Exhibit 8 | Copyright transfers produced by Brandt & Hochman for all Kauffmann works published by The New Republic in the following years: 1959-1965, 1967-1969, 1970-1979 |
| | Exhibit 9 | Copyright transfers produced by Brandt & Hochman for particular Kauffmann works published by The New Republic on various particular dates in the following years: 1962, 1965, 1966, 1970, 1973-1977, 1979, 1981-1982, 1984, and 1986 |
| | Exhibit 10 | Email produced by Brandt & Hochman dated October 10, 2013 |
| | Exhibit 11 | Letter produced by Brandt & Hochman dated August 1958 |
| B | Declaration of David Myer, The New Republic, Executed on November 30, 2017 | |
| | Exhibit A | Letter agreement between The New Republic and Stanley Kauffmann dated March 22, 2004 |
| | Exhibit B | Letter from The New Republic to Stanley Kauffmann dated April 2, 1993 |

December 4, 2017                         BOND, SCHOENECK & KING, PLLC

                                         /s/ Mary P. Moore_____
                                         Mary P. Moore, Esq.
                                         Jeremy P. Oczek, Esq.

                                         350 Linden Oaks, Third Floor
                                         Rochester, New York 14625
                                         Telephone: (585) 362-4724
                                         Email: mmoore@bsk.com

                                         200 Delaware Avenue
                                         Buffalo, New York 14202
                                         Telephone: (716) 416-7037
                                         Email: jpoczek@bsk.com

                                         *Attorneys for Defendant/Third-Party Plaintiff*
                                         *Rochester Institute of Technology*

To:    Ken Norwick
       Norwick & Schad
       110 East 59th Street
       New York, NY 10022
       Telephone: (212) 751-4440

       *Attorney for Plaintiff*

**A-90**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THE ESTATE OF STANLEY KAUFFMANN,

               Plaintiff,

     v.

ROCHESTER INSTITUTE OF TECHNOLOGY,

               Defendant and
               Third-Party Plaintiff,

     v.

ROBERT J. CARDULLO,

               Third-Party Defendant.

**DECLARATION OF MARY P. MOORE, ESQ.**

Case No. 6:17-cv-06061-CJS-MWP

Mary P. Moore, Esq. declares, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.    I am an attorney with Bond, Schoeneck & King, PLLC, which represents Defendant and Third-Party Plaintiff Rochester Institute of Technology ("RIT") in the above-captioned action.

2.    I submit this declaration in support of RIT's motion for summary judgment made pursuant to Fed. R. Civ. P. 56 and Local Rule 56.

3.    Plaintiff The Estate of Stanley Kauffmann commenced this action by the filing of a complaint on April 5, 2016 in the Southern District of New York [ECF #1], a true and correct copy of which is attached hereto as Exhibit 1 (without exhibits).

4.    This action was then transferred to the Western District of New York by a Memorandum and Order dated January 20, 2017 [ECF #25].

5.      Plaintiff asserts that it is "the successor owner of all copyrights owned in his lifetime by Stanley Kauffmann." (Compl. ¶ 1.)

6.      Plaintiff further asserts that RIT (including RIT Press, its scholarly publishing enterprise) infringed upon copyrights owned by Plaintiff through the unauthorized publication of 44 articles listed in paragraph 7 of the complaint that are contained in <u>The Millennial Critic: Stanley Kauffmann on Film, 1999-2009</u> ("The Millennial Critic"), which was published by RIT in late 2015. (*Id.* ¶ 2, 3, 7, 21.)

7.      Plaintiff further states that the copyrights for works allegedly infringed "have been duly registered with the United States Copyright Office, a prerequisite to suing for infringement." (*Id.* ¶ 7.)

8.      RIT answered the complaint on February 10, 2017, wherein it denied liability and asserted a third-party complaint against Third-Party Defendant Robert J. Cardullo ("Cardullo") [ECF #29], a true and correct copy of which is attached hereto as Exhibit 2.

9.      RIT admitted that it published The Millennial Critic, but otherwise denied that it had infringed upon Plaintiff's copyrights. (Answer/Third-Party Compl. at p. 3 ¶ 6, p. 8 ¶ 21.)

10.      It further alleged that Cardullo and RIT had entered into a Publication Agreement in April 2015, wherein Cardullo (as editor of The Millennial Critic) represented that he was the sole and exclusive owner of the works contained The Millennial Critic and that he would obtain any permissions necessary to quote from copyrighted work, and further agreed to indemnify and hold harmless RIT from any and all claims caused by or arising out of The Millennial Critic. (*Id.* at p. 11-12 ¶ 9-12.)

11.      Mr. Cardullo was served with the third-party complaint on March 3, 2017 [ECF #37].

3053921.2

12.     Failing to appear in this action, RIT obtained an entry of default against Mr. Cardullo on May 16, 2017 [ECF #40].

13.     The parties appeared before The Honorable Marian W. Payson on July 12, 2017 for the Rule 16 conference.  The parties thereafter engaged in mediation, and then discovery.

14.     During discovery, RIT requested that Plaintiff produce the certificates of registration for the works that RIT allegedly infringed by publishing The Millennial Critic.  In response, Plaintiff produced one Certificate of Registration, a true and correct copy of which is attached hereto as Exhibit 3 (the "Certificate of Registration").

15.     The Certificate of Registration purportedly extends to 48 film reviews written by Stanley Kauffmann that were first published in various issues of The New Republic in 1999. These works were registered as contributions to a periodical.

16.     RIT served a subpoena duces tecum on The New Republic, service of which was accepted on November 1, 2017.  A true and correct of the subpoena duces tecum served on The New Republic is attached hereto as Exhibit 4.

17.     On or about November 8, 2017, The New Republic produced a number of documents in response thereto, including the documents attached as exhibits to the Declaration of David Myer dated November 30, 2017 ("Myer Decl."), submitted herewith.

18.     Exhibit A to the Myer Declaration contains a letter agreement between The New Republic and Stanley Kauffmann dated March 22, 2004, which states the following:

> Our agreement with you has always been an oral understanding, and among other things we do want to ensure that we are not violating your rights in any way.  To that end, we'd like to confirm with you our understanding of our past relationship with you, as well as our relationship with you and your contributions to *The New Republic* going forward.
>
> We have always understood that you have been writing articles for *The New Republic* as a freelance contributor.  We have also always understood in doing

<div align="center">3</div>

**A-93**

business with you that, in light of our regular monthly compensation arrangement with you, all articles you have written for *The New Republic* have been "works made for hire," as that term is defined under the US Copyright laws. We'd like to confirm with you that the above understanding of our business relationship with you is correct . . .

Please acknowledge your agreement with us about this by so indicating with your signature below . . .

(Myer Decl. ¶ 5, Exhibit A.)

19.     Exhibit B to the Myer Declaration contains a letter from The New Republic to Stanley Kauffmann dated April 2, 1993, which states the following:

This is to confirm our telephone call this morning. You may, of course, reprint any or all the film reviews you have done for TNR in your forthcoming anthology. We'd simply request that there be some indication that the essays first appeared in our pages.

(Myer Decl. ¶ 6, Exhibit B.)

20.     RIT also served a subpoena duces tecum on Brandt & Hochman Literary Agents ("Brandt & Hochman"), service of which was accepted on October 24, 2017. A true and correct copy of the subpoena duces tecum served on Brandt & Hochman is attached hereto as Exhibit 5. On or about November 13, 2017, Brandt & Hochman produced a number of documents in response thereto.

21.     According to an email attached as an Exhibit K to the complaint in this action [ECF #1-11], Brandt & Hochman were "Stanley Kauffmann's longtime literary representatives." A true and correct copy of Exhibit K to the complaint is attached hereto as Exhibit 6. While the last page of Exhibit K to the complaint appears cut off, a true and correct copy of the final email on Exhibit K dated November 24, 2015 as maintained by RIT is attached hereto as Exhibit 7.

22.     In response to the request for all documents concerning copyright ownership of all articles or other works written by Stanley Kauffmann and published by The New Republic,

including but not limited to articles or other works published between January 1, 1999 and December 31, 1999, Brandt & Hochman produced the following documents, among others:

     a.   A number of transfer documents, wherein The New Republic sold, assigned, and/or transferred to Stanley Kauffmann all right, title and interest in and to the copyright for all works by Stanley Kauffmann that were published by The New Republic in various years: 1959-1965, 1967-1969, 1970-1979.  A true and correct copy of these transfer documents produced by Brandt & Hochman in response to the subpoena are attached hereto as Exhibit 8.

     b.   A number of transfer documents, wherein The New Republic sold, assigned, and/or transferred to Stanley Kauffmann all right, title and interest in and to the copyright for particular works by Stanley Kauffmann that were published by The New Republic on various particular dates in the years 1962, 1965, 1966, 1970, 1973-1977, 1979, 1981-1982, 1984, and 1986.  A true and correct copy of these transfer documents produced by Brandt & Hochman in response to the subpoena are attached hereto as Exhibit 9.

    23.    Neither Plaintiff, The New Republic, nor Brandt & Hochman has produced any documents showing transfers of copyrights for articles written by Stanley Kauffmann and first published by The New Republic in 1999.

    24.    In fact, despite responding to RIT's document request for all communications between Plaintiff and The New Republic since Mr. Kauffmann's death, Plaintiff has not produced any documents showing that it (or any of its agents) ever even inquired with The New Republic as to the ownership of the copyrights for articles written by Mr. Kauffmann and first published by The New Republic in 1999, or for any other year.

    25.    In response to the request for all documents concerning Stanley Kauffman's reputation since October 9, 2013, Brandt & Hochman produced an email dated October 10, 2013

**A-95**

containing the text of Mr. Kauffmann's obituary that was published on October 9, 2013 in The New York Times.  A true and correct copy of the email produced by Brandt & Hochman containing Mr. Kauffmann's obituary is attached hereto as Exhibit 10.

26.    Mr. Kauffmann's obituary states that his movie reviews appeared in The New Republic for more than a half-century after he became its film critic in 1958.  The obituary further states that Mr. Kauffmann's "essays appeared weekly for the next 55 years, with a break in 1966, when he was, briefly, the chief theatre critic for The New York Times."  It states that Mr. Kauffmann's "last article printed in The New Republic appeared on Dec. 31."  *See* Exhibit 10 hereto.

27.    Plaintiff produced a letter from The New Republic to Stanley Kauffmann dated 1958 wherein The New Republic formally invited Mr. Kauffmann to become its film critic, for which he would be paid $50 per column.  A true and correct copy of the letter produced by Plaintiff is attached hereto as Exhibit 11.

28.    RIT now moves for summary judgment based upon documents produced in discovery, which demonstrate that Mr. Kauffmann does not own the copyrights for the allegedly infringed works.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on December 4, 2017.

  _/s/ Mary P. Moore_____
                  Mary P. Moore, Esq.

3053921.2

**A-96**

# EXHIBIT 1

Case 18-2404, Document 44, 10/01/2018, 2400476, Page105 of 208

**A-97**

Case 6:17-cv-06061-CJS-MWP   Document 52-4   Filed 12/04/17   Page 2 of 8
Case 6:17-cv-06061-CJS   Document 1   Filed 04/05/16   Page 1 of 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

THE ESTATE OF STANLEY KAUFFMANN,

<div style="margin-left:2em;">Plaintiff,</div>

- against -

ROCHESTER INSTITUTE OF TECHNOLOGY,

<div style="margin-left:2em;">Defendant.</div>
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

COMPLAINT FOR
COPYRIGHT INFRINGEMENT

JURY DEMANDED

This is an action for copyright infringement involving the unauthorized and unlawful international exploitation by the defendant's book publishing enterprise of -- for present purposes -- forty-four separate copyrighted works created by the late and internationally-renowned critic and author Stanley Kauffmann, who died on October 9, 2013. Acknowledging that Mr. Kauff-mann, and now his Estate, owns all the infringed copyrights, the defendant's infringing book itself declares: "[D]uring his long career [Mr. Kauffmann] always copyrighted his articles, reviews and essays in his own name rather than the name of the publication in which they first appeared."

<div align="center">THE PARTIES</div>

1. Plaintiff THE ESTATE OF STANLEY KAUFFMANN ("the Estate") is the successor owner of all copyrights owned in his lifetime by Stanley Kauffmann. It is based in New York County in the State of New York. ROBERT MARX was duly designated Preliminary Executor of the Estate by Order of the New York Surrogate's Court in February 2016.

2. Upon information and belief, and according to its website, defendant ROCHESTER INSTITUTE OF TECHNOLOGY ("RIT") was founded in 1829 and is "a privately endowed, coeducational university with nine colleges emphasizing career education and experiential learning." Upon information and belief, RIT conducts business throughout the State of New

Case 18-2404, Document 44, 10/01/2018, 2400476, Page106 of 208
**A-98**

Case 6:17-cv-06061-CJS-MWP   Document 52-4   Filed 12/04/17   Page 3 of 8
Case 6:17-cv-06061-CJS   Document 1   Filed 04/05/16   Page 2 of 7

York, the United States, and the rest of the world.

3.   Upon information and belief, and according to its website, RIT PRESS "is a scholarly publishing enterprise at Rochester Institute of Technology. . . . As its editorial policies have evolved, the Press has broadened its reach to include content that supports all academic disciplines offered at Rochester Institute of Technology, our host institution.  These include — but are not limited to — business, computer science, applied science and technology, engineering, graphic arts, deaf studies, and liberal arts.  In 2007, an additional imprint, RIT Press, was established for all titles not related to the graphic arts. As of 2013, all publications will carry this imprint."  (In this Complaint, "RIT" refers to both RIT itself and to its "enterprise" RIT PRESS.)

## JURISDICTION AND VENUE

4.   This Court has jurisdiction over this case pursuant to 28 U.S.C. §1338.  This is an action for copyright infringement under the United States Copyright Act.  Venue in this district is proper pursuant to 28 U.S.C. §§1391(b) and 1400(a).

## UNDERLYING FACTS

5.   The infringing book, discussed more fully in the following paragraphs, contains a "Biography" of Stanley Kauffmann. That Biography is reprinted in full as Exhibit "A" to this Complaint.  In short, Stanley Kauffmann was an internationally-renowned critic and author whose work was published and widely read for over 50 years.

6.   In late 2015, RIT published a book entitled "THE MILLENNIAL CRITIC: Stanley Kauffmann on Film: 1999-2009" ("The Infringing Book").  (Annexed hereto as Exhibit "B" is a copy of the press release issued by RIT in connection with its publication of the Infringing Book.)  The Table of Contents of the Infringing Book lists 141 separate works that it acknowledges were the copyright property of Stanley Kauffmann (and now his Estate), and each of those works was included in the Infringing Book as published by RIT.  (A copy of that Table of Contents, along with other "front matter," is set forth in full as Exhibit "C" to this Complaint.)

7.   RIT had no lawful authorization or legal right to publish any of those works in the

2

Case 18-2404, Document 44, 10/01/2018, 2400476, Page107 of 208

**A-99**

Case 6:17-cv-06061-CJS-MWP   Document 52-4   Filed 12/04/17   Page 4 of 8
Case 6:17-cv-06061-CJS   Document 1   Filed 04/05/16   Page 3 of 7

Infringing Book, and thus the Infringing Book contains and constitutes 141 separate infringe-ments of copyrights owned by the Estate. As of the date of this Complaint, however, only 44 of those works have been duly registered with the United States Copyright Office, a prerequisite to suing for infringement. Thus, at present, this action is limited to those 44 separate infringements. Referring to the Table of Contents of the Infringing Book, those 38 works are: "Shakespeare in Love"; "Hurlyburly"; "The Thin Red Line"; "Affliction"; "Private Confessions"; "Dr. Akagi"; "The Children of Heaven"; "The Dreamlife of Angels"; "Devil's Island"; "EdTV"; "The Wins-low Boy"; "A Midsummer's Night's Dream"; "Tea with Mussolini"; "Star Wars"; "Besieged"; "Eternity and a Day"; "An Ideal Husband"; "Autumn Tale"; "My Son the Fanatic"; "The Gambler"; "Lucie Aubrac"; "West Beirut"; "American Beauty"; "Breakfast of Champions"; "Jakob the Liar"; "Three Kings"; "The Straight Story"; "Bringing Out the Dead"; "Rosetta"; "The Insider"; "Ride with the Devil"; "Sweet and Lowdown"; "The End of the Affair"; "Natural Born Killers"; "Grand Illusion"; "D'Artagnan's Daughter"; "Greed"; "Photographer"; "Close Up 1927-1933"; "Projections 9"; "The Death of Film"; "American Film Audiences"; "Stanley Kubrick"; and "Marcello Mastroianni." The remaining infringed works will be registered in due course and those infringements will either be added to this action or made the subject of a sep-arate action.

8. Upon information and belief, RIT may have -- or may claim to have -- relied on representations by one Bert Cardullo in publishing the Infringing Book. If so, any such reliance was manifestly and shockingly reckless and irresponsible. In short, RIT had no basis or justi-fication to rely on any such representations from a person who was then and is now a notorious plagiarist and abuser of the rights of others. Had RIT conducted even a minimal investigation into the character and reputation of Cardullo, it would have known then what it knows now -- that it should never have published the Infringing Book in the first place.

9. A limited recapitulation of the public information about Cardullo that, on information and belief, was readily available to RIT on the Internet includes:

Case 18-2404, Document 44, 10/01/2018, 2400476, Page108 of 208
**A-100**
Case 6:17-cv-06061-CJS-MWP   Document 52-4   Filed 12/04/17   Page 5 of 8
Case 6:17-cv-06061-CJS   Document 1   Filed 04/05/16   Page 4 of 7

a.  The very first entry in a recent Google search for "Bert Cardullo" was from "Retraction Watch" and is entitled "Film review by noted critic a rerun, retracted." (That entire article, detailing Cardullo's history and reputation as a plagiarist, is annexed hereto as Exhibit "D.")

b.  That same Google search also produced, on the first page, an article entitled "Where Did I Read That Before?," which also details Cardullo's history and reputation as a plagiarist. (A copy of that article is annexed hereto as Exhibit "E.")

c.  A different Google search also produced an article entitled "A Fake is a Fake," which contains the following opening paragraph:

> From time to time, without expecting much, I follow the fate of Bert Cardullo, once respected film and theater scholar, whose voluminous plagiarisms have been exposed to the eyes of an unsuspecting -- and mostly uncaring -- public since *Senses of Cinema* published my article "A Hard Act to Follow" in 2006. Despite further exposure of his pilfering by Richard Brody in *The New Yorker* in 2010, as well as other reports sent to this blog, many of Cardullo's suspect texts remain in print and for sale on Amazon, and he himself remains a faculty member at a university in Izmir, Turkey.

(A copy of that article is annexed hereto as Exhibit "F.")

d.  That same Google search also produced a public retraction by the editors of "SHAW: The Annual of Bernard Shaw Studies" and Penn State University Press of an article by Cardullo that was published in that journal. (A copy of that retraction is annexed hereto as Exhibit "G.")

e.  That same Google search also produced a public retraction by the editors of "Comparative Drama" and Western Michigan University of an article by Cardullo that was published in that journal. (A copy of that retraction is annexed hereto as Exhibit "H.")

f.  That same Google search also produced a public retraction by Oxford University Press of an article by Cardullo that was published in "The Cambridge Quarterly." That retraction stated in part as follows:

> The editors of Comparative Drama published this article in good faith, trusting in Mr. Cardullo's assertion that the article was original work that had not been published elsewhere. Unfortunately, this was not the case; as we later learned, Mr. Cardullo had published the same article repeatedly, changing only the title.

4

Case 18-2404, Document 44, 10/01/2018, 2400476, Page109 of 208

**A-101**

Case 6:17-cv-06061-CJS-MWP   Document 52-4   Filed 12/04/17   Page 6 of 8
Case 6:17-cv-06061-CJS   Document 1   Filed 04/05/16   Page 5 of 7

(A copy of that full retraction is annexed hereto as Exhibit "I.")

10.  In addition, The Hudson Review, for which Cardullo served as a regular film re-

viewer, published the following apology in its Autumn 2007 issue:

TO OUR READERS

It has been called to our attention that several recent film reviews by Bert
Cardullo published in this magazine have been inappropriately similar to reviews
by Stanley Kauffmann that appeared in *The New Republic*.  When asked for an
explanation, Bert Cardullo apologized.  We very much regret this occurrence and
extend our own apologies to Stanley Kauffmann, to *The New Republic* and to our
readers.

(A copy of that apology is annexed hereto as Exhibit "J.")

11.  When The Estate first advised RIT that the Infringing Book was unauthorized and

violated the rights of the Estate, RIT justified its publication of the book in part as follows:

I can confirm that Mr. Cardullo did provide the RIT Press with a letter from
ShiffHardin LLP [sic] which confirmed that Stanley Kauffmann's will did in fact
assert that Mr. Cardullo, and only Mr. Cardullo, may anthologize any and all
reviews by Mr. Kauffmann, from the New Republic or any other journal, that are
previously uncollected or un-anthologized in book form, however this letter is not
information that the RIT Press would release to anyone absent a validly issued
subpoena.

(A copy of that email is annexed hereto as Exhibit "K.")

12.  Although RIT originally refused to produce a copy of that letter to the Estate without

a "validly issued subpoena" for it, a copy of it was subsequently obtained by the Estate.  (A copy

of that "letter" is annexed hereto as Exhibit "L.")  That letter is a crude and obvious forgery, and

on information and belief RIT made no attempt to confirm its authenticity until after the Estate

challenged the Infringing Book.  RIT's purported reliance on it is both laughable and shameful.

13.  The "copyright notice" in the Infringing Book states: "Copyright © 2015 Rochester

Institute of Technology and Bert Cardullo."  Insofar as RIT is concerned, it must have known at

the time it made that claim that it was utterly false, since RIT had absolutely no copyright owner-

ship of the contents of the Infringing Book.  And insofar as Cardullo is concerned, RIT also must

have known that Cardullo had absolutely no copyright ownership of the contents of the Infring-

ing Book, if only because Cardullo makes that clear in the book itself.. Notably, the copyright

Case 18-2404, Document 44, 10/01/2018, 2400476, Page110 of 208
**A-102**

Case 6:17-cv-06061-CJS-MWP   Document 52-4   Filed 12/04/17   Page 7 of 8
Case 6:17-cv-06061-CJS   Document 1   Filed 04/05/16   Page 6 of 7

notice contains no reference whatever to Mr. Kauffmann or the Estate, although RIT clearly knew at the time that only the Estate owned all the underlying copyrights. To the extent Cardullo may have represented to RIT that he owned the underlying copyrights, as claimed in the copyright notice, RIT must have known that any such representation was manifestly false and fraudulent.

14. A recent and deplorable manifestation of Cardullo's character and utter disdain and disregard for Kauffmann's works and copyrights is his threat that if the Estate did not withdraw its objections to the infringements described in this Complaint, "I shall upload the attached pdf of the book to the Internet for anyone to read at his or her leisure, free of charge. . . And there will be nothing you or anyone else can do about it." (A copy of that email is annexed hereto as Exhibit "M.")

15. Thereafter, copies of the Infringing Book, and others, suddenly became freely available on the Internet. RIT was notified of this, but, on information and belief, it has not done anything to have those further infringements taken down, choosing instead to leave them freely available.

16. If RIT made even a rudimentary first-page only Google search for "Bert Cardullo" before relying on, if it did, any representations by him, it would have readily discovered his history and reputation as a plagiarist. To the extent RIT did not bother even to conduct such a simple, cost-free, Google search, it plainly acted in an entirely reckless and irresponsible manner in proceeding to publish the Infringing Book in (ostensible) reliance on Cardullo's representations.

17. Indeed, RIT has effectively admitted that its publication of the Infringing Book was irresponsible, indefensible, and illegal by its post-publication statement to the Estate -- but only after the Estate challenged the book -- that it has withdrawn the Infringing Book from publication.

6

Case 18-2404, Document 44, 10/01/2018, 2400476, Page111 of 208
**A-103**

Case 6:17-cv-06061-CJS-MWP   Document 52-4   Filed 12/04/17   Page 8 of 8
Case 6:17-cv-06061-CJS   Document 1   Filed 04/05/16   Page 7 of 7

18. Notwithstanding the public retractions by the distinguished publishers and publications cited above in Paragraph 9, and notwithstanding RIT's full awareness (and effective admission) of the illegality of the Infringing Book, on information and belief it has not issued a single public retraction or disavowal of the Infringing Book, not to mention any apology -- public or private -- to the Estate.

19. Prior to commencing this action, the Estate sought to explore with RIT a pre-litigation resolution of this matter, and it asked RIT to provide to it any documents that were submitted to it by Cardullo. However, RIT, through its General Counsel, Robert A. Colon, flatly refused both of those requests, thus in effect daring and forcing the Estate to bring this action. However, about three months later, RIT's outside counsel apparently overruled Mr. Colon's refusal and provided some, but not all, of the underlying documents requested by the Estate.

### CAUSE OF ACTION FOR COPYRIGHT INFRINGEMENT

20. Plaintiff incorporates here the contents of Paragraphs 1 through 19 above.

21. The unauthorized publication by RIT of the copyrighted works identified in Paragraph 7 above constitutes wilful infringement of the registered copyrights therein.

WHEREFORE, with respect to each act of copyright infringement by RIT, the Estate demands judgment a) adjudicating that RIT infringed the Estate's copyrights in the relevant works; b) issuing a permanent injunction preventing RIT from making any further use or publication of the Infringing Book or its contents; c) awarding to the Estate RIT's profits attributable to the infringements and all damages sustained by the Estate; d) awarding to the Estate its costs and attorneys' fees; e) awarding to the Estate punitive damages; and e) awarding such other relief as the Court deems just.

Dated: April 4, 2016

NORWICK, SCHAD & GOERING

By: _____
Kenneth P. Norwick (KN 4622)
110 East 59th Street
New York, New York 10022
(212) 751-4440
Attorneys for Plaintiff
ken@norwickschad.com

**A-104**

# EXHIBIT 2

Case 18-2404, Document 44, 10/01/2018, 2400476, Page113 of 208
**A-105**
Case 6:17-cv-06061-CJS-MWP   Document 52-5   Filed 12/04/17   Page 2 of 15
Case 6:17-cv-06061-CJS   Document 29   Filed 02/10/17   Page 1 of 14

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF NEW YORK

THE ESTATE OF STANLEY KAUFFMANN,

           Plaintiff,

v.

ROCHESTER INSTITUTE OF TECHNOLOGY,

           Defendant and
           Third-Party Plaintiff,

v.

ROBERT J. CARDULLO,

           Third-Party Defendant.

Case No. 6:17-cv-06061-CJS

**JURY TRIAL DEMANDED**

### ANSWER AND THIRD-PARTY COMPLAINT

Defendant Rochester Institute of Technology ("RIT"), by way of its Answer, responds to

Plaintiff's Complaint as follows:

### THE PARTIES

1.     *Plaintiff THE ESTATE OF STANLEY KAUFFMANN ("the Estate") is the successor owner of all copyrights owned in his lifetime by Stanley Kauffmann. It is based in New York County in the State of New York. ROBERT MARX was duly designated Preliminary Executor of the Estate by Order of the New York Surrogate's Court in February 2016.*

    **RESPONSE:** RIT lacks knowledge or information sufficient to form a belief about the

truth of the allegation that Plaintiff is the successor owner of all copyrights owned by Stanley

Kauffmann in his lifetime. Otherwise admitted.

2.     *Upon information and belief, and according to its website, defendant ROCHESTER INSTITUTE OF TECHNOLOGY ("RIT") was founded in 1829 and is "a privately endowed, coeducational university with nine colleges emphasizing career education and experiential learning." Upon information and belief, RIT conducts business throughout the State of New York, the United Stated, and the rest of the world.*

Case 18-2404, Document 44, 10/01/2018, 2400476, Page114 of 208
**A-106**
Case 6:17-cv-06061-CJS-MWP   Document 52-5   Filed 12/04/17   Page 3 of 15
Case 6:17-cv-06061-CJS   Document 29   Filed 02/10/17   Page 2 of 14

**RESPONSE:** Admitted as to the first sentence. Otherwise denied.

3.   *Upon information and belief, and according to its website, RIT PRESS "is a scholarly publishing enterprise at Rochester Institute of Technology. . . As its editorial policies have evolved, the Press has broadened its reach to include content that supports all academic disciplines offered at Rochester Institute of Technology, our host institution. These include – but are not limited to – business, computer science, applied science and technology, engineering, graphic arts, deaf studies, and liberal arts.  In 2007, an additional imprint, RIT Press, was established for all titles not related to the graphic arts.  As of 2013, all publications will carry this imprint." (In this Complaint, "RIT" refers to both RIT itself and to its "enterprise" RIT PRESS.)*

**RESPONSE:** Admitted.

### JURISDICTION AND VENUE

4.   *This Court has jurisdiction over this case pursuant to 28 U.S.C. §1338.  This is an action for copyright infringement under the United States Copyright Act. Venue in this district is proper pursuant to 28 U.S.C. §§1391(b) and 1400(a).*

**RESPONSE:** Admitted as to the first two sentences.  With respect to the third sentence, admitted with respect to this transferee district (Western District of New York) and to the extent necessary, denied as to the transferor district (Southern District of New York)

### ALLEGED UNDERLYING FACTS

5.   *The infringing book, discussed more fully in the following paragraphs, contains a "Biography" of Stanley Kauffmann. That Biography is reprinted in full as Exhibit "A" to this Complaint.  In short, Stanley Kauffmann was an internationally-renowned critic and author whose work was published and widely read for over 50 years.*

**RESPONSE:** RIT admits that a "Biography" of Stanley Kauffmann published in "THE MILLENNIAL CRITIC:  Stanley Kauffmann on Film: 1999-2009" (the "Work") is attached to Plaintiff's Complaint.  RIT lacks knowledge or information sufficient to form a belief about the allegation that Stanley Kauffman was an internationally-renowned critic and author whose work was published and widely read for over 50 years.  Otherwise denied.

6.   *In late 2015, RIT published a book entitled "THE MILLENNIAL CRITIC: Stanley Kauffmann on Film: 1999-2009" ("The Infringing Book"). (Annexed hereto as Exhibit*

Case 18-2404, Document 44, 10/01/2018, 2400476, Page115 of 208
**A-107**

Case 6:17-cv-06061-CJS-MWP   Document 52-5   Filed 12/04/17   Page 4 of 15
Case 6:17-cv-06061-CJS   Document 29   Filed 02/10/17   Page 3 of 14

"B" is a copy of the press release issued by RIT in connection with its publication of the Infringing Book.)   The Table of Contents of the Infringing Book lists 141 separate works that it acknowledges were the copyright property of Stanley Kauffmann (and now his Estate), and each of those works was included in the Infringing Book as published by RIT.   (A copy of that Table of Contents, along with other "front matter," is set forth in full as Exhibit "C" to this Complaint.)

**RESPONSE:**   Admitted that RIT published the Work and that Exhibits B and C to the

Complaint were parts thereof.   Otherwise denied.

7.      RIT had no lawful authorization or legal right to publish any of those works in Infringing Book, and thus the Infringing Book contains and constitutes 141 separate infringements of copyrights owned by the Estate. As of the date of this Complaint, however, only 44 of those works have been duly registered with the United States Copyright Office, a prerequisite to suing for infringement. Thus, at present, this action is limited to those 44 separate infringements. Referring to the Table of Contents of the Infringing Book, those 38 works are: "Shakespeare in Love"; "Hurlyburly"; "The Thin Red Line"; "Affliction"; "Private Confessions"; "Dr. Akagi"; "The Children of Heaven"; "The Dreamlife of Angels"; "Devil's Island"; "EdTV"; "The Winslow Boy"; "A Midsummer's Night's Dream"; "Tea with Mussolini"; "Star Wars"; "Besieged"; "Eternity and a Day"; "An Ideal Husband"; "Autumn Tale"; "My Son the Fanatic"; "The Gambler"; "Lucie Aubrac"; "West Beirut"; "American Beauty"; "Breakfast of Champions"; "Jakob the Liar"; "Three Kings"; "The Straight Story"; "Bringing Out the Dead"; "Rosetta"; "The Insider"; "Ride with the Devil"; "Sweet and Lowdown"; "The End of the Affair"; "Natural Born Killers"; "Grand Illusion"; "D'Artagnan's Daughter"; "Greed"; "Photographer"; "Close Up 1927-1933"; "Projections 9"; "The Death of Film"; "American Film Audiences"; "Stanley Kubrick"; and "Marcello Mastroianni." The remaining infringed works will be registered in due course and those infringements will either be added to this action or made the subject of a separate action.

**RESPONSE:**   Admitted only that the 44 named works are now registered with the

United States Copyright Office.   Otherwise, RIT lacks knowledge or information sufficient to

form a belief about the truth of the allegations in Paragraph 7.

8.      Upon information and belief, RIT may have -- or may claim to have -- relied on representations by one Bert Cardullo in publishing the Infringing Book. If so, any such reliance was manifestly and shockingly reckless and irresponsible. In short, RIT had no basis or justification to rely on any such representations from a person who was then and is now a notorious plagiarist and abuser of the rights of others. Had RIT conducted even a minimal investigation into the character and reputation of Cardullo, it would have known then what it knows now -- that it should never have published the Infringing Book in the first place.

Case 18-2404, Document 44, 10/01/2018, 2400476, Page116 of 208

**A-108**

Case 6:17-cv-06061-CJS-MWP   Document 52-5   Filed 12/04/17   Page 5 of 15
Case 6:17-cv-06061-CJS   Document 29   Filed 02/10/17   Page 4 of 14

**RESPONSE:** Denied. RIT states that it was a party to a Publication Agreement (D.I. 19-2), in which the author/editor of the Work represented that he was the sole and exclusive owner of the pieces in the Work, that he would obtain any permissions necessary to publish the pieces therein, and that he granted RIT the exclusive rights to publish the Work throughout the world for the full term of the copyright. RIT further states that Cardullo was a widely published author and film academic.

9.    *A limited recapitulation of the public information about Cardullo that, on information and belief, was readily available to RIT on the Internet includes:*

*a.   The very first entry in a recent Google search for "Bert Cardullo" was from "Retraction Watch" and is entitled "Film review by noted critic a rerun, retracted." (That entire article, detailing Cardullo's history and reputation as a plagiarist, is annexed hereto as Exhibit "D7.")*

*b.   That same Google search also produced, on the first page, an article entitled "Where Did I Read That Before?," which also details Cardullo's history and reputation as a plagiarist. (A copy of that article is annexed hereto as Exhibit "E.")*

*c.   A different Google search also produced an article entitled "A Fake is a Fake," which contains the following opening paragraph:*

*From time to time, without expecting much, I follow the fate of Bert Cardullo, once respected film and theater scholar, whose voluminous plagiarisms have been exposed to the eyes of an unsuspecting -- and mostly uncaring -- public since Senses of Cinema published my article "A Hard Act to Follow" in 2006. Despite further exposure of his pilfering by Richard Brody in The New Yorker in 2010, as well as other reports sent to this blog, many of Cardullo's suspect texts remain in print and for sale on Amazon, and he himself remains a faculty member at a university in Izmir, Turkey.*

*(A copy of that article is annexed hereto as Exhibit "F.")*

*d.   That same Google search also produced a public retraction by the editors of "SHAW: The Annual of Bernard Shaw Studies" and Penn State University Press of an article by Cardullo that was published in that journal. (A copy of that retraction is annexed hereto as Exhibit "G.")*

*e.   That same Google search also produced a public retraction by the editors of "Comparative Drama" and Western Michigan University of an article by Cardullo that was published in that journal. (A copy of that retraction is annexed hereto as Exhibit "H.")*

*f.   That same Google search also produced a public retraction by Oxford University Press of an article by Cardullo that was published in "The Cambridge Quarterly." That retraction stated in part as follows:*

*The editors of Comparative Drama published this article in good faith, trusting in Mr. Cardullo's assertion that the article was original work that*

Case 18-2404, Document 44, 10/01/2018, 2400476, Page117 of 208
**A-109**

Case 6:17-cv-06061-CJS-MWP   Document 52-5   Filed 12/04/17   Page 6 of 15
Case 6:17-cv-06061-CJS   Document 29   Filed 02/10/17   Page 5 of 14

> *had not been published elsewhere. Unfortunately, this was not the case; as*
> *we later learned, Mr. Cardullo had published the same article repeatedly,*
> *changing only the title.*
> *(A copy of that full retraction is annexed hereto as Exhibit "I.")*

**RESPONSE:**   Admitted only that Exhibits D–I to the Complaint (which appear to have

been printed by Plaintiff and/or its counsel on April 1, 2016 as shown by the date printed in the

upper left-hand corner of the documents) contain, in part, the titles, sources, and quoted excerpts

as alleged in Paragraph 9.   Otherwise, RIT lacks the knowledge or information sufficient to form

a belief about the truth of the allegations in Paragraph 9.

10.   *In addition, The Hudson Review, for which Cardullo served as a regular film reviewer,*
   *published the following apology in its Autumn 2007 issue:*
> *TO OUR READERS*
> *It has been called to our attention that several recent film reviews by Bert*
> *Cardullo published in this magazine have been inappropriately similar to*
> *reviews by Stanley Kauffmann that appeared in The New Republic. When*
> *asked for an explanation, Bert Cardullo apologized. We very much regret*
> *this occurrence and extend our own apologies to Stanley Kauffmann, to The*
> *New Republic and to our readers.*
> *(A copy of that apology is annexed hereto as Exhibit "J.")*

**RESPONSE:**   Admitted only that Exhibit J contains, in part, the quoted excerpt as

alleged in Paragraph 10.   Otherwise, RIT lacks knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 10.

11.   *When The Estate first advised RIT that the Infringing Book was unauthorized and*
   *violated the rights of the Estate, RIT justified its publication of the book in part as*
   *follows:*
> *I can confirm that Mr. Cardullo did provide the RIT Press with a letter*
> *from ShiffHardin LLP [sic] which confirmed that Stanley Kauffmann's will*
> *did in fact assert that Mr. Cardullo, and only Mr. Cardullo, may*
> *anthologize any and all reviews by Mr. Kauffmann, from the New*
> *Republic or any other journal, that are previously uncollected or un-*
> *anthologized in book form, however this letter is not information that the*
> *RIT Press would release to anyone absent a validly issued subpoena.*
> *(A copy of that email is annexed hereto as Exhibit "K.")*

Case 18-2404, Document 44, 10/01/2018, 2400476, Page118 of 208
**A-110**
Case 6:17-cv-06061-CJS-MWP   Document 52-5   Filed 12/04/17   Page 7 of 15
Case 6:17-cv-06061-CJS   Document 29   Filed 02/10/17   Page 6 of 14

**RESPONSE:**  Admitted only that Exhibit K contains, in part, the quoted excerpt as alleged in Paragraph 11.  Otherwise, RIT lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11.

12. *Although RIT originally refused to produce a copy of that letter to the Estate without a "validly issued subpoena" for it, a copy of it was subsequently obtained by the Estate. (A copy of that "letter" is annexed hereto as Exhibit "L.") That letter is a crude and obvious forgery, and on information and belief RIT made no attempt to confirm its authenticity until after the Estate challenged the Infringing Book. RIT's purported reliance on it is both laughable and shameful.*

**RESPONSE:**  Denied.  RIT states that it received a copy of the letter attached as Exhibit K and notes that Schiff Hardin is the successor firm to the firm that drafted the will admitted to probate by the Executor of Plaintiff.

13. *The "copyright notice" in the Infringing Book states: "Copyright © 2015 Rochester Institute of Technology and Bert Cardullo." Insofar as RIT is concerned, it must have known at the time it made that claim that it was utterly false, since RIT had absolutely no copyright ownership of the contents of the Infringing Book. And insofar as Cardullo is concerned, RIT also must have known that Cardullo had absolutely no copyright ownership of the contents of the Infringing Book, if only because Cardullo makes that clear in the book itself. Notably, the copyright notice contains no reference whatever to Mr. Kauffmann or the Estate, although RIT clearly knew at the time that only the Estate owned all the underlying copyrights. To the extent Cardullo may have represented to RIT that he owned the underlying copyrights, as claimed in the copyright notice, RIT must have known that any such representation was manifestly false and fraudulent.*

**RESPONSE:**  Admitted only that copyright notice in the Work is accurately quoted above.  Otherwise denied.

14. *A recent and deplorable manifestation of Cardullo's character and utter disdain and disregard for Kauffmann's works and copyrights is his threat that if the Estate did not withdraw its objections to the infringements described in this Complaint, "I shall upload the attached pdf of the book to the Internet for anyone to read at his or her leisure, free of charge. . . And there will be nothing you or anyone else can do about it." (A copy of that email is annexed hereto as Exhibit "M.")*

Case 18-2404, Document 44, 10/01/2018, 2400476, Page119 of 208

**A-111**

Case 6:17-cv-06061-CJS-MWP   Document 52-5   Filed 12/04/17   Page 8 of 15
Case 6:17-cv-06061-CJS   Document 29   Filed 02/10/17   Page 7 of 14

**RESPONSE**:   Admitted only that Exhibit M contains, in part, the quoted excerpt as alleged in Paragraph 14.   Otherwise, RIT lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14.

15.   *Thereafter, copies of the Infringing Book, and others, suddenly became freely available on the Internet.  RIT was notified of this, but, on information and belief, it has not done anything to have those further infringements taken down, choosing instead to leave them freely available.*

   **RESPONSE:**  As to the first sentence, RIT lacks knowledge or information sufficient to form a belief about the truth of the allegations.  As to the second sentence, denied.

16.   *If RIT made even a rudimentary first-page only Google search for "Bert Cardullo" before relying on, if it did, any representations by him, it would have readily discovered his history and reputation as a plagiarist. To the extent RIT did not bother even to conduct such a simple, cost-free, Google search, it plainly acted in an entirely reckless and irresponsible manner in proceeding to publish the Infringing Book in (ostensible) reliance on Cardullo's representations.*

   **RESPONSE:**  As to the first sentence, RIT lacks knowledge or information sufficient to form a belief about the truth of the allegations.  As to the second sentence, denied.

17.   *Indeed, RIT has effectively admitted that its publication of the Infringing Book was irresponsible, indefensible, and illegal by its post-publication statement to the Estate -- but only after the Estate challenged the book -- that it has withdrawn the Infringing Book from publication.*

   **RESPONSE:**  Denied.

18.   *Notwithstanding the public retractions by the distinguished publishers and publications cited above in Paragraph 9, and notwithstanding RIT's full awareness (and effective admission) of the illegality of the Infringing Book, on information and belief it has not issued a single public retraction or disavowal of the Infringing Book, not to mention any apology -- public or private -- to the Estate.*

   **RESPONSE:**  Denied.

19.   *Prior to commencing this action, the Estate sought to explore with RIT a pre-litigation resolution of this matter, and it asked RIT to provide to it any documents that were submitted to it by Cardullo. However, RIT, through its General Counsel, Robert A. Colon, flatly refused both of those requests, thus in effect daring and forcing the Estate to bring this action. However, about three months later, RIT's outside counsel apparently*

Case 18-2404, Document 44, 10/01/2018, 2400476, Page120 of 208

**A-112**

Case 6:17-cv-06061-CJS-MWP   Document 52-5   Filed 12/04/17   Page 9 of 15
Case 6:17-cv-06061-CJS   Document 29   Filed 02/10/17   Page 8 of 14

*overruled Mr. Colon's refusal and provided some, but not all, of the underlying documents requested by the Estate.*

**RESPONSE:** Denied.

## ALLEGED CAUSE OF ACTION FOR COPYRIGHT INFRINGEMENT

20.     *Plaintiff incorporates here the contents of Paragraphs 1 through 19 above.*

**RESPONSE:**   In response to Paragraph 20, RIT repeats and re-alleges its responses to

Paragraphs 1-19 as though full set forth herein.

21.     *The unauthorized publication by RIT of the copyrighted works identified in Paragraph 7 above constitutes wilful infringement of the registered copyrights therein.*

**RESPONSE:** Denied.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Claim for Relief)**

Plaintiff has failed to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE
**(No Statutory Damages)**

Plaintiff is not entitled to statutory damages under 17 U.S.C. § 504.

### THIRD AFFIRMATIVE DEFENSE
**(No Intentional or Willful Conduct)**

Plaintiff's claims are barred in whole or in part to the extent that RIT did not engage in

any intentional or willful conduct toward Plaintiff.

### FOURTH AFFIRMATIVE DEFENSE
**(Statute of Limitations)**

Plaintiff's claims are barred by the applicable statute of limitations.

### FIFTH AFFIRMATIVE DEFENSE
**(Fair Use)**

Plaintiff's claims are barred by the doctrine of fair use.

Case 18-2404, Document 44, 10/01/2018, 2400476, Page121 of 208
# A-113
Case 6:17-cv-06061-CJS-MWP   Document 52-5   Filed 12/04/17   Page 10 of 15
Case 6:17-cv-06061-CJS   Document 29   Filed 02/10/17   Page 9 of 14

## SIXTH AFFIRMATIVE DEFENSE
### (Laches)

Plaintiff's claims are barred by the doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE
### (Estoppel)

Plaintiff's claims are barred by estoppel.

## EIGHTH AFFIRMATIVE DEFENSE
### (Waiver)

Plaintiff's claims are barred by waiver.

## NINTH AFFIRMATIVE DEFENSE
### (Invalidity or Unenforceability of Copyright)

Plaintiff's copyrights are invalid and/or unenforceable.

## TENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

To the extent Plaintiff suffered any damages, which RIT expressly denies, Plaintiff has failed to take the steps necessary to mitigate the damages sustained.

## ADDITIONAL DEFENSES

RIT reserves the right to supplement or amend this answer, including through the addition of further affirmative defenses, based upon the course of discovery and proceedings in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, RIT demands judgment in its favor against Plaintiff, (a) dismissing the Complaint with prejudice; (b) awarding RIT its costs, attorneys' fees, and expenses incurred in connection with this action; and (c) for any other and further relief as may be appropriate.

Case 18-2404, Document 44, 10/01/2018, 2400476, Page122 of 208
**A-114**
Case 6:17-cv-06061-CJS-MWP   Document 52-5   Filed 12/04/17   Page 11 of 15
Case 6:17-cv-06061-CJS   Document 29   Filed 02/10/17   Page 10 of 14

### THIRD-PARTY COMPLAINT AGAINST ROBERT J. CARDULLO

Third-Party Plaintiff RIT respectfully submits the following Third-Party Complaint against Robert J. Cardullo ("Cardullo") upon information and belief:

### PARTIES

1.      RIT is an educational institution located in Rochester, New York. RIT is named as a defendant in a Complaint which was filed by the Estate of Stanley Kauffmann ("the Kauffmann Estate") in the Southern District of New York on or about April 5, 2016 and transferred to the Western District of New York on or about January 26, 2017. D.I. 26.

2.      Upon information and belief, Cardullo is a U.S. citizen currently living in the Republic of Finland at the following address: Sorvaajankatu 3 B 35, 00880 Helsinki.

### JURISDICTION AND VENUE

3.      This Court has supplemental jurisdiction over these third-party claims pursuant to 28 U.S.C. § 1367(a) because this court has federal question jurisdiction over the copyright infringement action pursuant to 28 U.S.C. § 1338(a), and the third-party claims are so related to the claims in the original action as to comprise part of the same case or controversy.

4.      Personal jurisdiction over Cardullo and venue in the Western District are proper, as RIT and Cardullo entered into an agreement (the "Publication Agreement") prior to publication of the Work that stated in part, "Jurisdiction of any litigation with respect to this Agreement shall be in New York, with venue in a state or federal court of competent jurisdiction in Monroe County." D.I. 19-2 ¶ XVIII.

### FACTS

5.      Cardullo and RIT are parties to that certain Publication Agreement, dated as of April 9, 2015, setting forth the mutual terms of the compilation, editing, and publication of a

- 10 -

Case 18-2404, Document 44, 10/01/2018, 2400476, Page123 of 208
**A-115**
Case 6:17-cv-06061-CJS-MWP Document 52-5 Filed 12/04/17 Page 12 of 15
Case 6:17-cv-06061-CJS Document 29 Filed 02/10/17 Page 11 of 14

book entitled "The Millenial Critic" (the "Work"). The Work was compiled and edited by Cardullo and published by RIT's academic press.

6.      The Kauffmann Estate alleges that it owns the copyrights to 141 separate pieces within the Work, and that 44 of those pieces have been duly registered with the United States Copyright Office. D.I. 1 ¶ 7.

7.      The Kauffmann Estate alleges that Cardullo lacked license or authority to reproduce the contents of the Work and misrepresented to RIT that he had obtained and could grant such license or authority. D.I. 1 ¶ 13.

8.      The Kauffmann Estate alleges that Cardullo provided RIT with a forged letter authorizing his use of the allegedly infringing material. D.I. 1 ¶¶ 11-12.

9.      Cardullo represented to RIT that he was the "sole and exclusive owner of the Work and of all rights granted to [RIT] by [the Publication Agreement]." Cardullo further represented to RIT that he had "full power to enter into [the Publication Agreement] and to grant the rights and perform [his] obligations set forth in [the Publication Agreement]." D.I. 19-2 ¶ I.

10.     Cardullo represented to RIT that he granted [RIT] the exclusive rights to print, publish, use, distribute, transmit, display publicly, and sell the Work throughout the world . . . during the full term of the copyright of the [W]ork." D.I. 19-2 ¶ II.

11.     Cardullo represented to RIT that he would "obtain promptly, at [his] own expense, any permission deemed necessary by [RIT], in [RIT's] sole discretion, to quote from or reproduce copyrighted material, and shall transmit such permissions in writing to [RIT] with the final manuscript upon [RIT's] request." D.I. 19-2 ¶ III.

12.     Cardullo agreed to "indemnify and hold harmless [RIT] from any and all claims, demands, actions, suits, and proceedings, and all liabilities, losses, costs, damages, and expenses

Case 18-2404, Document 44, 10/01/2018, 2400476, Page124 of 208

**A-116**

Case 6:17-cv-06061-CJS-MWP  Document 52-5  Filed 12/04/17  Page 13 of 15
Case 6:17-cv-06061-CJS  Document 29  Filed 02/10/17  Page 12 of 14

(including, without limitation, reasonable attorneys' fees) to the extent caused by or arising out of, the Work or anything contained in it." D.I. 19-2 ¶ X.

13.     Upon receiving allegations from the Kauffmann Estate that Cardullo lacked the rights to have the Work published, RIT referred the matter to Cardullo for resolution of the allegation. Cardullo has failed and refused to resolve and remedy the allegations of infringement made by the Kauffmann Estate.

14.     The Kauffmann Estate now alleges that the Work infringed copyrights to certain movie reviews that it asserts are owned by the Kauffmann Estate and now alleges damages based on RIT's publication of the Work.

15.     To the extent that the Work infringed copyrights owned by the Kauffmann Estate, Cardullo is solely responsible, without any fault or liability on the part of RIT.

16.     To the extent that the Work infringed copyrights owned by the Kauffmann Estate, Cardullo has materially violated his representations and obligations to RIT under the Publication Agreement.

17.     To the extent that the Kauffmann Estate was damaged by the alleged copyright infringement, such damages were caused solely by Cardullo, without any fault or liability on the part of RIT.

## THIRD-PARTY CLAIM I
### (INDEMNITY)

18.     RIT incorporates paragraphs 1 through 17 of the Third-Party Complaint as though set forth fully herein.

19.     As a direct and proximate result of the allegations and above-captioned case filed against RIT by the Kauffmann Estate, RIT is incurring and has incurred attorney's fees, court

Case 18-2404, Document 44, 10/01/2018, 2400476, Page125 of 208
**A-117**

Case 6:17-cv-06061-CJS-MWP   Document 52-5   Filed 12/04/17   Page 14 of 15
Case 6:17-cv-06061-CJS   Document 29   Filed 02/10/17   Page 13 of 14

costs, and other costs in connection with defending the claims asserted by the Kauffmann Estate, the exact nature and amount of which are accruing at this time.

20.     RIT asserts that it is not liable for the damages sought by the Kauffmann Estate in its Complaint. However, if RIT is held liable or responsible for damages, such liability will be the direct and proximate result of the actions and failures to act of Cardullo.

21.     In such case, RIT is entitled to complete indemnification by Cardullo for any amount or amounts for which RIT may be adjudicated to pay to The Kauffmann Estate, with costs of defense and reasonable attorney's fees incurred in connection therewith.

### THIRD-PARTY CLAIM II
### (CONTRIBUTION)

22.     RIT incorporates paragraphs 1 through 21 of the Third-Party Complaint as though set forth fully herein.

23.     RIT asserts that it is in no way responsible to the Kauffmann Estate and that RIT is not liable for the damage sought by the Kauffmann Estate in its Complaint. However, if RIT is held liable or responsible to the Kauffmann Estate for damages, such liability will be the direct and proximate result of the actions and failures to act of Cardullo.

24.     In such case, RIT requests that this Court determine the percentage of liability attributable to Cardullo, by way of contribution, for any amount or amounts for which the RIT may be adjudicated to pay to the Kauffmann Estate, with costs of defense and reasonable attorney's fees incurred in connection therewith.

### THIRD-PARTY CLAIM III
### (BREACH OF CONTRACT)

25.     RIT incorporates paragraphs 1 through 24 of the Third-Party Complaint as though set forth fully herein.

Case 18-2404, Document 44, 10/01/2018, 2400476, Page126 of 208

**A-118**

Case 6:17-cv-06061-CJS-MWP   Document 52-5   Filed 12/04/17   Page 15 of 15
Case 6:17-cv-06061-CJS   Document 29   Filed 02/10/17   Page 14 of 14

26.     RIT performed its obligations to Cardullo under the Publication Agreement.

27.     As a direct and proximate result of Cardullo's breach of his obligations and representations to RIT, RIT has been materially damaged and, in addition, has been required to defend itself from the Kauffmann Estate's allegations and claims.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, RIT requests a trial by jury.

### PRAYER FOR RELIEF

**WHEREFORE**, in the event that a judgement is rendered against RIT in connection with the Complaint by the Kauffmann Estate, RIT demands judgement against Cardullo for (a) any and all damages suffered by RIT; (b) an order declaring the percentage of fault, if any, between RIT and Cardullo, and each of them, for damages and losses allegedly caused to the Kauffmann Estate; (c) attorney's fees, court costs and other expenses incurred in the defense of this case; and (d) any such additional relief as the Court deems just and appropriate.

Dated: February 10, 2017                        Respectfully submitted,

                                                **BOND, SCHOENECK & KING, PLLC**

                                                *s/ Jeremy P. Oczek*
                                                Jeremy P. Oczek, Esq.
                                                200 Delaware Avenue
                                                Buffalo, New York 14202
                                                Telephone: (716) 416-7037
                                                Email: jpoczek@bsk.com

                                                *Attorneys for Defendant*
                                                *Rochester Institute of Technology*

**A-119**

# EXHIBIT 3

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

United States Register of Copyrights and Director

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

**TX 6-314-216**

EFFECTIVE DATE OF REGISTRATION

**MAR    07    2016**
Month    Day    Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**
TITLE OF THIS WORK ▼
*See Form GR|CP attached.*

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.  Title of Collective Work ▼
*The New Republic*

If published in a periodical or serial give:  Volume ▼    Number ▼    Issue Date ▼    On Pages ▼
*Issues published in 1999 - See Form GR|CP attached.*

**2**
**a**
NAME OF AUTHOR ▼
*Stanley Kauffmann*

DATES OF BIRTH AND DEATH
Year Born ▼ *1916*    Year Died ▼ *2013*

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of *USA*
Domiciled in *USA*

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
*Film reviews in weekly periodical*

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**
NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of _____
Domiciled in _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**
NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of _____
Domiciled in _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3**
**a**
YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
*1999* Year

**b**
DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK Complete this information ONLY if this work has been published.
Month *See Form GR|CP attached.* Day    Year    Nation

**4**
COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
*The Estate of Stanley Kauffmann c/o Norwick, Schad & Goering 110 East 59th St., NY, NY 10022*

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
*Death of Author. Estate is now owner.*

APPLICATION RECEIVED
ONE DEPOSIT RECEIVED
TWO DEPOSITS RECEIVED
FUNDS RECEIVED
DO NOT WRITE HERE OFFICE USE ONLY

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of _____ pages

# A-121

| EXAMINED BY | *MWEL* | FORM TX |
|---|---|---|
| CHECKED BY | | |

☐ CORRESPONDENCE
  ☐ Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▶      Year of Registration ▶

**5**

**DERIVATIVE WORK OR COMPILATION**

Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

*N/A*

**a 6**

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

*N/A*

**b**

See instructions
before completing
this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a deposit account established in the Copyright Office, give name and number of account.

Name ▼ *N/A*      Account Number ▼

**a 7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼

*Kenneth P. Norwick*
*Norwick Schad + Goering*
*110 East 59th St.*
*New York, NY 10022*

Area code and daytime telephone number ▶ *212-751-4440*      Fax number ▶ *212-604-9997*

Email ▶ *ken@norwickschad.com*

**b**

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the

Check only one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive rights(s)
☒ authorized agent of *The Estate of Stanley Kauffmann*
     Name of author or other copyright claimant, or owner of exclusive rights(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

*Kenneth P. Norwick*      Date ▶ *3/4/16*

Handwritten signature ▼

| Certificate will be mailed in window envelope to this address: | Name ▼ *Kenneth P. Norwick* *Norwick Schad + Goering* | **YOU MUST:** • Complete all necessary spaces • Sign your application in space 8 |
|---|---|---|
| | Number/Street/Apt ▼ *110 East 59th St.* | **SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:** 1. Application form 2. Nonrefundable filing fee in check or money order payable to Register of Copyrights 3. Deposit material |
| | City/State/Zip ▼ *New York, NY 10022* | **MAIL TO:** Library of Congress Copyright Office-TX 101 Independence Avenue SE Washington, DC 20559 |

**9**

*17 U.S.C. §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form TX—Full Reviewed: 07/2012 Printed on recycled paper      U.S. Government Printing Office: 2012-xxx-xxx/xx,xxx

**ADJUNCT APPLICATION** *for Copyright Registration for a Group of Contributions to Periodicals*

- Use this adjunct form only if you are making a single registration for a group of contributions to periodicals, and you are also filing a basic application on Form TX, Form PA, or Form VA. Follow the instructions, attached.
- Number each line in Part B consecutively. Use additional Forms GR/CP if you need more space.
- Submit this adjunct form with the basic application form. Clip (do not tape or staple) and fold all sheets together before submitting them.
- Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Coyright Office, or call (202) 707-3000.

**Privacy Act Notice:** Sections 408-410 of title 17 of the *United States Code* authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. §705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.



**Form GR/CP**

UNITED STATES COPYRIGHT OFFICE

REG   TX 6-314-216

EFFECTIVE DATE OF REGISTRATION

MAR   07   2016
Month   Day   Year

FORM GR/CP RECEIVED

Page __3__ of __7__ pages

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY**

**A** Identification of Application

**IDENTIFICATION OF BASIC APPLICATION:** This application for copyright registration for a group of contributions to periodicals is submitted as an adjunct to an application filed on: (Check which)

☒ Form TX   ☐ Form PA   ☐ Form VA

**IDENTIFICATION OF AUTHOR AND CLAIMANT:** Give the name of the author and the name of the copyright claimant in all of the contributions listed in Part B of this form. The names should be the same as the names given in spaces 2 and 4 of the basic application.

Name of Author  *Stanley Kauffmann*

Name of Copyright Claimant  *The Estate of Stanley Kauffmann*

**B** Registration for Group of Contributions

**COPYRIGHT REGISTRATION FOR A GROUP OF CONTRIBUTIONS TO PERIODICALS:** To make a single registration for a group of works by the same individual author, all first published as contributions to periodicals within a 12-month period (see instructions), give full information about each contribution. If more space is needed, use additional Forms GR/CP.

☐ Title of Contribution  "*Star-Crossed Lovers*"
Title of Periodical  *The New Republic*  Vol.___  No.___  Issue Date *1/4 th/99*  Pages *26-2*
Date of First Publication  *1* (Month)  *4* (Day)  *1999* (Year)  Nation of First Publication  *USA* (Country)

☐ Title of Contribution  "*Hello From Hollywood*"
Title of Periodical  *The New Republic*  Vol.___  No.___  Issue Date *1/18/99*  Pages *26-27*
Date of First Publication  *1* (Month)  *18* (Day)  *1999* (Year)  Nation of First Publication  *USA* (Country)

☐ Title of Contribution  "*After Twenty Years*"
Title of Periodical  *The New Republic*  Vol.___  No.___  Issue Date *1/25/99*  Pages *24-25*
Date of First Publication  *1* (Month)  *25* (Day)  *1999* (Year)  Nation of First Publication  *USA* (Country)

☐ Title of Contribution  "*Accepted Fates*"
Title of Periodical  *The New Republic*  Vol.___  No.___  Issue Date *2/1/99*  Pages *24-25*
Date of First Publication  *2* (Month)  *1* (Day)  *1999* (Year)  Nation of First Publication  *USA* (Country)

☐ Title of Contribution  "*Running Time*"
Title of Periodical  *The New Republic*  Vol.___  No.___  Issue Date *2/8/99*  Pages *24-26*
Date of First Publication  *2* (Month)  *8* (Day)  *1999* (Year)  Nation of First Publication  *USA* (Country)

☐ Title of Contribution  "*Sight and Insight*"
Title of Periodical  *The New Republic*  Vol.___  No.___  Issue Date *2/15/99*  Pages *26-27*
Date of First Publication  *2* (Month)  *15* (Day)  *1999* (Year)  Nation of First Publication  *USA* (Country)

☐ Title of Contribution  "*Small People*"
Title of Periodical  *The New Republic*  Vol.___  No.___  Issue Date *2/22/99*  Pages *30-32*
Date of First Publication  *2* (Month)  *22* (Day)  *1999* (Year)  Nation of First Publication  *USA* (Country)

FORM GR/CP

DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY.

**B**
Continued

Title of Contribution "No Went Better Films"
Title of Periodical The New Republic    Vol. ___ No. ___ Issue Date 3/1/99 Pages 26-27
Date of First Publication 3 (Month) 1 (Day) 1999 (Year)    Nation of First Publication USA (Country)

Title of Contribution "More Than Facts"
Title of Periodical The New Republic    Vol. ___ No. ___ Issue Date 3/8/99 Pages 30-31
Date of First Publication 3 (Month) 8 (Day) 1999 (Year)    Nation of First Publication USA (Country)

Title of Contribution "Idle Actors"
Title of Periodical The New Republic    Vol. ___ No. ___ Issue Date 3/15/99 Pages 26-27
Date of First Publication 3 (Month) 15 (Day) 1999 (Year)    Nation of First Publication USA (Country)

Title of Contribution "Two For the Road"
Title of Periodical The New Republic    Vol. ___ No. ___ Issue Date 3/22/99 Pages 28-30
Date of First Publication 3 (Month) 22 (Day) 1999 (Year)    Nation of First Publication USA (Country)

Title of Contribution "Contradictions"
Title of Periodical The New Republic    Vol. ___ No. ___ Issue Date 3/29/99 Pages 28-30
Date of First Publication 3 (Month) 29 (Day) 1999 (Year)    Nation of First Publication USA (Country)

Title of Contribution "High School Low Lives"
Title of Periodical The New Republic    Vol. ___ No. ___ Issue Date 4/5/99 Pages 28-29
Date of First Publication 4 (Month) 5 (Day) 1999 (Year)    Nation of First Publication USA (Country)

Title of Contribution "Class Struggles"
Title of Periodical The New Republic    Vol. ___ No. ___ Issue Date 4/12/99 Pages 28-30
Date of First Publication 4 (Month) 12 (Day) 99 (Year)    Nation of First Publication USA (Country)

Title of Contribution "Crime and Misdemeanors"
Title of Periodical The New Republic    Vol. ___ No. ___ Issue Date 4/19/99 Pages 28-29
Date of First Publication 4 (Month) 19 (Day) 1999 (Year)    Nation of First Publication USA (Country)

Title of Contribution "To See Ourselves"
Title of Periodical The New Republic    Vol. ___ No. ___ Issue Date 4/26-5/3/99 Pages 74-76
Date of First Publication 4 (Month) 26 (Day) 1999 (Year)    Nation of First Publication USA (Country)

Title of Contribution "Dark Stranger"
Title of Periodical The New Republic    Vol. ___ No. ___ Issue Date 5/10/99 Pages 36+
Date of First Publication 5 (Month) 10 (Day) 1999 (Year)    Nation of First Publication USA (Country)

Title of Contribution "Matters of Control"
Title of Periodical The New Republic    Vol. ___ No. ___ Issue Date 5/17/99 Pages 34-35
Date of First Publication 5 (Month) 17 (Day) 1999 (Year)    Nation of First Publication USA (Country)

Title of Contribution "Trial and (some) Error"
Title of Periodical The New Republic    Vol. ___ No. ___ Issue Date 5/24/99 Pages 32-34
Date of First Publication 5 (Month) 24 (Day) 1999 (Year)    Nation of First Publication USA (Country)

FORM GR/CP

DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY.

**B** Continued

☐ Title of Contribution "Dream Time"
Title of Periodical The New Republic   Vol. ___ No. ___   Issue Date 5/31/99 Pages 32-34
Date of First Publication 5 / 31 / 1999   Nation of First Publication USA
   (Month) (Day) (Year)   (Country)

☐ Title of Contribution "Under Adventine Skies"
Title of Periodical The New Republic   Vol. ___ No. ___   Issue Date 6/99 Pages 30
Date of First Publication 6 / 7 / 1999   Nation of First Publication USA
   (Month) (Day) (Year)   (Country)

☐ Title of Contribution "Spaced Out"
Title of Periodical The New Republic   Vol. ___ No. ___   Issue Date 6/14/99 Pages 30-32
Date of First Publication 6 / 14 / 1999   Nation of First Publication USA
   (Month) (Day) (Year)   (Country)

☐ Title of Contribution "Close Encounters of the First Kind"
Title of Periodical The New Republic   Vol. ___ No. ___   Issue Date 6/21/99 Pages 30-32
Date of First Publication 6 / 21 / 1999   Nation of First Publication USA
   (Month) (Day) (Year)   (Country)

☐ Title of Contribution "Greek Gravity"
Title of Periodical The New Republic   Vol. ___ No. ___   Issue Date 6/28/99 Pages 34
Date of First Publication 6 / 28 / 1999   Nation of First Publication USA
   (Month) (Day) (Year)   (Country)

☐ Title of Contribution "Matter of Fact"
Title of Periodical The New Republic   Vol. ___ No. ___   Issue Date 7/6/99 Pages 28-29
Date of First Publication ___ / ___ / 1999   Nation of First Publication USA
   (Month) (Day) (Year)   (Country)

☐ Title of Contribution "Citizen Cain"
Title of Periodical The New Republic   Vol. ___ No. ___   Issue Date 7/12/99 Pages 28-29
Date of First Publication ___ / 12 / 1999   Nation of First Publication USA
   (Month) (Day) (Year)   (Country)

☐ Title of Contribution "Wilde Enough"
Title of Periodical The New Republic   Vol. ___ No. ___   Issue Date 7/19-26/99 Pages 30-32
Date of First Publication 7 / 19 / 1999   Nation of First Publication USA
   (Month) (Day) (Year)   (Country)

☐ Title of Contribution "French Dressing"
Title of Periodical The New Republic   Vol. ___ No. ___   Issue Date 8/2/99 Pages 30-32
Date of First Publication 8 / 2 / 1999   Nation of First Publication USA
   (Month) (Day) (Year)   (Country)

☐ Title of Contribution "A Daughter, A Father"
Title of Periodical The New Republic   Vol. ___ No. ___   Issue Date 8/9/99 Pages 30
Date of First Publication 8 / 9 / 1999   Nation of First Publication USA
   (Month) (Day) (Year)   (Country)

☐ Title of Contribution "Kubrick's A Sadness"
Title of Periodical The New Republic   Vol. ___ No. ___   Issue Date 8/16/99 Pages 30-31
Date of First Publication 8 / 16 / 1999   Nation of First Publication USA
   (Month) (Day) (Year)   (Country)

☐ Title of Contribution "Visiting the Great"
Title of Periodical The New Republic   Vol. ___ No. ___   Issue Date 8/23/99 Pages 28
Date of First Publication 8 / 23 / 1999   Nation of First Publication USA
   (Month) (Day) (Year)   (Country)

FORM GR/CP

DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY.

Continued

| | Title of Contribution | "Inside Views" |
|---|---|---|
| ☐ | Title of Periodical The New Republic | Vol. ___ No. ___ Issue Date 8/30/99 Pages 28-29 |
| | Date of First Publication 8 (Month) 30 (Day) 1999 (Year) | Nation of First Publication USA (Country) |

| | Title of Contribution | "Fade-out" |
|---|---|---|
| ☐ | Title of Periodical The New Republic | Vol. ___ No. ___ Issue Date 9/6/99 Pages 28-30 |
| | Date of First Publication 9 (Month) 6 (Day) 1999 (Year) | Nation of First Publication USA (Country) |

| | Title of Contribution | "Mutiny and Misery" |
|---|---|---|
| ☐ | Title of Periodical The New Republic | Vol. ___ No. ___ Issue Date 9/13-20/99 Pages 36 |
| | Date of First Publication 9 (Month) 13 (Day) 1999 (Year) | Nation of First Publication USA (Country) |

| | Title of Contribution | "Around Several Worlds" |
|---|---|---|
| ☐ | Title of Periodical The New Republic | Vol. ___ No. ___ Issue Date 9/27/99 Pages 30-31 |
| | Date of First Publication 9 (Month) 27 (Day) 1999 (Year) | Nation of First Publication USA (Country) |

| | Title of Contribution | "Sex, Etc." |
|---|---|---|
| ☐ | Title of Periodical The New Republic | Vol. ___ No. ___ Issue Date 10/4/99 Pages 34-35 |
| | Date of First Publication 10 (Month) 4 (Day) 1999 (Year) | Nation of First Publication USA (Country) |

| | Title of Contribution | "In Search of an Author" |
|---|---|---|
| ☐ | Title of Periodical The New Republic | Vol. ___ No. ___ Issue Date 10/11/99 Pages 36-38 |
| | Date of First Publication 10 (Month) 11 (Day) 1999 (Year) | Nation of First Publication USA (Country) |

| | Title of Contribution | "Playing Games" |
|---|---|---|
| ☐ | Title of Periodical The New Republic | Vol. ___ No. ___ Issue Date 10/18/99 Pages 28 |
| | Date of First Publication 10 (Month) 18 (Day) 1999 (Year) | Nation of First Publication USA (Country) |

| | Title of Contribution | "Fantasy Peddling" |
|---|---|---|
| ☐ | Title of Periodical The New Republic | Vol. ___ No. ___ Issue Date 10/25/99 Pages 32 |
| | Date of First Publication 10 (Month) 25 (Day) 1999 (Year) | Nation of First Publication USA (Country) |

| | Title of Contribution | "Worse Than Hell" |
|---|---|---|
| ☐ | Title of Periodical The New Republic | Vol. ___ No. ___ Issue Date 11/1/99 Pages 28 |
| | Date of First Publication 11 (Month) 1 (Day) 1999 (Year) | Nation of First Publication USA (Country) |

| | Title of Contribution | "Primal Stuff" |
|---|---|---|
| ☐ | Title of Periodical The New Republic | Vol. ___ No. ___ Issue Date 11/8/99 Pages 64 |
| | Date of First Publication 11 (Month) 8 (Day) 1999 (Year) | Nation of First Publication USA (Country) |

| | Title of Contribution | "Character As Destiny" |
|---|---|---|
| ☐ | Title of Periodical The New Republic | Vol. ___ No. ___ Issue Date 11/15/99 Pages 28-29 |
| | Date of First Publication 11 (Month) 15 (Day) 1999 (Year) | Nation of First Publication USA (Country) |

| | Title of Contribution | "On the Town" |
|---|---|---|
| ☐ | Title of Periodical The New Republic | Vol. ___ No. ___ Issue Date 11/22/99 Pages 26 |
| | Date of First Publication 11 (Month) 22 (Day) 1999 (Year) | Nation of First Publication USA (Country) |

# A-126

FORM GR/CP

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY.**

| | | | | | Continued |
|---|---|---|---|---|---|

❑ Title of Contribution "Two Teenage Girls"
Title of Periodical The New Republic    Vol.____ No._____ Issue Date 1/29/99 Pages 24-26
Date of First Publication 11  29  1999    Nation of First Publication USA
   (Month)  (Day)  (Year)    (Country)

❑ Title of Contribution "Romance and Reality"
Title of Periodical The New Republic    Vol.____ No._____ Issue Date 2/6/99 Pages 28-30
Date of First Publication 12  6  1999    Nation of First Publication USA
   (Month)  (Day)  (Year)    (Country)

❑ Title of Contribution "Restoration Drama"
Title of Periodical The New Republic    Vol.____ No._____ Issue Date 2/13/99 Pages 26-27
Date of First Publication 12  13  1999    Nation of First Publication USA
   (Month)  (Day)  (Year)    (Country)

❑ Title of Contribution "Fact or Fiction and Vice Versa"
Title of Periodical The New Republic    Vol.____ No._____ Issue Date 2/20/99 Pages 30-32
Date of First Publication 12  20  1999    Nation of First Publication USA
   (Month)  (Day)  (Year)    (Country)

❑ Title of Contribution "This Side of Paradise"
Title of Periodical The New Republic    Vol.____ No._____ Issue Date 2/27/99 Pages 24-26
Date of First Publication 12  27  1999    Nation of First Publication
   (Month)  (Day)  (Year)    (Country)

❑ Title of Contribution _____
Title of Periodical _____    Vol.____ No._____ Issue Date _____ Pages _____
Date of First Publication _____    Nation of First Publication _____
   (Month)  (Day)  (Year)    (Country)

❑ Title of Contribution _____
Title of Periodical _____    Vol.____ No._____ Issue Date _____ Pages _____
Date of First Publication _____    Nation of First Publication _____
   (Month)  (Day)  (Year)    (Country)

❑ Title of Contribution _____
Title of Periodical _____    Vol.____ No._____ Issue Date _____ Pages _____
Date of First Publication _____    Nation of First Publication _____
   (Month)  (Day)  (Year)    (Country)

❑ Title of Contribution _____
Title of Periodical _____    Vol.____ No._____ Issue Date _____ Pages _____
Date of First Publication _____    Nation of First Publication _____
   (Month)  (Day)  (Year)    (Country)

❑ Title of Contribution _____
Title of Periodical _____    Vol.____ No._____ Issue Date _____ Pages _____
Date of First Publication _____    Nation of First Publication _____
   (Month)  (Day)  (Year)    (Country)

❑ Title of Contribution _____
Title of Periodical _____    Vol.____ No._____ Issue Date _____ Pages _____
Date of First Publication _____    Nation of First Publication _____
   (Month)  (Day)  (Year)    (Country)

❑ Title of Contribution _____
Title of Periodical _____    Vol.____ No._____ Issue Date _____ Pages _____
Date of First Publication _____    Nation of First Publication _____
   (Month)  (Day)  (Year)    (Country)

Case 18-2404, Document 44, 10/01/2018, 2400476, Page135 of 208

A-127

# EXHIBIT 4

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Western District of New York

| | | |
|---|---|---|
| The Estate of Stanley Kauffmann | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  6:17-cv-06061-CJS |
| Rochester Institute of Technology, Defendant v. | ) | |
| Robert J. Cardullo, Third-Party Defendant. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                          TNR II, LLC

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Attachment A.

| Place: Bond, Schoeneck & King PLLC<br>600 3rd Avenue<br>New York, New York 10016 | Date and Time:<br><br>11/13/2017 9:30 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/20/2017

CLERK OF COURT

                                          OR

_____              _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Rochester Institute of Technology _____, who issues or requests this subpoena, are:
Mary P. Moore, Esq., 350 Linden Oaks Third Floor, Rochester, NY, 14625, mmoore@bsk.com, (585) 362-4724

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# A-130

Case 6:17-cv-06061-CJS-MWP   Document 52-7   Filed 12/04/17   Page 3 of 5

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  6:17-cv-06061-CJS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____            _____
                                               *Server's signature*

                                      _____
                                               *Printed name and title*

                                      _____
                                               *Server's address*

Additional information regarding attempted service, etc.:

# A-131

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A) Appearance Not Required.** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B) Objections.** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A) When Required.** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B) When Permitted.** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C) Specifying Conditions as an Alternative.** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A) Documents.** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B) Form for Producing Electronically Stored Information Not Specified.** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C) Electronically Stored Information Produced in Only One Form.** The person responding need not produce the same electronically stored information in more than one form.
  **(D) Inaccessible Electronically Stored Information.** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A) Information Withheld.** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B) Information Produced.** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Attachment A

## Definitions and Rules of Construction

1.      Please note that the definitions and rules of construction set forth in Local Rule 26(c) of the Western District of New York apply to these requests.

2.      The term "Stanley Kauffmann" means Stanley Kauffmann, who was formerly a film critic for The New Republic and who died on October 9, 2013, and any of his agents, attorneys, representatives, and all other persons having acted on his behalf or under his control.

3.      The term "The New Republic" means a magazine published under the name *The New Republic* and/or *New Republic* by TNR II, LLC.

4.      The term "TNR II, LLC" means TNR II, LLC, a Delaware limited liability company that is registered to do business in New York, and any of its predecessors, parent companies, subsidiaries, representatives, agents, employees, attorneys, contractors, partners, subcontractors, consultants, and all other persons having acted on its behalf or under its control.

5.      The term "Robert Cardullo" means Robert Cardullo, who is a third party defendant in the above-referenced action.

6.      These requests extend to any documents or communications within The New Republic's possession, custody, or control.

## Documents Requested

1.      Copies of all documents concerning copyright ownership of all articles or other works written by Stanley Kauffmann and published by The New Republic, including but not limited to articles or other works published between January 1, 1999 and December 31, 1999.

2.      Copies of all written agreements and/or contracts between Stanley Kauffmann and The New Republic, including but not limited to written agreements and/or contracts concerning articles or other works written by Stanley Kauffmann and published by The New Republic between January 1, 1999 and December 31, 1999.

3.      Copies of all communications between The New Republic and Robert Cardullo in 2014 concerning Stanley Kauffmann.

4.      Copies of all communications between Melissa Marsh (email address mmarsh@tnr.com), who may have been an employee of The New Republic, and Robert Cardullo (email address robertcardullo@yahoo.com) in 2014.

5.      Copies of all documents concerning permissions and/or licensing of articles or other works written by Stanley Kauffmann and published by The New Republic.

# EXHIBIT 5

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Western District of New York

| | |
|---|---|
| The Estate of Stanley Kauffmann | ) |
| *Plaintiff* | ) |
| v. | ) |
| Rochester Institute of Technology, Defendant v. | ) |
| Robert J. Cardullo, Third-Party Defendant. | ) |
| *Defendant* | ) |

Civil Action No.  6:17-cv-06061-CJS

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                        Brandt & Hochman Literary Agents, Inc.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

        See Attachment A.

| Place: Bond, Schoeneck & King PLLC<br>600 3rd Avenue<br>New York, New York 10016 | Date and Time:<br><br>11/13/2017 9:30 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10 20 2017

|                   *CLERK OF COURT*               | OR |                                    |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Rochester Institute of Technology                                        , who issues or requests this subpoena, are:
Mary P. Moore, Esq., 350 Linden Oaks Third Floor, Rochester, NY, 14625, mmoore@bsk.com, (585) 362-4724

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  6:17-cv-06061-CJS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# A-136

Case 6:17-cv-06061-CJS-MWP   Document 52-8   Filed 12/04/17   Page 4 of 6

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, *is* employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Attachment A

## Instructions

1.      Please note that the definitions and rules of construction set forth in Local Rule 26(c) of the Western District of New York apply to these requests.

2.      The term "Stanley Kauffmann" means Stanley Kauffmann, who was formerly a film critic for The New Republic and who died on October 9, 2013, and any of his agents, attorneys, representatives, and all other persons having acted on his behalf or under his control.

3.      The term "The New Republic" means a magazine published under the name *The New Republic* and/or *New Republic* by TNR II, LLC.

4.      The term "TNR II, LLC" means TNR II, LLC, a Delaware limited liability company that is registered to do business in New York, and any of its predecessors, parent companies, subsidiaries, representatives, agents, employees, attorneys, contractors, partners, subcontractors, consultants, and all other persons having acted on its behalf or under its control.

5.      The terms "You" or "Your" means Brandt & Hochman Literary Agents, Inc. and any of its predecessors (including but not limited to Brandt & Brandt Literary Agents, Inc.), parent companies, subsidiaries, representatives, agents, employees, attorneys, contractors, partners, subcontractors, consultants, and all other persons having acted on its behalf or under its control.

6.      The term "Robert Marxx" means the Executor of the Estate of Stanley Kauffmann, and any of his agents, attorneys, representatives, and all other persons having acted on his behalf or under his control.

7.      The term "Ken Norwick" means Ken Norwick of Nowick & Schad, attorney to plaintiff in the above-referenced action, and any of his agents, attorneys, representatives, and all other persons having acted on his behalf or under his control.

8.      The term "RIT" means Rochester Institute of Technology and RIT Press, and any of either of their subsidiaries, representatives, agents, employees, attorneys, contractors, partners, subcontractors, and consultants, and all other persons having acted on their behalf or under their control.

## Documents Requested

1.      Copies of all documents concerning copyright ownership of all articles or other works written by Stanley Kauffmann and published by The New Republic, including but not limited to articles or other works published between January 1, 1999 and December 31, 1999.

2.      Copies of all written agreements and/or contracts between Stanley Kauffmann and The New Republic, including but not limited to written agreements and/or contracts concerning

1

articles or other works written by Stanley Kauffmann and published by The New Republic between January 1, 1999 and December 31, 1999.

3.      Copies of all documents concerning permissions and/or licensing of articles or other works written by Stanley Kauffmann and published by The New Republic.

4.      Copies of all documents concerning permissions and/or licensing of any works written by Stanley Kauffmann, including but not limited to publishing agreements and/or contracts between Stanley Kauffmann and any publishing company.

5.      Copies of all contracts and/or agreements concerning royalties to be paid to Stanley Kauffmann relating to the publication of works authored by Stanley Kauffmann.

6.      Copies of all documents concerning Your efforts to market Stanley Kauffmann's works since October 9, 2013.

7.      Copies of all documents concerning Your efforts to publish, license, and/or sell any of Stanley Kauffmann's works since October 9, 2013.

8.      All documents concerning any alleged infringements of Stanley Kauffmann's copyrights since October 9, 2013.

9.      Copies of all documents concerning Stanley Kauffmann's reputation since October 9, 2013.

10.    All communications between You and Robert Cardullo since October 9, 2013.

11.    All communications between You and RIT since October 1, 2015.

12.    All communications between You and Robert Marxx since October 9, 2013.

13.    All communications between You and Ken Norwick since October 9, 2013.

**A-139**

# EXHIBIT 6

**A-140**

# EXHIBIT "K"

Case 18-2404, Document 44, 10/01/2018, 2400476, Page149 of 208

**A-141**

Case 6:17-cv-06061-CJS-MWP   Document 52-9   Filed 12/04/17   Page 3 of 3
Case 6:17-cv-06061-CJS   Document 1-11   Filed 04/05/16   Page 2 of 2

Henry Thayer

| | |
|---|---|
| **From:** | Bruce Austin <baagli@rit.edu> |
| **Sent:** | Monday, November 30, 2015 10:25 AM |
| **To:** | Henry Thayer |
| **Subject:** | Re: Stanley Kauffmann collection |

Dear Mr. Thayer:

I acknowledge receipt of your email of November 24, 2015 and have forwarded a copy of it to the editor of the book, Robert Cardullo, for further response. I can confirm that Mr. Cardullo did provide the RIT Press with a letter from ShiffHardin, LLP which confirmed that Stanley Kauffmann's will did in fact assert that Mr. Cardullo, and only Mr. Cardullo, may anthologize any and all reviews by Mr. Kauffmann, from The New Republic or any other journal, that are previously uncollected or un-anthologized in book form, however this letter is not information that the RIT Press would release to anyone absent a validly issued subpoena. As for obtaining a copy of the book, feel free to use the following link to purchase a copy of the book for your review: http://ritpress.rit.edu/publications/books/millennial-critic-stanley-kauffmann-film-1999%52%80%932009.html

Sincerely,

Bruce A. Austin, Ph.D.
Director, RIT Press
Rochester Institute of Technology
90 Lomb Memorial Drive
Rochester, NY 14623

585-475-2879
baagli@rit.edu
ritpress.rit.edu

On Nov 24, 2015, at 12:35 PM, Henry Thayer <HThayer@bromsite.com> wrote:

> Dear Mr. Austin,
>
> I'm writing to follow up on our telephone conversation on Friday about a collection of Stanley Kauffmann's writing recently published by RIT Press as THE MILLENIAL CRITIC. As Stanley Kauffmann's longtime literary representatives, we were surprised to see the title for sale, as we are not aware of any license for such a collection. After further discussion with the managers of Stanley's estate, they've let me know that they are not aware of any such license made by them or by Stanley to RIT Press or to the editor of the collection and have asked me to look into this for them. Since I don't know exactly what is in the book, I can't say with any certainty who holds the copyright to the material, but it is my understanding that Stanley retained the copyright in most of what he wrote. I think potentially the quickest way to clear this up would be for you to send me a copy of the documentation you mentioned that granted permission to you and the editor to use the material in question. Do you think you can send me a scan of it over email? Also, if you can spare a copy of the book, we'd appreciate a look at it.
>
> Sincerely,
>

# EXHIBIT 7

**From:** Henry Thayer <HThayer@bromasite.com>
**Subject: Stanley Kauffmann collection**
**Date:** November 24, 2015 12:35:54 PM EST
**To:** "baagll@rit.edu" <baagll@rit.edu>

Dear Mr. Austin,

I'm writing to follow up on our telephone conversation on Friday about a collection of Stanley Kauffmann's writing recently published by RIT Press as THE MILLENIAL CRITIC. As Stanley Kauffmann's longtime literary representatives, we were surprised to see the title for sale, as we are not aware of any license for such a collection. After further discussion with the managers of Stanley's estate, they've let me know that they are not aware of any such license made by them or by Stanley to RIT Press or to the editor of the collection and have asked me to look into this for them. Since I don't know exactly what is in the book, I can't say with any certainty who holds the copyright to the material, but it is my understanding that Stanley retained the copyright in most of what he wrote. I think potentially the quickest way to clear this up would be for you to send me a copy of the documentation you mentioned that granted permission to you and the editor to use the material in question. Do you think you can send me a scan of it over email? Also, if you can spare a copy of the book, we'd appreciate a look at it.

Sincerely,

**Henry Thayer** | Brandt & Hochman Literary Agents, Inc. | 1501 Broadway #2310, New York, NY 10036 | 212 840-5777 | www.brandthochman.com

**A-144**

# EXHIBIT 8

VOL 1553 PAGE 434

### ASSIGNMENT OF COPYRIGHT

In consideration of the sum of one dollar ($1.00) to us in hand paid,

and other valuable consideration, we hereby sell, assign and transfer to

_____Stanley Kauffmann_____

the entire right(s), title(s) and interest(s), in and to, the copyright(s) granted

by the United States of America, respecting all works appearing in THE NEW REPUBLIC

and registered in the Office of the Library of Congress, at Washington, D. C. on

entry Class B.

THE NEW REPUBLIC, INC., reserves the right, however, to reprint this

material under its own name in any NEW REPUBLIC, INC. publication.

In witness whereof we have hereunto set out hand and seal this

_____August 8, 1975_____

**Copyright Office of the United States of America**
## THE LIBRARY OF CONGRESS
### WASHINGTON

THIS IS TO CERTIFY THAT THE ATTACHED INSTRUMENT WAS RECORDED IN
THE COPYRIGHT OFFICE RECORDS OF ASSIGNMENTS AND RELATED DOCU-
MENTS ON THE DATE AND IN THE PLACE SHOWN BELOW.
IN TESTIMONY WHEREOF THE SEAL OF THIS OFFICE IS AFFIXED HERETO.

*Barbara Ringer*
**Register of Copyrights**

:C.

ns

the

1, 1978    4750 KENMORE AVENUE
ALEXANDRIA, VA. 22304

Date of Recordation
12Aug75
Volume        Pages
1553          434

SEAL

CERTIFICATION A [NOV. 1974 15,000]

VOL. 1553 PAGE 434

ASSIGNMENT OF COPYRIGHT

In consideration of the sum of one dollar ($1.00) to us in hand paid, and other valuable consideration, we hereby sell, assign and transfer to

_____ Stanley Kauffmann _____

the entire right(s), title(s) and interest(s), in and to, the copyright(s) granted by the United States of America, respecting all works appearing in THE NEW REPUBLIC and registered in the Office of the Library of Congress, at Washington, D. C. on entry Class B.

THE NEW REPUBLIC, INC., reserves the right, however, to reprint this material under its own name in any NEW REPUBLIC, INC. publication.

In witness whereof we have hereunto set out hand and seal this

_____ August 8, 1975 _____

THE NEW REPUBLIC, INC.

Leslie B. Seagrave
Rights and Permissions

WITNESS:

# A-147

VOL. 1779 PAGE 181

## ASSIGNMENT OF COPYRIGHT

In consideration of the sum of one dollar ($1.00) to us in hand paid,

and other valuable consideration, we hereby sell, assign and transfer to

Stanley Kauffmann            the entire right, title and interest,

in and to, the copyright granted by the United States of America, respecting

a work entitled all works appearing in the year 1975            by

Stanley Kauffmann            published in THE NEW REPUBLIC on the year 1975

in an issue dated the year 1975            and registered in the Office of the

Library of Congress, at Washington, D.C. on entry: Class B, No. B            .

The New Republic, Inc., reserves the right, however, to reprint this material

under its own name in any NEW REPUBLIC publication.

In witness whereof we have hereunto set our hand and seal this

20        March            1980

*Copyright Office*
*of the*
*United States*

THE LIBRARY OF CONGRESS

*Barbara Ringer*

Register of Copyrights
and
Assistant Librarian
for
Copyright Services

THIS IS TO CERTIFY
THAT THE ATTACHED
DOCUMENT WAS RE-
CORDED IN THE COPY-
RIGHT OFFICE ON THE
DATE AND IN THE
PLACE SHOWN BELOW.

THIS CERTIFICATE IS IS-
SUED UNDER THE SEAL
OF THE COPYRIGHT OF-
FICE.

Date of Recordation
31Mar80

Volume
1779

Page
181

Certification A   July 1979—30,000

*Copyright Office
of the
United States*

THE LIBRARY OF CONGRESS

*Barbara Ringer*

Register of Copyrights
and
Assistant Librarian
for
Copyright Services

THIS IS TO CERTIFY
THAT THE ATTACHED
DOCUMENT WAS RE-
CORDED IN THE COPY-
RIGHT OFFICE ON THE
DATE AND IN THE
PLACE SHOWN BELOW.

THIS CERTIFICATE IS IS-
SUED UNDER THE SEAL
OF THE COPYRIGHT OF-
FICE.

Date of Recordation
9Nov79

Volume
1761

Pages
332

Certification A   July 1979—30,000

VOL. 176 PAGE 332

## ASSIGNMENT OF COPYRIGHT

In consideration of the sum of one dollar ($1.00) to us in hand paid,
and other valuable consideration, we hereby sell, assign and transfer to
_____Stanley Kauffmann_____ the entire right, title and interest,
in and to, the copyright granted by the United States of America, respecting
a work entitled _all works appearing in the year 1978_____ by
____Stanley Kauffmann_____ published in THE NEW REPUBLIC on _the year 1978_
in an issue dated ___the year 1978_____ and registered in the Office of the
Library of Congress, at Washington, D.C. on entry: Class B, No. B _____.
The New Republic, Inc., reserves the right, however, to reprint this material
under its own name in any NEW REPUBLIC publication.

In witness whereof we have hereunto set our hand and seal this
_25___ day of _October_____, _1979__.

WITNESS:                              THE NEW REPUBLIC, INC.

_____                 _____
                                      Yvonne Anthony
                                      Rights and Permissions

# Copyright Office of the United States of America

## THE LIBRARY OF CONGRESS
### WASHINGTON

THIS IS TO CERTIFY THAT THE ATTACHED INSTRUMENT WAS RECORDED IN
THE COPYRIGHT OFFICE RECORDS OF ASSIGNMENTS AND RELATED DOCU-
MENTS ON THE DATE AND IN THE PLACE SHOWN BELOW.

IN TESTIMONY WHEREOF THE SEAL OF THIS OFFICE IS AFFIXED HERETO.

*Barbara Ringer*
Register of Copyrights

Date of Recordation          18Oct76

Volume  1600                 Pages  113

SEAL

CERTIFICATION A (DEC. 1979 15,000)

Case 18-2404, Document 44, 10/01/2018, 2400476, Page159 of 208

**A-151**

VOL. 1600 PAGE 113

## ASSIGNMENT OF COPYRIGHT

In consideration of the sum of one dollar ($1.00) to us in hand paid, and other valuable consideration, we hereby sell, assign and transfer to

_____

the entire right(s), title(s) and interest(s), in and to, the copyright(s) granted by the United States of America, respecting all works by the above named author appearing in THE NEW REPUBLIC, and registered in the Office of the Library of Congress, at Washington, D. C. on entry Class B. for the year 1976 through 19__.

THE NEW REPUBLIC, INC., reserves the right, however, to reprint this material under its own name in any NEW REPUBLIC, INC. publication.

In witness whereof we have hereunto set out hand and seal this

_____

THE NEW REPUBLIC, INC.

_____
Leslie B. Seagrave
Rights and Permissions

WITNESS:

_____

*Copyright Office*
*of the*
*United States*

THE LIBRARY OF CONGRESS

*Barbara Ringer*

Register of Copyrights
and
Assistant Librarian
for
Copyright Services

THIS IS TO CERTIFY
THAT THE ATTACHED
DOCUMENT WAS RE-
CORDED IN THE COPY-
RIGHT OFFICE ON THE
DATE AND IN THE
PLACE SHOWN BELOW.

THIS CERTIFICATE IS IS-
SUED UNDER THE SEAL
OF THE COPYRIGHT OF-
FICE.

Date of Recordation
   9Nov79

Volume
   1761

Pages
   331

Certification A   July 1979—30,000

# A-153

VOL. 1 7 6 1 PAGE 3 3 1

## ASSIGNMENT OF COPYRIGHT

In consideration of the sum of one dollar ($1.00) to us in hand paid, and other valuable consideration, we hereby sell, assign and transfer to _____Stanley Kauffmann_____ the entire right, title and interest, in and to, the copyright granted by the United States of America, respecting a work entitled _all works appearing in the year 1979_____ by ____Stanley Kauffmann_____ published in THE NEW REPUBLIC on _the year 1979_ in an issue dated _the year 1979_____ and registered in the Office of the Library of Congress, at Washington, D.C. on entry: Class B, No. B _____. The New Republic, Inc., reserves the right, however, to reprint this material under its own name in any NEW REPUBLIC publication.

In witness whereof we have hereunto set our hand and seal this __25__ day of _October_____ , _1979_____ .

WITNESS:                                THE NEW REPUBLIC, INC.

_Diana Buckner_                          _Yvonne Anthony_
_____                 _____
                                        Yvonne Anthony
                                        Rights and Permissions

*Copyright Office*
*of the*
*United States*

THE LIBRARY OF CONGRESS

*Barbara Ringer*

Register of Copyrights
and
Assistant Librarian
for
Copyright Services

THIS IS TO CERTIFY
THAT THE ATTACHED
DOCUMENT WAS RE-
CORDED IN THE COPY-
RIGHT OFFICE ON THE
DATE AND IN THE
PLACE SHOWN BELOW.

THIS CERTIFICATE IS IS-
SUED UNDER THE SEAL
OF THE COPYRIGHT OF-
FICE.

Date of Recordation
    31Mar80

Volume
    1779

Pages
    182

Certification A   July 1973—50,000

ASSIGNMENT OF COPYRIGHT

In consideration of the sum of one dollar ($1.00) to us in hand paid,

and other valuable consideration, we hereby sell, assign and transfer to

Stanley Kauffmann                     the entire right, title and interest,

in and to, the copyright granted by the United States of America, respecting

a work entitled    all works appearing in the year 1974        by

Stanley Kauffmann          published in THE NEW REPUBLIC on the year 1974

in an issue dated    the year 1974      and registered in the Office of the

Library of Congress, at Washington, D.C. on entry: Class B, No. B _____.

The New Republic, Inc., reserves the right, however, to reprint this material

under its own name in any NEW REPUBLIC publication.


In witness whereof we have hereunto set our hand and seal this

20   day of    March          , 1980 .


WITNESS:                              THE NEW REPUBLIC, INC.


_____              _____
                                     Yvonne Anthony
                                     Rights and Permissions

ASSIGNMENT OF COPYRIGHT

In consideration of the sum of one dollar ($1.00) to us in hand paid,
and other valuable consideration, we hereby sell, assign and transfer to
Stanley Kauffmann _____ the entire right, title and interest,
in and to, the copyright granted by the United States of America, respecting
a work entitled ___all works appearing in the year 1974___ by
Stanley Kauffmann _____ published in THE NEW REPUBLIC on the year 1974
in an issue dated __the year 1974__ and registered in the Office of the
Library of Congress, at Washington, D.C. on entry: Class B, No. B _____.
The New Republic, Inc., reserves the right, however, to reprint this material
under its own name in any NEW REPUBLIC publication.

In witness whereof we have hereunto set our hand and seal this
__20__ day of __March__ , __1980__ .


WITNESS:                                      THE NEW REPUBLIC, INC.


_____                     _____
                                              Yvonne Anthony
                                              Rights and Permissions

## ASSIGNMENT OF COPYRIGHT

In consideration of the sum of one dollar ($1.00) to us in hand paid, and other valuable consideration, we hereby sell, assign and transfer to Stanley Kauffmann the entire right, title and interest, in and to, the copyright granted by the United States of America, respecting a work entitled all works appearing in the year 1975 by Stanley Kauffmann published in THE NEW REPUBLIC on the year 1975 in an issue dated the year 1975 and registered in the Office of the Library of Congress, at Washington, D.C. on entry: Class B, No. B _____. The New Republic, Inc., reserves the right, however, to reprint this material under its own name in any NEW REPUBLIC publication.

In witness whereof we have hereunto set our hand and seal this 20 day of March ,1980 .

WITNESS:

THE NEW REPUBLIC, INC.

Yvonne Anthony
Rights and Permissions

# EXHIBIT 9

**A-159**

# Copyright Office of the United States of America

## THE LIBRARY OF CONGRESS

### WASHINGTON

THIS IS TO CERTIFY THAT THE ATTACHED INSTRUMENT WAS RECORDED IN
THE COPYRIGHT OFFICE RECORDS OF ASSIGNMENTS AND RELATED DOCUMENTS
ON THE DATE AND IN THE PLACE SHOWN BELOW.

IN TESTIMONY WHEREOF THE SEAL OF THIS OFFICE IS AFFIXED HERETO.

*Abraham L. Kaminstein*
REGISTER OF COPYRIGHTS

Date of Recordation

Pages
**669**

CERTIFICATION A   (FEB. 1963 20,000)

Case 18-2404, Document 44, 10/01/2018, 2400476, Page168 of 208

VOL 1216 PAGE 669

ASSIGNMENT OF COPYRIGHT

In consideration of the sum of one dollar ($1.00) to us in hand paid, and other valuable consideration, we hereby sell, assign and transfer to STANLEY KAUFFMANN the entire right, title and interest, in and to, the copyright granted by the United States of America respecting a work entitled EARLY SUCCESS, RECENT FIASCO, by STANLEY KAUFFMANN, published in THE NEW REPUBLIC on October 15, 1965, in an issue dated October 23, 1965, and registered in the Office of the Library of Congress, at Washington, D. C. on Entry: Class B. No. 221681.

Harrison-Blaine of New Jersey, Inc. reserves the right, however, to reprint this material under its own name in any NEW REPUBLIC anthology, or otherwise.

It witness whereof we have hereunto set our hand and seal this 19th day of November, 1965.

HARRISON-BLAINE OF NEW JERSEY, INC.

Holly Shumway
Permissions

Witness:

# Copyright Office of the United States of America

## THE LIBRARY OF CONGRESS

### WASHINGTON

THIS IS TO CERTIFY THAT THE ATTACHED INSTRUMENT WAS RECORDED IN
THE COPYRIGHT OFFICE RECORDS OF ASSIGNMENTS AND RELATED DOCUMENTS
ON THE DATE AND IN THE PLACE SHOWN BELOW.

IN TESTIMONY WHEREOF THE SEAL OF THIS OFFICE IS AFFIXED HERETO.

*Abraham L. Kaminstein*
REGISTER OF COPYRIGHTS

Date of Recordation
29 Oct 65

| Volume | Pages |
|--------|-------|
| 1214   | 534   |

CERTIFICATION A ' (FEB. 1965 20,000)

**A-162**

VOL 1214 PAGE 534

ASSIGNMENT OF COPYRIGHT


In consideration of the sum of one dollar ($1.00) to us in hand paid, and other

valuable consideration, we hereby sell, assign and transfer to STANLEY KAUFFMANN the

entire right, title and interest, in and to, the copyrights granted by the United States

of America respecting the following works by STANLEY KAUFFMANN:

| TITLE | DATE OF PUBLICATION | DATE OF ISSUE |
|---|---|---|
| THE WAY OF SOME FLESH | August 27, 1965 | September 4, 1965 |
| FROM FRANCE WITH TALENT | September 3, 1965 | September 11, 1965 |
| ARE WE DOOMED TO FESTIVALS? | September 24, 1965 | October 2, 1965 |


Registered in the Office of the Library of Congress, at Washington, D. C. on

Entries: Class B. Nos. 208526, 212198 and 216149, respectively.

Harrison-Blaine of New Jersey, Inc. reserves the right, however, to reprint this

material under its own name in any NEW REPUBLIC anthology, or otherwise.

In witness whereof we have hereunto set our hand and seal this 26th day of October,

1965.

HARRISON-BLAINE OF NEW JERSEY, INC.


Holly Shumway
Permissions



Witness:

Copyright Office of the United States of America

## THE LIBRARY OF CONGRESS
### WASHINGTON

THIS IS TO CERTIFY THAT THE ATTACHED INSTRUMENT WAS RECORDED IN
THE COPYRIGHT OFFICE RECORDS OF ASSIGNMENTS AND RELATED DOCUMENTS
ON THE DATE AND IN THE PLACE SHOWN BELOW.

IN TESTIMONY WHEREOF THE SEAL OF THIS OFFICE IS AFFIXED HERETO.

*Abraham L. Kaminstein*
REGISTER OF COPYRIGHTS

Date of Recordation
**9Dec65**

Volume          Pages
**1218**          **551**

CERTIFICATION A · (FEB. 1963 20,000)

SEAL

# A-164

VOL. 1218 PAGE 351

ASSIGNMENT OF COPYRIGHT


In consideration of the sum of one dollar ($1.00) to us in hand paid, and other valuable consideration, we hereby sell, assign and transfer to STANLEY KAUFFMANN the entire right, title and interest, in and to, the copyright granted by the United States of America respecting a work entitled 8-1/2--LADIES'SIZE, by STANLEY KAUFFMANN, published in THE NEW REPUBLIC on November 5, 1965, in an issue dated November 13, 1965, and registered in the Office of the Library of Congress, at Washington, D. C. on Entry: Class B. No. 224860.

Harrison-Blaine of New Jersey, Inc. reserves the right, however, to reprint this material under its own name in any NEW REPUBLIC anthology, or otherwise.

In witness whereof we have hereunto set our hand and seal this 6th day of December, 1965.

HARRISON-BLAINE OF NEW JERSEY, INC.


Holly Shumway
Permissions


Witness:

**A-165**

Copyright Office of the United States of America

### THE LIBRARY OF CONGRESS
#### WASHINGTON

THIS IS TO CERTIFY THAT THE ATTACHED INSTRUMENT WAS RECORDED IN THE COPYRIGHT OFFICE RECORDS OF ASSIGNMENTS AND RELATED DOCUMENTS ON THE DATE AND IN THE PLACE SHOWN BELOW.

IN TESTIMONY WHEREOF THE SEAL OF THIS OFFICE IS AFFIXED HERETO.

*Barbara Ringer*
Register of Copyrights

SEAL

Date of Recordation

Volume _____          Pages _____

CERTIFICATION A (JAN. 1974-10,000)

**A-166**

## ASSIGNMENT OF COPYRIGHT

In consideration of the sum of one dollar ($1.00) to us in hand paid, and other valuable consideration, we hereby sell, assign and transfer to STANLEY KAUFFMANN the entire right, title and interest, in and to, the coprights granted by the United States of America, respecting the works entitled,

| TITLE | PUBLICATION DATE | MAGAZINE DATE | ON ENTRY, CLASS B. |
|---|---|---|---|
| "IN THE NAME OF THE FATHER" | March 15, 1974 | March 23, 1974 | B935290 |
| "THE GREAT GATSBY" | April 5, 1974 | April 13, 1974 | B935288 |
| "BADLANDS" | April 5, 1974 | April 13, 1974 | B935287 |
| "THE THREE MUSKETEERS" | April 19, 1974 | April 27, 1974 | B935284 |
| "THE CONVERSATION" | April 19, 1974 | April 27, 1974 | B935284 |

The New Republic, Inc. reserves the right, however, to reprint this material under its own name in any NEW REPUBLIC publication.

In witness whereof we have hereunto set our hand and seal this 23th day of September, 1974.

WITNESS:

_Cherryl Holt_ _____

Cherryl Holt, Literary Assistant

THE NEW REPUBLIC INC.

_Leslie Seagrave_ _____

Leslie Seagrave, Permissions

# Copyright Office of the United States of America

## THE LIBRARY OF CONGRESS
### WASHINGTON

THIS IS TO CERTIFY THAT THE ATTACHED INSTRUMENT WAS RECORDED IN THE COPYRIGHT OFFICE RECORDS OF ASSIGNMENTS AND RELATED DOCUMENTS ON THE DATE AND IN THE PLACE SHOWN BELOW.

IN TESTIMONY WHEREOF THE SEAL OF THIS OFFICE IS AFFIXED HERETO.

*Abraham L. Kaminstein*
REGISTER OF COPYRIGHTS

Date of Recordation

**19 Jun 70**

Volume **1384**    Pages **91-95**

CERTIFICATION A (JUNE 1969-15,000)

SEAL

ASSIGNMENT OF COPYRIGHT

In consideration of the sum of one dollar ($1.00) to us in hand paid, and other valuable considera-
tion, we hereby sell, assign and transfer to STANLEY KAUFFMANN the entire right, title and interest, in
and to, the copyrights granted by the United States of America and registered in the Office of the
Library of Congress, at Washington, D. C., respecting the following works by STANLEY KAUFFMANN which
have appeared in THE NEW REPUBLIC:

| TITLE OF ARTICLE | PUBLICATION DATE | ISSUE DATE | CLASS B. NO. |
|---|---|---|---|
| "Cum Laude" | 12/15/67 | 12/23/67 | B 390967 |
| "Doomed Lovers" | 11/24/67 | 12/2/67 | B 386399 |
| "The Colors of Camus" | 1/5/68 | 1/13/68 | B 394795 |
| "Grace and Disgrace" | 1/26/68 | 2/3/68 | B 400371 |
| "Ahmed and Isabela" | 2/9/68 | 2/17/68 | B 404897 |
| "Tell the Real Lies" | 2/23/68 | 3/2/68 | B 407304 |
| "The Poet and the Pimp" | 3/29/68 | 4/6/68 | B 416405 |
| "Opus 28" | 4/12/68 | 4/20/68 | B 419560 |
| "Activism Can Be Fun" | 4/19/68 | 4/27/68 | B 419559 |
| "Lost in the Stars" | 4/26/68 | 5/4/68 | B 423458 |
| "Odd Couplings" | 5/17/68 | 5/25/68 | B 426657 |
| "War: Fact and Fancy" | 5/24/68 | 6/1/68 | B 428450 |

**A-169**

PAGE TWO

| TITLE OF ARTICLE | PUBLICATION DATE | ISSUE DATE | CLASS B. NO. |
|---|---|---|---|
| "Son of a Witch" | 6/7/68 | 6/15/68 | B 432353 |
| "Lesser but Lester" | 6/21/68 | 6/29/68 | B 435599 |
| "Osborne Observed" | 7/5/68 | 7/13/68 | B 438758 |
| "Hit and Myth" | 8/2/68 | 8/10/68 | B 444072 |
| "Fine Acting" | 8/30/68 | 9/7/68 | B 449691 |
| "Children of our Time" | 9/13/68 | 9/21/68 | B 454559 |
| "England Expects" | 10/4/68 | 10/12/68 | B 458056 |
| "Long Weekend" | 10/11/68 | 10/19/68 | B 459248 |
| "Sex Symbols" | 10/25/68 | 11/2/68 | B 462500 |
| "Three for Fun" | 11/1/68 | 11/9/68 | B 463949 |
| "Beatles and Other Creatures" | 11/8/68 | 11/16/68 | B 465441 |
| "Policeman's Lot" | 11/15/68 | 11/23/68 | B 469816 |
| "Making Faces" | 12/6/68 | 12/14/68 | B 475463 |
| "An American Informer" | 12/13/68 | 12/21/68 | B 475464 |
| "Berman and Pinter" | 12/27/68 | 1/4/69 | B 476280 |
| "True and Otherwise" | 1/3/69 | 1/11/69 | B 476279 |
| "Greetings and Groans" | 1/10/69 | 1/18/69 | B 476278 |
| "Decline and Fall of A Bird Watcher" | 2/7/69 | 2/15/69 | B 484651 |
| "Stolen Kisses, and Pierrot le Fou" | 2/14/69 | 2/22/69 | B 485530 |
| "Bezhin Meadow" | 2/21/69 | 3/1/69 | B 488019 |

PAGE THREE

| TITLE OF ARTICLE | PUBLICATION DATE | ISSUE DATE | CLASS B. NO. |
|---|---|---|---|
| "Simon of the Desert" | 2/28/69 | 3/8/69 | B 487301 |
| "The Immortal Story" | 2/28/69 | 3/8/69 | B 487301 |
| "I Am Curious (yellow)" | 3/7/69 | 3/15/69 | B 491893 |
| "Salesman" | 3/28/69 | 4/5/69 | B 495386 |
| "Lola Montes" | 4/25/69 | 5/3/69 | B 504957 |
| "The Loves of Isadora" | 5/9/69 | 5/17/69 | B 506081 |
| "Last Summer" | 7/4/69 | 7/12/69 | B 522620 |
| "Goodbye, Columbus" | 4/4/69 | 4/12/69 | B 498255 |
| "The Red and the White" | 4/11/69 | 4/19/69 | B 498257 |
| "The Round Up" | 5/16/69 | 5/24/69 | B 509729 |
| "Midnight Cowboy" | 5/30/69 | 6/7/69 | B 516530 |
| "The Wild Bunch" | 7/11/69 | 7/19/69 | B 522619 |
| "Easy Rider" | 7/25/69 | 8/2/69 | B 522194 |
| "Putney Swope" | 8/15/69 | 8/30/69 | B 539799 |
| "Medium Cool" | 9/12/69 | 9/20/69 | B 534947 |
| "Spirits of the Dead" | 9/19/69 | 9/27/69 | B 534948 |
| "Alice's Restaurant" | * | " | " |
| "A Recent Change (B. Deming)" | 9/26/69 | 10/4/69 | B 534949 |
| "The Bed Sitting Room" | 10/10/69 | 10/18/69 | B 539800 |

Page Four

| TITLE OF ARTICLE | PUBLICATION DATE | ISSUE DATE | CLASS B. NO. |
|---|---|---|---|
| "Adalen 31" | 10/17/69 | 10/25/69 | B 599511 |
| "Duet for Cannibals" | 11/7/69 | 11/15/69 | B 548740 |
| "Tell Them Willie Boy Is Here" | 11/28/69 | 12/6/69 | B 547914 |
| "Z" | 12/5/69 | 12/13/69 | B 557013 |
| "They Shoot Horses Don't They?" | 1/9/70 | 1/17/70 | B 557017 |
| "Intimate Lighting" | " | " | " |
| "The Circus" | 1/16/70 | 1/24/70 | B 560441 |
| "A Married Couple" | 1/23/70 | 1/31/70 | B 560442 |
| "In the Year of the Pig" | 12/5/69 | 12/13/69 | B 557013 |
| "M*A*S*H" | 1/23/70 | 1/ 31/70 | B 560442 |
| "The Milky Way" | 1/30/70 | 2/7/70 | B 569793 |
| "Patton" | 2/27/70 | 3/7/70 | B 570713 |
| "Zabriskie Point" | 2/6/70 | 3/14/70 | B 470714 |
| "Winter Wind" | 3/20/70 | 3/28/70 | B 575742 |
| "Fellini Satricon" | 4/3/70 | 4/11/70 | B 574974 |
| "Targets" | 8/23/68 | 8/31/68 | B 448373 |
| "The Prime of Miss Jean Brodie" | 2/21/69 | 3/1/69 | B 488019 |

VOL **1384** PAGE **95**

Page Five

| TITLE OF ARTICLE | PUBLICATION DATE | ISSUE DATE | CLASS B. NO. |
|---|---|---|---|
| "Winning" | 6/6/69 | 6/14/69 | B 516528 |
| "True Grit" | 7/18/69 | 7/26/69 | B 522618 |
| "Staircase" | 8/29/69 | 9/13/69 | B 534945 |

Harrison-Blaine of New Jersey, Inc., however, reserves the right to reprint this material under

its own name in any NEW REPUBLIC publication.

In witness whereof, we have hereunto set our hand and seal this 18th day of May, 1970.

HARRISON-BLAINE OF NEW JERSEY, INC.

Ann T. Bornstein
Permissions

WITNESS:

Ira Klafter
Production Manager

# Copyright Office of the United States of America

## THE LIBRARY OF CONGRESS
### WASHINGTON

THIS IS TO CERTIFY THAT THE ATTACHED INSTRUMENT WAS RECORDED IN THE COPYRIGHT OFFICE RECORDS OF ASSIGNMENTS AND RELATED DOCU-MENTS ON THE DATE AND IN THE PLACE SHOWN BELOW.

IN TESTIMONY WHEREOF THE SEAL OF THIS OFFICE IS AFFIXED HERETO.

*Abraham L. Kaminstein*
REGISTER OF COPYRIGHTS



Date of Recordation
19Aug70

Volume          Pages
1390            312

CERTIFICATION A (JUNE 1969-15,000)

SEAL

ASSIGNMENT OF COPYRIGHT

VOL 1390 PAGE 312

In consideration of the sum of one dollar ($1.00) to us in hand paid, and other valuable consideration we hereby sell, assign and transfer to Stanley Kauffmann the entire right, title and interest, in and to, the copyrights granted by the United States of America and registered in the Office of the Library of Congress, at Washington, D.C., respecting the following works by Stanley Kauffmann which have appeared in THE NEW REPUBLIC:

| TITLE OF ARTICLE | PUBLICATION DATE | ISSUE DATE | CLASS B. NO. |
|---|---|---|---|
| "Mississippi Mermaid" | 4/24/70 | 5/2/70 | B 585019 |
| "Brotherly Love" | 5/1/70 | 5/9/70 | B 586150 |
| "Two or Three Things I Know About Her" | 5/1/70 | 5/9/70 | B 586150 |
| "The Joke" | 5/8/70 | 5/16/70 | B 584655 |
| "Getting Straight" | 5/22/70 | 5/30/70 | B 589444 |
| "Sympathy for the Devil; See you at Mao" | 5/28/70 | 6/6/70 | B 590553 |
| "The Ballad of Cable Hogue" | 5/28/70 | 6/6/70 | B 590553 |
| "The Passion of Anna" | 6/12/70 | 6/20/70 | B 593589 |
| "Catch-22" | 6/26/70 | 7/4/70 | B 596522 |
| "How Young You Look" | 6/19/70 | 6/27/70 | B 597229 |

Harrison-Blaine of New Jersey, Inc., however, reserves the right to reprint this material under its own name in any NEW REPUBLIC publication.

In witness whereof, we have hereunto set our hand and seal this 13th day of August, 1970.

HARRISON-BLAINE OF NEW JERSEY, INC.

_____
Ann T. Bornstein, Permissions

Witness:

_Penny Kramer_

Penny Kramer, Permissions

# Copyright Office of the United States of America

## THE LIBRARY OF CONGRESS

### WASHINGTON

THIS IS TO CERTIFY THAT THE ATTACHED INSTRUMENT WAS RECORDED IN
THE COPYRIGHT OFFICE RECORDS OF ASSIGNMENTS AND RELATED DOCUMENTS
ON THE DATE AND IN THE PLACE SHOWN BELOW.

IN TESTIMONY WHEREOF THE SEAL OF THIS OFFICE IS AFFIXED HERETO.

*Abraham L. Kaminstein*
REGISTER OF COPYRIGHTS

Date of Recordation

Volume **1211**          Pages

CERTIFICATION A ' (FEB. 1963 20,000)

## ASSIGNMENT OF COPYRIGHT

In consideration of the sum of one dollar ($1.00) to us in hand paid, and other valuable consideration, we hereby sell, assign and transfer to STANLEY KAUFMANN the entire right, title and interest, in and to, the copyrights granted by the United States of America and registered in the Office of the Library of Congress, at Washington, D. C., respecting the following works by STANLEY KAUFMANN:

| TITLE OF ARTICLE | DATE OF PUBLICATION | DATE OF ISSUE | CLASS B. NO. |
| --- | --- | --- | --- |
| Arms and the Man | February 25, 1958 | March 3, 1958 | 700955 |
| Love in Old New England | April 1, 1958 | April 7, 1958 | 703453 |
| A Young Lion | April 22, 1958 | April 28, 1958 | 706821 |
| God's Belittled Acre | June 24, 1958 | June 30, 1958 | 718156 |
| Made in England | September 2, 1958 | September 8, 1958 | 729677 |
| The Outer Edges | September 23, 1958 | September 29, 1958 | 733151 |
| Hollywood and Hemingway | September 30, 1958 | October 6, 1958 | 734433 |
| Huston: The Broken Promise | October 28, 1958 | November 3, 1958 | 739203 |
| The Second Mr. Hulot | December 2, 1958 | December 8, 1958 | 745183 |
| Artist's Artist | December 9, 1958 | December 15, 1958 | 746863 |
| The Doctored Dilemma | December 22, 1958 | December 29, 1958 | 748474 |
| Some Came Ambling | January 6, 1959 | January 12, 1959 | 750545 |
| Far East and Far Off | January 27, 1959 | February 2, 1959 | 753734 |
| A Lovely Uncivilized Feeling | February 10, 1959 | February 16, 1959 | 756979 |

ASSIGNMENT OF COPYRIGHT--STANLEY KAUFFMANN
PAGE 2

| TITLE OF ARTICLE | DATE OF PUBLICATION | DATE OF ISSUE | CLASS B. NO. |
|---|---|---|---|
| Mother India | February 17, 1959 | February 23, 1959 | 758424 |
| Old Titles, New Stories | March 10, 1959 | March 16, 1959 | 761437 |
| The Return of Marilyn Monroe | March 24, 1959 | March 30, 1959 | 761081 |
| Angry Man on the Make | April 7, 1959 | April 13, 1959 | 766571 |
| Swedish Rhapsody | April 21, 1959 | April 27, 1959 | 770265 |
| The False Choice | May 5, 1959 | May 11, 1959 | 771736 |
| Leftovers from Television | June 2, 1959 | June 8, 1959 | 776551 |
| A Use of Beauty | June 16, 1959 | June 29, 1959 | 779921 |
| From France, Old and New | July 21, 1959 | July 27, 1959 | 786491 |
| Mixed Grill | August 4, 1959 | August 10, 1959 | 786806 |
| Look Back at Osborne | September 22, 1959 | September 28, 1959 | 795273 |
| Not Quite Mesmerized | October 6, 1959 | October 12, 1959 | 815598 |
| New Directors, Old Directions | December 1, 1959 | December 7, 1959 | 807690 |
| Waiting for the End | December 8, 1959 | December 14, 1959 | 809993 |
| A Pair of Spectacles | December 22, 1959 | December 28, 1959 | 811623 |
| Arty Horror, Straight Suspense | January 12, 1960 | January 18, 1960 | 814344 |
| Deutschland All Über Again | January 19, 1960 | January 25, 1960 | 814343 |
| The Fact of Mortality | March 1, 1960 | March 7, 1960 | 823008 |

ASSIGNMENT OF COPYRIGHT--STANLEY KAUFFMANN
PAGE 3

| TITLE OF ARTICLE | DATE OF PUBLICATION | DATE OF ISSUE | CLASS B. NO. |
|---|---|---|---|
| Home Thoughts from Abroad | April 5, 1960 | April 11, 1960 | 829539 |
| Three Careers, Ascending and Descending | April 19, 1960 | April 25, 1960 | 832423 |
| The Tennessee Williams Cycle | April 26, 1960 | May 2, 1960 | 832424 |
| What's in A Laugh? | May 24, 1960 | May 30, 1960 | 837703 |
| Art and the Merely Arty | May 31, 1960 | June 6, 1960 | 838570 |
| Three for the Summer | June 21, 1960 | June 27, 1960 | 842280 |
| The Ordeals of Oscar Wilde | July 19, 1960 | July 25, 1960 | 843014 |
| Several Sons, Several Lovers | August 23, 1960 | August 29, 1960 | 853515 |
| A Package of Imports | September 13, 1960 | September 19, 1960 | 857122 |
| The Stars in Their Courses | September 27, 1960 | October 3, 1960 | 859871 |
| Two Versions of the Truth | October 11, 1960 | October 17, 1960 | 862083 |
| It Needn't Be Bad If It's Big | November 10, 1960 | November 14, 1960 | 868584 |
| Working on the Cathedral | November 29, 1960 | December 5, 1960 | 871599 |
| The Facts on the Debit Side | December 20, 1960 | December 26, 1960 | 875658 |
| Another Russian Problem | January 3, 1961 | January 9, 1961 | 877662 |
| Uncrabbed Age and Youth | January 24, 1961 | January 30, 1961 | 880685 |
| Adventures of an Anti-Hero | February 7, 1961 | February 13, 1961 | 884164 |
| Across the Great Divide | February 14, 1961 | February 20, 1961 | 885486 |

ASSIGNMENT OF COPYRIGHT--STANLEY KAUFMANN
PAGE 4

| TITLE OF ARTICLE | DATE OF PUBLICATION | DATE OF ISSUE | CLASS B. NO. |
|---|---|---|---|
| With Negroes in Suburbia | March 14, 1961 | March 20, 1961 | 890858 |
| Operation Abolition | March 21, 1961 | March 27, 1961 | 891211 |
| One-Eyed Jacks | March 28, 1961 | April 3, 1961 | 894129 |
| Arrival of an Artist | April 4, 1961 | April 10, 1961 | 895004 |
| Not Quite All Right, Jack | April 11, 1961 | April 17, 1961 | 895560 |
| A Catalogue of Deadly Sins | April 25, 1961 | May 1, 1961 | 899318 |
| A Word Returns to Common Use | May 9, 1961 | May 15, 1961 | 900927 |
| Fine Italian Hands | May 16, 1961 | May 22, 1961 | 903314 |
| From the Country of the Blind | June 6, 1961 | June 12, 1961 | 907793 |
| Some Accidents of Truth | June 27, 1961 | July 3, 1961 | 910857 |
| Large and Little Wars | August 1, 1961 | August 7, 1961 | 917789 |
| Lightness and Laughter | August 29, 1961 | September 4, 1961 | 921547 |
| To Hell With Bergman | September 19, 1961 | September 25, 1961 | 924404 |
| The Talent of Paul Newman | October 3, 1961 | October 9, 1961 | 927347 |
| Microcosms from Europe and America | October 10, 1961 | October 16, 1961 | 929307 |
| The Asphalt Romeo and Juliet | October 17, 1961 | October 23, 1961 | 929810 |
| Macbeth in Japan, Stale Smoke in Dixie | November 21, 1961 | November 27, 1961 | 938421 |
| Hollywood's Germany | December 5, 1961 | December 11, 1961 | 941197 |

ASSIGNMENT OF COPYRIGHT--STANLEY KAUFFMANN
PAGE 5

| TITLE OF ARTICLE | DATE OF PUBLICATION | DATE OF ISSUE | CLASS B. NO. |
|---|---|---|---|
| Jest and Youthful Jollity | December 26, 1961 | January 1, 1962 | 948126 |
| Ghosts, Grime and Grandeur | January 2, 1962 | January 8, 1962 | 946977 |
| The Unadaptable Adapted | February 6, 1962 | February 12, 1962 | 952167 |
| An Artist for an Age | February 20, 1962 | February 26, 1962 | 954220 |
| Master's New and Old | March 13, 1962 | March 19, 1962 | 958251 |
| Torment and Time | March 20, 1962 | March 26, 1962 | 964447 |
| The Most Famous Unknown Director | April 3, 1962 | April 9, 1962 | 962529 |
| Truth Will Out Sometimes | April 10, 1962 | April 16, 1962 | 966085 |
| A Novel, Transcribed on Film | April 16, 1962 | April 23, 1962 | 966052 |
| No Design for Living | May 1, 1962 | May 7, 1962 | 968706 |
| The Truth and Where to Find It | May 8, 1962 | May 14, 1962 | 969733 |
| The Devils of Kawlerowicz | May 15, 1962 | May 21, 1962 | 971053 |
| Humbug Humbug | June 26, 1962 | July 2, 1962 | 980110 |
| Truffaut and Travel | July 3, 1962 | July 9, 1962 | 981680 |
| Family Life Here and There | July 24, 1962 | July 30, 1962 | 983244 |
| A Lady and Some Gentlemen | September 4, 1962 | September 10, 1962 | 990451 |
| An Unemployed Samurai | September 11, 1962 | September 17, 1962 | 992104 |
| A Life's Journey into the Past | September 18, 1962 | September 24, 1962 | 996123 |

ASSIGNMENT OF COPYRIGHT--STANLEY KAUFMANN
PAGE 6

VOL 1211 PAGE 592

| TITLE OF ARTICLE | DATE OF PUBLICATION | DATE OF ISSUE | CLASS B, NO. |
|---|---|---|---|
| England Not So Merry | September 25, 1962 | October 1, 1962 | 1778 |
| What Connection? | October 19, 1962 | October 27, 1962 | 1777 |
| Decisions, D-Day, Dessin | November 2, 1962 | November 10, 1962 | 3750 |
| The Rise of Jane Fonda | November 16, 1962 | November 24, 1962 | 5281 |
| From Chekhov to China | November 23, 1962 | December 1, 1962 | 7895 |
| A Bouquet from Western Europe | December 7, 1962 | December 15, 1962 | 8743 |
| Artist at Work | December 21, 1962 | December 29, 1962 | 12027 |
| A Passion in the Desert | January 4, 1963 | January 12, 1963 | 21191 |
| Joseph K. and Orson W. | February 22, 1963 | March 2, 1963 | 25824 |
| Return of Renior | March 1, 1963 | March 9, 1963 | 28874 |
| War and Truce | March 8, 1963 | March 16, 1963 | 24336 |
| Boudoir of the World | March 15, 1963 | March 23, 1963 | 27534 |
| Where Are the Irish? | March 22, 1963 | March 30, 1963 | 27533 |
| The Fat Boy | April 5, 1963 | April 13, 1963 | 30991 |
| A Man of Death and Secrets | April 19, 1963 | April 27, 1963 | 34233 |
| A Cold Season | May 3, 1963 | May 11, 1963 | 36009 |
| From the Far East to the East End | May 10, 1963 | May 18, 1963 | 37829 |
| A Near Hit: More Art Than Matter | May 17, 1963 | May 25, 1963 | 39455 |

ASSIGNMENT OF COPYRIGHT--STANLEY KAUFFMANN
PAGE 7

| TITLE OF ARTICLE | DATE OF PUBLICATION | DATE OF ISSUE | CLASS B. NO. |
|---|---|---|---|
| Down and Out in London and Paris | June 1, 1963 | June 8, 1963 | 49614 |
| A Jolly Good Fellini | July 5, 1963 | July 13, 1963 | 49333 |
| The Footballer and the Lady | July 12, 1963 | July 20, 1963 | 50480 |
| Women and Their Sisters | July 26, 1963 | August 3, 1963 | 54105 |
| Gold, Gilding, Gilt | August 9, 1963 | August 17, 1963 | 58713 |
| Caging the Leopard | September 6, 1963 | September 14, 1963 | 61061 |
| The Descent of Mann | September 20, 1963 | September 28, 1963 | 66638 |
| After the Ball Was Over | September 27, 1963 | October 5, 1963 | 66639 |
| Wanton Women, Modest Men | October 4, 1963 | October 12, 1963 | 66640 |
| Old Pro and Old Prose | October 11, 1963 | October 19, 1963 | 68551 |
| Discovery of the Pole | October 25, 1963 | November 2, 1963 | 75269 |
| Funny Ha-ha and Funny Peculiar | November 8, 1963 | November 16, 1963 | 75387 |
| Japanese Drama, Domestic Japery | November 15, 1963 | November 23, 1963 | 75268 |
| Room At The Bottom | December 6, 1963 | December 14, 1963 | 79905 |
| Three Hours Apiece | December 27, 1963 | January 4, 1964 | 85694 |
| Starting the New Year Wrong | January 10, 1964 | January 18, 1964 | 85133 |
| Reel, Reel, Super-real | January 17, 1964 | January 25, 1964 | 88416 |
| Dean Swift in the 20th Century | January 24, 1964 | February 1, 1964 | 90609 |

Case 18-2404, Document 44, 10/01/2018, 2400476, Page191 of 208

**A-183**

VOL 1211 PAGE 594

ASSIGNMENT OF COPYRIGHT--STANLEY KAUFFMANN
PAGE 8

| TITLE OF ARTICLE | DATE OF PUBLICATION | DATE OF ISSUE | CLASS B. NO. |
|---|---|---|---|
| A Fine Italian Hand | February 7, 1964 | February 15, 1964 | 92916 |
| Intruding on Bergman | February 14, 1964 | February 22, 1964 | 90608 |
| Saints and Sinners | March 6, 1964 | March 14, 1964 | 96794 |
| High Life Below Stairs | March 13, 1964 | March 21, 1964 | 99949 |
| Collapse of a Dictator | March 20, 1964 | March 28, 1964 | 99950 |
| April Garland | April 17, 1964 | April 25, 1964 | 105335 |
| Again to Italy | May 8, 1964 | May 16, 1964 | 110789 |
| The Fire This Time | May 15, 1964 | May 23, 1964 | 111551 |
| Caper Cuttings | June 26, 1964 | July 4, 1964 | 120688 |
| The News from Karlovy Vary | July 31, 1964 | August 8, 1964 | 127313 |
| The World as a Fair | September 11, 1964 | September 19, 1964 | 134486 |
| Film Thoughts from Abroad | October 16, 1964 | October 24, 1964 | 144234 |
| The More the Murder | October 23, 1964 | October 31, 1964 | 142099 |
| Rex Imperator | November 6, 1964 | November 14, 1964 | 148449 |
| Les Abysses | December 4, 1964 | December 12, 1964 | 152679 |
| Conjugations of Love | December 26, 1964 | January 2, 1965 | 159140 |
| Non-Truth and Fiction | January 2, 1965 | January 9, 1965 | 159139 |
| Vitality, Simplicity, History | January 8, 1965 | January 16, 1965 | 160560 |

VOL 1211 PAGE 595

ASSIGNMENT OF COPYRIGHT--STANLEY KAUFMANN
PAGE 9

| TITLE OF ARTICLE | DATE OF PUBLICATION | DATE OF ISSUE | CLASS B. NO. |
|---|---|---|---|
| No Ford in Our Future | January 15, 1965 | January 23, 1965 | 160120 |
| New Joan, Old Jokes | February 5, 1965 | February 13, 1965 | 166466 |
| An Artist Advances | February 12, 1965 | February 20, 1965 | 166467 |
| Mailing Him Up Again | February 26, 1965 | March 6, 1965 | 177031 |
| Samurai and Chambermaid | March 26, 1965 | April 3, 1965 | 178710 |
| Melpomene in Harlem | April 16, 1965 | April 24, 1965 | 181798 |
| Matters of Death and Life | April 23, 1965 | May 1, 1965 | 184899 |
| To Tell the Truth | May 7, 1965 | May 15, 1965 | 191319 |
| Butterflies and Other Fliers | June 11, 1965 | June 19, 1965 | 194700 |
| More Than A Knack | July 2, 1965 | July 10, 1965 | 197878 |

Harrison-Blaine of New Jersey, Inc., however, reserves the right to reprint this material under its own name in any NEW REPUBLIC anthology, or otherwise.

In witness whereof we have hereunto set our hand and seal this 31st day of August, 1965.

HARRISON-BLAINE OF NEW JERSEY, INC.

Holly Shumway
Permissions

Witness:

# Copyright Office of the United States of America

## THE LIBRARY OF CONGRESS
### WASHINGTON

THIS IS TO CERTIFY THAT THE ATTACHED INSTRUMENT WAS RECORDED IN
THE COPYRIGHT OFFICE RECORDS OF ASSIGNMENTS AND RELATED DOCU-
MENTS ON THE DATE AND IN THE PLACE SHOWN BELOW.

IN TESTIMONY WHEREOF THE SEAL OF THIS OFFICE IS AFFIXED HERETO.

*Barbara Ringer*
Register of Copyrights

SEAL

Date of Recordation

Volume          Pages
1511          339-343

CERTIFICATION A (JAN. 1974-10,000)

## ASSIGNMENT OF COPYRIGHT

In consideration of the sum of one dollar ($1.00) to us in hand paid, and other valuable consideration, we hereby sell, assign and transfer to STANLEY KAUFFMANN the entire right, title and interest, in and to, the copyrights granted by the United States of America, respecting the works entitled:

| TITLE | PUBLICATION DATE | MAGAZINE DATE | ON ENTRY, CLASS B, |
|---|---|---|---|
| "Borsalino" | August 7, 1970 | August 15, 1970 | No. B 605801 |
| "DIARY OF A MAD HOUSEWIFE" | September 4, 1970 | September 12, 1970 | No. B 614001 |
| "THE RISE OF LOUIS XIV" | September 11, 1970 | September 19, 1970 | No. B 612067 |
| "FIVE EASY PIECES" | September 18, 1970 | September 26, 1970 | No. B 615702 |
| "THE WILD CHILD" | September 25, 1970 | October 3, 1970 | No. B 615701 |
| "TRISTANA" | October 2, 1970 | October 10, 1970 | No. B 616071 |
| "BUSTER KEATON FESTIVAL" | October 16, 1970 | October 24, 1970 | No. B 619784 |
| "TRASH" | October 23, 1970 | October 31, 1970 | No. B 619786 |
| "THIS MAN MUST DIE" | November 6, 1970 | November 14, 1970 | No. B 629881 |
| "THE OWL AND THE PUSSYCAT" | November 27, 1970 | December 5, 1970 | No. B 630617 |
| "THE CONFESSION" | December 11, 1970 | December 19, 1970 | No. B 635749 |
| "LITTLE BIG MAN" | December 18, 1970 | December 26, 1970 | No. B 636508 |
| "FLAP" | January 15, 1971 | January 23, 1971 | No. B639932 |
| "LITTLE MURDERS" | January 29, 1971 | February 6, 1971 | No. B 647507 |
| "BED AND BOARD" | February 5, 1971 | February 13, 1971 | No. B 644614 |
| "THE HOUR OF THE FURNACES/ RAMPARTS OF CLAY" | February 19, 1971 | February 27, 1971 | No. B 649058 |
| "CLAIRE'S KNEE" | March 12, 1971 | March 20, 1971 | No. B 656527 |
| "WANDA" | March 19, 1971 | March 27, 1971 | No. B 654669 |
| "THE CONFORMIST" | April 2, 1971 | April 10, 1971 | No. B 658077 |
| "DERBY/ "BANANAS" | May 14, 1971 | May 22, 1971 | No. B 670456 |
| "LA COLLECTIONEUSE" | May 21, 1971 | May 29, 1971 | No. B 670455 |

# A-187

VOL. | 5 | | PAGE 340

-2-

| TITLE | PUBLICATION DATE | MAGAZINE DATE | ON ENTRY, CLASS B, |
|---|---|---|---|
| "UNE FEMME DOUCE | June 18, 1971 | June 26, 1971 | No. B 676551 |
| "THE CLOWNS" | June 25, 1971 | July 3, 1971 | No. B 677614 |
| "CARNAL KNOWLEDGE"/ "THE TOUCH" | August 13, 1971 | Aug. 21 & 28, 1971 | No. B 691720 |
| "THE HIRED HAND"/ "MCCABE AND MRS. MILLER" | August 27, 1971 | September 4, 1971 | No. B 691662 |
| "THE GO-BETWEEN"/ "THE DEVILS" | September 3, 1971 | September 11, 1971 | No. B 693588 |
| "DESPERATE CHARACTERS" | September 17, 1971 | September 25, 1971 | No. B 699681 |
| "MILLHOUSE" | September 24, 1971 | October 2, 1971 | No. B 696651 |
| "SUNDAY BLOODY SUNDAY" | October 1, 1971 | October 9, 1971 | No. B 699682 |
| "THE LAST PICTURE SHOW" | october 8 , 1971 | October 16, 1971 | No. B 702849 |
| "THE FRENCH CONNECTION" | October 22, 1971 | October 30, 1971 | No. B 705689 |
| "FIDDLER ON THE ROOF" | November 12, 1971 | November 20, 1971 | No. B 711626 |
| "A CLOCKWORK ORANGE"/ "MACBETH" | December 30, 1971 | Jan. 1 & 8, 1972 | No. B 725364 |
| "THE HOSPITAL" | January 14, 1972 | January 22, 1972 | No. B 725362 |
| "STRAW DOGS"/ "THE GARDEN OF THE FINZI-CONTINIS | Feb. 11, 1972 | February 19, 1972 | No. B 730268 |
| "CABARET"/"BARTLEBY" | February 25, 1972 | March 4, 1972 | No. B 736017 |
| "TOKYO STORY" | March 10,1972 | March 18, 1972 | No. B 736805 |
| " THE GODFATHER"/"WHAT"S UP, DOC?" | March 24, 1972 | April 1, 1972 | No. B 743844 |
| "THE SORROW AND THE PITY" | April 7, 1972 | April 15, 1972 | No. B 743843 |
| "POCKET MONEY"/SLAUGHTERHOUSE FIVE" | May 5, 1972 | May 13, 1972 | No. B 754386 |
| "UNCLE VANYA" | June 9, 1972 | June 17, 1972 | No. B 758808 |
| "LA SALAMANDRE/CHARLES, DEAD OR ALIVE" | June 23, 1972 | July 1, 1972 | No. B 760526 |
| "FRENZY" | June 30, 1972 | July 8, 1972 | No. B 765907 |
| "THE CANDIDATE"/"DELIVERENCE" | July 28, 1972 | Aug. 5 &12, 1972 | No. B 769356 |
| "LATE SPRING" | August 11, 1972 | Aug. 19 &26, 1972 | No. B. 772182 |

# A-188

VOL. 15 | | PAGE 341

-3-'

| TITLE | PUBLICATION DATE | MAGAZINE DATE | ON ENTRY CLASS B, |
|-------|------------------|---------------|-------------------|
| "A DAY IN THE DEATH OF JOE EGG" | May 12, 1972 | May 20, 1972 | No. B 753651 |
| "JUNIOR BONNER"/"MARJOE" | August 25, 1972 | September 2, 1972 | No. B 777047 |
| "THE RULING CLASS" | September 8, 1972 | September 16, 1972 | No.B778961 |
| "GREASER'S PALACE" | September 15, 1972 | September 23, 1972 | No. B 780030 |
| "THE EMIGRANTS" | September 22, 1972 | September 30, 1972 | No. B 782415 |
| "THE ASSASSINATION OF TROTSKY" | Sept. 29, 1972 | October 7, 1972 | No. B 782713 |
| "CHLOE IN THE AFTERNOON" | October 6, 1972 | October 14, 1972 | No. B 788714 |
| "THE KING OF MARVIN GARDENS " | October 20, 1972 | October 28, 1972 | No. B. 788711 |
| "FELINNIS  ROMA" | October 27, 1972 | November 4, 1972 | No. B 789191 |
| "TWO ENGLISH GIRLS" | November 10, 1972 | November 18, 1972 | No. B 792387 |
| "THEDISCREET CHARM OF THE BOURGEOISIE"/"WHY?" | November 24, 1972 | December 2, 1972 | No. B 786785 |
| "PLAY IT AS IT LAYS" | December 1, 1972 | December 9, 1972 | No. B 798454 |
| "JEREMIAH JOHNSON"/ "TRAFFIC"/ THE HEARTBREAK KID" | Jan 5, 1973 | Jan 6 & 13, 1973 | No. B 806634 |
| "PETE 'n' TILLIE" | January 12, 1973 | January 20, 1973 | No. B 815996 |
| "CRIES AND WHISPERS" | January 26, 1973 | February 3, 1973 | No. B 815993 |
| "THE GETAWAY" | February 2, 1973 | February 10, 1973 | No. B 815994 |
| "AVANTI!"/"UNDER MILK WOOD" | February 16, 1973 | February 24, 1973 | No. B 818161 |
| "LAST TANGO IN PARIS" | February 23, 1973 | March 3, 1973 | No. B 818676 |
| "SAVE THE TIGER"/ "TOUT VA BIEN" | March 2, 1973 | March 10, 1973 | No. B 821281 |
| "PAYDAY" | March 9, 1973 | March 17, 1973 | No. B 825888 |
| "LUDWIG" | March 23, 1973 | March 31, 1973 | No. B 825890 |
| "LOVE"/"BROTHER SUN, SISTER MOON" | March 30, 1973 | April 7, 1973 | No. B 829898 |
| "SUCH A GORGEOUS KID LIKE ME" | April 13, 1973 | April 21, 1973 | No. B 829897 |
| "THE MACK" | April 19, 1973 | April 28, 1973 | No. B 837422 |
| "STATE OF SIEGE"/"SCARECROW" | April 27, 1972 | May 5, 1973 | No. B 837418 |

–4–

| TITLE | PUBLICATION DATE | MAGAZINE DATE | ON ENTRY CLASS B, |
|---|---|---|---|
| "GODSPELL" | May 4, 1973 | May 12, 1973 | No. B 837420 |
| "MEMORIES OF UNDERDEVELOPMENT" | May 11, 1973 | May 19, 1973 | No. B 837419 |
| "THE DAY OF THE JACKAL" | May 25, 1973 | June 2, 1973 | No. B 842839 |
| " A TOUCH OF CLASS"/PAPER MOON" | June 1, 1973 | June 9, 1973 | No. B 844867 |
| "O LUCKY MAN!"/"PAT GARRETT AND BILLY THE KID" | June 8, 1973 | June 16, 1973 | No. B 848472 |
| "THE HIRELING" | June 29, 1973 | July 7 & 14, 1973 | No. B.852089 |
| "PLAYTIME" | July 13, 1973 | July 21, 1973 | No. B 352364 |
| "BLOOD OF THE CONDOR" | August 10, 1973 | Aug. 18 & 25, 1973 | No. B 859886 |
| "BANG THE DRUM SLOWLY" | August 24, 1973 | September 1, 1973 | No. B 862688 |
| "COPS AND ROBBERS" | August 31, 1973 | September 8, 1973 | No. B 865772 |
| "AMERICAN GRAFFITI"/"VISIONS OF EIGHT" | September 7, 1973 | September 15, 1973 | No. B 867519 |
| "HEAVY TRAFFIC" | September 14, 1973 | September 22, 1973 | No. B 868304 |
| "THE NEW LAND" | September 28, 1973 | October 6, 1973 | No. B 873277 |
| "DAY FOR NIGHT" | October 5, 1973 | October 13, 1973 | No. B 875872 |
| "MEAN STREETS" | October 19, 1973 | October 27, 1978 | No. B 877370 |
| "THE LONG GOODBYE"/ "ANDREI REBLEV" | October 26, 1973 | November 3, 1973 | No. B 881030 |
| ""I.F. STONE'S WEEKLY"/THE WAY WE WERE" | November 2, 1973 | November 10, 1973 | No. B 880529 |
| "THE ICEMAN COMETH" | November 9, 1973 | November 17, 1973 | No. B 887955 |
| "CHARLES VARRICK" | November 16, 1973 | November 24, 1973 | No. B 884283 |
| "THE HOMECOMING" | November 30, 1973 | December 8, 1973 | No. B 888154 |
| "A KING IN NEW YORK" | December 21, 1973 | December 28, 1973 | No. B 894061 |
| "THE DAY OF THE DOLPHIN"/ "SERPICO" | January 11, 1974 | January 19, 1974 | No. B 899514 |
| "THE STING" | January 25, 1974 | February 2, 1974 | No. B 902115 |

# A-190

Case 6:17-cv-06061-CJS-MWP   Document 52-12   Filed 12/04/17   Page 33 of 33

VOL. 1 5 1 1 PAGE 3 4 3

-5-

| TITLE | PUBLICATION DATE | MAGAZINE DATE | ON ENTRY CLASS B, |
|-------|------------------|---------------|-------------------|
| "THE EXORCIST"/"PARTNER" | February 1, 1974 | February 9, 1974 | No. B 902119 |
| "THE MOTHER AND THE WHORE" | February 8, 1974 | February 16, 1974 | No. B 903846 |
| "THE LAST DETAIL" | February 15, 1974 | February 23, 1974 | No. B 920297 |
| "THIEVES LIKE US"/"THE THREE SISTERS" | February 22, 1974 | March 2, 1974 | No. B 920928 |
| "CONRACK" | March 8, 1974 | March 16, 1974 | No. B 912723 |

Harrison-Blaine of New Jersey, Inc. reserves the right, however, to reprint this material under its own name in any NEW REPUBLIC publication.

In witness whereof we have hereunto set our hand and seal this 15th day of May, 1974

HARRISON-BLAINE OF NEW JERSEY, INC.

Cherryl C. Holt, Permissions

WITNESS:

Doris Grumbach, Literary Editor

**A-191**

# EXHIBIT 10

**Henry Thayer**

| | |
|---|---|
| **From:** | Henry Thayer |
| **Sent:** | Thursday, October 10, 2013 11:59 AM |
| **To:** | Marianne Merola |
| **Subject:** | Stanley Kauffmann NYT obit |

Here's the full text of the New York Times obituary for Stanley Kauffmann that you asked me to send you:

http://www.nytimes.com/2013/10/10/movies/stanley-kauffmann-erudite-film-critic-dies-at-97.html?pagewanted=2&_r=1

NEW YORK TIMES

# Movies

## Stanley Kauffmann, Critic, Dies at 97; Spent a Half-Century at the Movies

*By WILLIAM GRIMES*
*Published: October 9, 2013*

Stanley Kauffmann, whose literate, tightly constructed movie reviews appeared in The New Republic for more than a half-century and set a standard for critical ease and erudition, died on Wednesday in Manhattan. He was 97.

His death was announced by Leon Wieseltier, the literary editor of The New Republic, who said the cause was pneumonia. Mr. Kauffmann wrote for the magazine until his last months.

Mr. Kauffmann went from being an actor and a stage manager with a Manhattan repertory company to a book editor and a writer of vaguely philosophical novels before becoming a film critic at The New Republic in 1958. His reflective, highly wrought essays appeared weekly for the next 55 years, with a break in 1966, when he was, briefly, the chief theater critic for The New York Times.

He also doubled as the theater critic for The New Republic from 1969 to 1979, but it was as a film critic that his influence was felt,

even if it was hard to define, since he belonged to no camp. His abiding interest in theatrical givens like theme, story, dramatic construction and character could make him seem old-fashioned, and set him in direct opposition to the auteur school, with its emphasis on the formal aspects of film. Readers came to him for reviews that read like mini-tutorials, the product of a deeply literary mind and a graceful pen.

Although resolutely high-minded, with a strong bias toward foreign art films, he was not elitist. He championed Jane Fonda early in her career and preferred Britain's lightly satirical Ealing comedies, like "Kind Hearts and Coronets," to the kitchen-sink realism of the British New Wave. He forgave many sins in otherwise negligible films if they had a progressive social message.

"He was a literate, quarterly sort of writer, and to the extent that he had disciples, they wrote in quarterlies," Phillip Lopate, the essayist and editor of "American Movie Critics: An Anthology From the Silents Until Now" (2006), said in an interview in 2011. "He had a good influence on film criticism by pushing it away from teenage gaga enthusiasm for the joy ride and toward adult responsibility."

Stanley Jules Kauffmann was born on April 24, 1916, in Manhattan. His father was a dentist, and the family was well off. After graduating from DeWitt Clinton High School in the Bronx, he enrolled at New York University, where he studied in the drama department, intending to become an actor. He received a bachelor's degree in 1935.

At the university he began writing and publishing dozens of one-act plays — potboilers with titles like "Father Spills the Beans" and "Right Under Her Nose." He also became an actor and stage manager with the Washington Square Players, a repertory company affiliated with the university (not to be confused with the group that later became the Theater Guild). The company performed

Shakespeare and Shaw for the most part, and in summers took up residence at a theater in Cooperstown, N.Y.

Internal dissension and the outbreak of World War II led to the company's demise, and Mr. Kauffmann turned to novels, beginning with "The King of Proxy Street" in 1941. His abiding themes were free will and moral choice, explored in "The Hidden Hero" (1949), "A Change of Climate" (1954), "Man of the World" (1956) and several others, many of which he wrote while working as an editor at Knopf, where he discovered the Walker Percy novel "The Moviegoer."

In 1944 his children's play "Bobino," about a child who can understand the language of animals, was produced at the New School for Social Research. It was notable chiefly for being Marlon Brando's first professional engagement, as a guard who gets hit on the head and falls down.

"He was wonderful," Mr. Kauffmann said on "The Dick Cavett Show" in 1979. "He had a way of falling that made you know that he'd thought about how to do it a different way from the way every other actor had ever done it, and yet his fall fit into what was going on. It wasn't merely freakish."

In 1943 Mr. Kauffmann married Laura Cohen, who died in 2012. He had no immediate survivors. He lived on West 15th Street in Manhattan "in a penthouse crowded with books and pictures," Mr. Wieseltier wrote in an e-mail.

An avid moviegoer, Mr. Kauffmann awoke to the possibility of film criticism in the early 1930s, when he read a review in The Nation by William Troy that compared scenes in two films stylistically. Suddenly, he wrote in an introduction to his anthology "American Film Criticism: From the Beginnings to Citizen Kane" (1972), he realized that film could be criticized as an art in the same way as literature or theater.

"I'm not sure that my jaw actually dropped, but that's the feeling I remember," he wrote.

In the late 1950s he began writing reviews and sent one to The New Republic, which soon offered him a permanent post. He found its smallish but earnest and well-educated readership ideally suited to his cool, intellectual style and literary grounding.

In a 1965 essay on Pauline Kael in Harper's Magazine, he declared allegiance to "a view of film as a descendant of the theater and literature, certainly *sui generis* but not without ancestors or cousin, to be judged by its own unique standards which are yet analogous to those of other arts: a view that is pluralistic, aesthetic but not anti-science, contemporary but not unhistorical, and humanistic."

His approach proved to be flexible and effective in tapping key qualities of a film.

Reviewing "L'Avventura," Michelangelo Antonioni's 1960 tale of two wealthy Romans drawn to each other as they search for the man's missing lover, he wrote: "The theme is upper-middle-class morality — not low enough to be corseted by suburban respectability, not high enough to be subject to *noblesse oblige.* These are Chekhov's people in Italy today; and, like Chekhov's people, we see them overripening before they drop. It is no accident that much of this film takes its indolent way across Sicily (Danilo Dolci's Sicily! — with disease and rooted poverty screaming just offstage)."

Mr. Lopate called him "the only film critic who did not take sides in aesthetic debates," adding: "He did not align with the auteurs or the anti-auteurs, and he was far too gentlemanly to side with a critic like John Simon. He didn't play favorites or fall in love the way Pauline Kael did, or to some extent Andrew Sarris."

He could, however, deliver a tart putdown. He called the director Robert Altman "a walking death sentence on the prospect of

4

American film," dismissed "Casablanca" as "a slushy romance" and called Luis Buñuel "a highly resourceful technician and a highly neurotic adolescent."

In January 1966, The Times installed him as chief drama critic. That same month he examined the predicament of gay male playwrights in an essay in The Times under the headline "Homosexual Drama and Its Disguises." While concurring with the view that gay playwrights tended to present a distorted picture of women and marriage, he argued that social and legal pressures made it impossible for a gay writer to deal openly with same-sex relationships.

"If he is to write of his experience, he must invent a two-sex version of the one-sex experience that he really knows," he wrote. He added, "It is we who insist on it, not he," and pleaded for a change in social attitudes.

Many readers bristled at his analysis, taking it as an attack on homosexuals and saying it questioned the ability of gay playwrights to create authentic heterosexual characters. In the ensuing decades the article has been singled out as an illustration of the intolerance prevalent at the time. He was replaced nine months later by Walter Kerr, who became available when The New York Herald Tribune ceased publication. Mr. Kauffmann returned to The New Republic, where he remained.

His film criticism was collected in "A World on Film" (1966), "Figures of Light" (1971), "Living Images" (1975), "Before My Eyes" (1980) and "Regarding Film" (2001). He also wrote two volumes of memoirs, "Albums of Early Life" (1980) and "Albums of a Life" (2007).

His last article printed in The New Republic appeared on Dec. 31, reviewing the films "Amour," "Barbara" and "Beasts of the Southern

**A-197**

Wild." His last review appeared on the magazine's Web site this August.

"Some titles embrace us," he wrote in that review. "They seem to have been waiting, affectionately quintessential — the heart of the matter. Such is 'Israel: A Home Movie.' It fits so snugly into a preconception we didn't know we had that we feel as if we have already seen the film, and want to see it again."

**A-198**

# EXHIBIT 11

From: Robert Marx rmarx@samuels.org
Subject: Re: Stanley photos
Date: October 11, 2013 at 10:12 AM
To: Leon Wieseltier lwieseltier@tnr.com
Cc: Robert Marx rmarx@samuels.org

Hi Leon,
Here's a 2nd attempt at Stanley's TNR letter. Maybe you can adjust it to get a sharper image.
Best -- Rob





On Oct 11, 2013, at 12:33 AM, Leon Wieseltier <lwieseltier@tnr.com> wrote:

Hi Rob

These are words of art. Thank you. They make me too happy to say. They allow me to do what to what the so come it with you, both safely and pleasurably.

L