# 18-2404

---

## United States Court of Appeals
## for the Second Circuit

---

THE ESTATE OF STANLEY KAUFFMANN,

*Plaintiff-Appellant,*

v.

ROCHESTER INSTITUTE OF TECHNOLOGY,

*Defendant-Appellee,*
*Third-Party Plaintiff.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

Case No 6:17-cv-06061-CJS-MWP
The Honorable Charles J. Siragusa, United States District Judge

---

**BRIEF OF THE DIGITAL JUSTICE FOUNDATION AS AMICUS CURIAE
IN SUPPORT OF NEITHER PARTY AND REVERSAL**

---

Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
andrew@digitaljusticefoundation.org

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
gregory@digitaljusticefoundation.org

## CORPORATE DISCLOSURE STATEMENT

The Digital Justice Foundation, Inc. ("DJF") [1] is a 501(c)(3)-registered, non-profit corporation that advocates about issues of digital justice.

The DJF has no parent corporation and no publicly held corporation has any ownership stake in it. The DJF issues no shares and no publicly held corporation pays 10% of more of its dues or exercises 10% or more of its voting power.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), the DJF certifies that (i) no party or party's counsel authored this brief in whole or in part; (ii) no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and (iii) no person other than the DJF and its counsel contributed money intended to fund the brief's preparation or submission.

DIGITAL JUSTICE FOUNDATION

# <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT ........................................................2

TABLE OF AUTHORITIES ...........................................................................4

INTEREST OF AMICUS CURIAE ..................................................................5

REPRODUCTION OF THE RELEVANT STATUTORY SECTIONS .................7

ISSUES PRESENTED....................................................................................8

STATEMENT OF THE CASE.........................................................................9

SUMMARY OF THE ARGUMENT ...............................................................17

ARGUMENT ..............................................................................................18

I.     Strong policy concerns favor reversing the district court's application of the parol evidence rule to the statutory question of authorship. ...........................18

     A. The application of the parol evidence rule below makes identifying public domain works more difficult. ........................................................18

     B. The application of the parol evidence rule below makes copyright licensing more difficult................................................................................19

II.    The district court erred when it applied the parol evidence rule and failed to consider evidence made relevant by the Copyright Act.....................................21

     A. Authorship is a statutory question, not a contract question.................22

     B. Strict adherence to the statute is appropriate to decide questions of authorship ...............................................................................................24

     C. The parol evidence rule does not apply to the question of authorship, but merely to the subsidiary question of contractual meaning.................25

CONCLUSION............................................................................................28

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS...29

CERTIFICATE OF SERVICE .......................................................................30

DIGITAL JUSTICE FOUNDATION
010001000100010010010001100100010001001010010001100100010001001010010001000110

# <u>TABLE OF AUTHORITIES</u>

**Cases**

Cmty. for Creative Non-Violence v. Reid,
    490 U.S. 730 (1989)............................................................... 9, 23, 24

Eldred v. Ashcroft,
    537 U.S. 186 (2003).....................................................................10

Fundamental Long Term Care Holdings, LLC v Cammeby's Funding LLC,
    20 N.Y.3d 438 (2013)..................................................................27

Habets v. Swanson,
    2000 MT 367 (Mont. 2000)..........................................................26

Playboy Enters. v. Dumas,
    53 F.3d 549 (2d Cir. 1995). .........................................................11

R/S Assocs. v. N.Y. Job Dev. Auth.,
    98 N.Y.2d 29 (2002)....................................................................26

Thomson v. Larson,
    147 F.3d 195 (2d Cir. 1998). ......................................................27


**Statutes**

17 U.S.C. § 101............................................................................. 10, 23
17 U.S.C. § 106...................................................................................10
17 U.S.C. § 201(a). ..................................................................... 9, 10, 11
17 U.S.C. § 201(b). ...........................................................................9, 22
17 U.S.C. § 201(d)(1).......................................................................10, 11
17 U.S.C. § 201(e). ..............................................................................11
17 U.S.C. § 205...................................................................................13
17 U.S.C. § 302............................................................................. 18, 19
17 U.S.C. § 302(a). ....................................................................... 10, 14
17 U.S.C. § 501(b). ..............................................................................10


**Treatises**

Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> (2018). ......... passim
Paul Goldstein, <u>Goldstein on Copyright</u> (3d ed. 2017). ........................ 9, 22, 23, 25

DIGITAL JUSTICE FOUNDATION
010001000100101001000110010001000100101001000110010010010010010010001000110

## <u>INTEREST OF AMICUS CURIAE</u>

The DJF is a 501(c)(3) nonprofit dedicated to protecting individual rights in digital spaces. As part of this mission, the DJF advocates for individual rights, including civil liberties, privacy rights, and intellectual-property rights, especially where such rights are implicated by the internet and other digital technologies.

The subject matter of this appeal implicates the DJF's mission because this appeal has significant consequences for public access to creative works. As an appeal about how to determine copyright authorship, this appeal will affect when works enter the public domain and how to license works that are still under copyright protection. This appeal also implicates the DJF's mission because its outcome will affect populations with lesser access to legal representation, namely individual content creators and individual content consumers.

Here, the DJF is concerned about the district court's extreme application of the parol evidence rule to the statutory question of copyright authorship. The district court took the parol evidence rule, a doctrine that simplifies the determination of contractual meaning, and reengineered it into a doctrine that would permit a contractual agreement to subvert a statute.

Unfortunately, as applied below, the parol evidence rule prevents consideration of the context of a work's creation. Instead, the district court's approach decides authorship entirely based on a document signed decades after a

5

DIGITAL JUSTICE FOUNDATION
0100010001000101000100011001100100010000101001000011001000100010001001010010001000110

work was created.  This approach is misguided because copyright authorship is a matter of statute, not contractual fiat.

Thus, the DJF urges this Court to vacate the decision below and to remand for reconsideration in light of all evidence bearing upon authorship.

DIGITAL JUSTICE FOUNDATION
010001000100101001000110010001000100101001000110010001000100101001001000110

## <u>REPRODUCTION OF THE RELEVANT STATUTORY SECTIONS</u>

- Section 101 of Title 17 of United States Code reads, in pertinent part:

  A "work made for hire" is—
  > (1)    a work prepared by an employee within the scope of his or her employment; or
  > (2)    a work specially ordered or commissioned for use as a contribution to a collective work […] if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. [….]

- Section 201 of Title 17 of United States Code reads, in pertinent part:

  (a)    Initial ownership.  Copyright in a work protected under this title vests initially in the author or authors of the work.  The authors of a joint work are co-owners of copyright in the work.

  (b)    Works made for hire.  In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

  [….]

  (d)    Transfer of ownership.
  > (1)    The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession.
  > [….]

DIGITAL JUSTICE FOUNDATION
01000100001001010010001100110001000100010010010001100100010001000100010010010001000110

## **ISSUES PRESENTED**

*Sua sponte*, the district court applied the parol evidence rule to justify its sole reliance on a 2004 contract in determining that movie reviews written by Stanley Kauffmann were works made for hire. The district court then refused to consider all other evidence relevant to that determination of authorship.

The issues presented are:

1. Whether the parol evidence rule applies to the statutory question of copyright authorship; and

2. Whether the parol evidence rule can exclude evidence relevant to copyright authorship.[2]

---

[2] The Estate of Stanley Kauffmann has challenged the application of the parol evidence rule to the contract. Pl.-Appellant's Br. at 37-39. Thus, this issue is not waived. The DJF writes separately to present a related but distinct legal theory explaining why the parol evidence rule was applied in error, namely that copyright authorship is a statutory matter, not a contractual one.

DIGITAL JUSTICE FOUNDATION

## STATEMENT OF THE CASE

**A.     Authorship and Ownership**

In copyright, authorship and ownership are distinct concepts. The two concepts—authorship and ownership—are related because ownership "vests initially" with the author. 17 U.S.C. § 201(a). However, authorship and ownership serve different functions in copyright law and throughout the Copyright Act.

Authorship is a statutory and constitutional matter. See 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.06[A] (2018). "It is a plain but sometimes overlooked truth that there are but three categories of copyright authorship—individual, joint and work made for hire." Paul Goldstein, Goldstein on Copyright §4.1 (3d ed. 2017).

By default, the author is the natural person who supplies the creative input to the work. 1 Nimmer on Copyright § 2.01[A][1]. Where, however, the work is a work made for hire, the employer or other person for whom the work was prepared "is considered" the author. 17 U.S.C. § 201(b).

Classifying the author, *i.e.*, determining whether a work is made for hire or not, carries "profound significance." Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989). Authorship determines not only initial ownership, but also the copyright's duration, 17 U.S.C. § 302(c), renewal rights, 17 U.S.C. § 304(a), and termination rights, 17 U.S.C. § 203(a). Id.

9

DIGITAL JUSTICE FOUNDATION

Most importantly, who is designated the *author* determines how long the copyright *owner* will enjoy certain rights of control over the copyrighted work, *i.e.*, rights against the public.  By default, copyright subsists for the life of the author and 70 years afterward.  17 U.S.C. § 302(a).  For works made for hire, however, copyright lasts "95 years from publication or 120 years from creation, whichever expires first."  Eldred v. Ashcroft, 537 U.S. 186, 196 (2003) (citing 17 U.S.C. § 302(c)).  Thus, determination of authorship affects when a work enters the public domain.

Distinct from authorship, copyright ownership confers control over the copyrighted work.  It is the "owner of copyright" who has the "exclusive rights to do and authorize" uses of the copyrighted works.  17 U.S.C. § 106.  It is the copyright owner who can sue for infringement, 17 U.S.C. § 501(b), and who is entitled to money damages from infringers, 17 U.S.C. § 504(b)-(c).  Cf. 17 U.S.C. § 101 (defining "[c]opyright owner" to include an owner of merely one of the exclusive rights listed in 17 U.S.C. § 106).

Authorship and ownership are related because ownership "vests initially" with the author.  17 USC § 201(a).  But, in contrast to authorship, copyright ownership "may be transferred in whole or in part by any means of conveyance," including by contract.  17 U.S.C. § 201(d)(1).  Copyright ownership may also be

DIGITAL JUSTICE FOUNDATION

bequeathed by will, 17 U.S.C. § 201(d)(1), or be taken through bankruptcy, 17 U.S.C. § 201(e).  Authorship cannot be.

The transferability of copyright ownership distinguishes it from copyright authorship.  Ownership is subject to transfer by contractual agreement, but authorship "is not subject to variation by agreement between the parties." 1 Nimmer on Copyright § 1.06[C].  Ownership can be contracted, but authorship is set by statute.

## B.    Effect of Authorship on Licensing

Identifying the current copyright owner is necessary to obtain a valid license for use of the work.  This in turn requires first identifying the author.

Ownership "vests initially" with the author.  17 U.S.C. § 201(a).  The author may then transfer his or her ownership to another.  17 U.S.C. § 201(d)(1). From there, the new owner may further transfer copyright ownership, and so on. Identifying the current copyright owner is, therefore, often a matter of tracing subsequent contractual agreements back to the author.  Cf. 17 U.S.C. § 201(a). ("vests initially").

To clear a copyrighted work for use, identifying the *author* has served as the starting point for a chain-of-title search to correctly identify the current copyright *owner*.  See e.g., Playboy Enters. v. Dumas, 53 F.3d 549, 553 (2d Cir. 1995)

11

DIGITAL JUSTICE FOUNDATION
010001000100101001100100010001001010010010001000100101001001000110

("Because the work-for-hire issue determines the author of the works, and therefore who can later transfer the copyright, we discuss that issue first.").

This chain-of-title search is high stakes because copyright is a strict-liability tort. If the would-be licensee cannot accurately identify the author, the entire chain-of-title analysis is suspect and this would-be licensee is exposed to liability. As a result, certainty as to authorship is essential to obtaining a valid license.

The colorful Congressional testimony of Irwin Karp, a venerable copyright attorney, expresses just how essential accurately knowing authorship is to licensing:

> Anybody who is going to make a motion picture […] will carefully make certain that the chain of title started from and derived from the author of the work. And before he invests his two or three or four million dollars he's going to make that search.
>
> [….]
>
> Any person who wants to purchase from him can satisfy himself through the chain of documented conveyance that he is getting his rights from the rightful owner.

15 Nimmer on Copyright COPYRIGHT LAW REVISION (2018) (quoting from the Transcript of Meeting on Preliminary Draft for Revised U.S. Copyright Law, Oct. 8, 1963).

Congress has attempted to facilitate the accurate identification of a downstream copyright owner. For example, Congress tried to make tracing the

DIGITAL JUSTICE FOUNDATION

chain of title easier by establishing a non-mandatory procedure for recording copyright transfers.  See 17 U.S.C. § 205.

Unfortunately, this procedure depends upon correctly identifying the copyright author in the first place.  Without being able to accurately identify the author, copyright's recording statutes "cannot […] carry any assurance that a stranger to the recorded chain of title may not prove to be the true owner of the work by reason of a prior creation that had been copied without authority." 3 Nimmer on Copyright § 10.13[B] (2018).  Thus, although Congress has undertaken significant efforts to facilitate identifying a copyright owner, these efforts depend upon being able to accurately identify the author of a work.

Moreover, the licensing risks created by difficulties in identifying an author cannot easily be resolved by contract.  The usual methods for limiting risk in a contract are of little help when licensing a copyright, especially when licensing from a smaller copyright holder.

Indemnification is one traditional way to mitigate risk, but an "indemnity is only as valuable as the size of the writer's bank account."  6 Nimmer on Copyright § 23.03 n.18 (2018).  Insurance might reimburse for judgments of money damages against a licensee, but may not cover lost investments in the work or lost revenues from not being able to exploit the work.  See 6 Nimmer on Copyright § 23.04 n.21 (2018).

13

DIGITAL JUSTICE FOUNDATION

Finally, even full financial remuneration does not eliminate the risk

and hassle of a lawsuit.  After all, a licensee is buying "rights, not a lawsuit."

6 <u>Nimmer on Copyright</u> § 23.03 n.18 (2018).

Thus, clarity of authorship is vital to the copyright licensing

ecosystem.


**C.    Effect of Authorship on Public Domain**

In addition, clarity of authorship is vital to determining when a work enters

the public domain.

Who the author is determines when the owner's copyrights expire.  <u>See</u> 17

U.S.C. § 302.  This is because authorship determines the term of copyright

protection.  <u>Id.</u>  Thus, uncertainty about authorship also creates uncertainty about

when a copyright expires and enters the public domain.

By default, a copyrighted work is protected for the life of the author and then

70 years thereafter.  17 U.S.C. § 302(a).  A work made for hire, however, is

protected for 95 years from publication or 120 years from creation, whichever

comes first.  17 U.S.C. § 302(c).  Thus, the question of authorship determines term

length.

A difference in authorship could create a significant difference in term

length.  For example, suppose a 30-year-old author creates a work, publishes it,

DIGITAL JUSTICE FOUNDATION

and then lives to be 80-years-old.  Her work would be protected for 120 years, or her lifetime and then seventy years thereafter, *i.e.*, life plus 70.  If, however, that same creator's work was instead a work made for hire, it would only be protected for 95 years.  In this example, whether the work is a work made for hire would affect the term length by 25 years.

As this example demonstrates, authorship affects when works enter the public domain.  As a result, uncertainty about authorship creates significant uncertainty about the scope of the public domain.  Importantly, authorship affects the public at large.  And, certainty about authorship affects the public's ability to make use of works in the public domain.


**D.** **The Decision Below**

On cross-motions for summary judgment, the district court held that copyrighted works written by Stanley Kauffmann and published in The New Republic were works made for hire.  Decision & Order, Dkt. #73 at 8 (Aug. 8, 2018).  Plaintiff-Appellant, the Estate of Stanley Kauffmann ("Estate"), could not sue Defendant-Appellee, the Rochester Institute of Technology ("Rochester") because the Estate was *not* the copyright owner.  See id. at 2, 8.

Although the facts were "mostly undisputed," id. at 4, the district court did not consider the relevant facts apart from a 2004 contract signed by Mr.

DIGITAL JUSTICE FOUNDATION

Kauffmann and his editor at <u>The New Republic</u>, <u>id.</u> at 5.  Instead, the district court applied the parol evidence rule.  <u>Id.</u>  Incredibly, it did so *sua sponte* and without a request for supplemental briefing, even though it characterized the parol evidence rule as the "elephant in the room" that neither side had addressed.  <u>Id.</u>

The district court did not limit its application of the parol evidence rule to the determination of the 2004 contract's meaning.  <u>See id.</u> at 7-8.  Instead, it applied the parol evidence rule to exclude consideration of evidence that bore on the statutory question of whether the articles at issue were works made for hire. <u>See id.</u>

By applying the parol evidence rule, the district court failed to consider evidence probative of whether Mr. Kauffmann had, in fact, agreed *prior* to the creation of the works, or at any time prior to 2004, that articles he wrote would be works made for hire.  <u>Id.</u> at 7.  This excluded evidence includes Mr. Kauffmann's statements to others indicating his belief that he owned the copyrights in the movie reviews and his practice of granting licenses in these movie reviews to others.  <u>Id.</u>

16

DIGITAL JUSTICE FOUNDATION
01000100001001010010001100010000100101001000011001000010001001010010001100

# <u>SUMMARY OF THE ARGUMENT</u>

1.  There are bad policy consequences to affirming the application below of the parol evidence rule to copyright questions.  The public interest weighs in favor of reversing the district court's application of the parol evidence rule to statutory questions of copyright.  Also, strong reliance interests favor remand.

2.  The parol evidence rule might help discern the meaning of the 2004 contract, but the Copyright Act governs the ultimate question of whether a work is made for hire.  Authorship is a statutory question, not a contractual question.  Other courts have wisely not applied the parol evidence rule when determining collateral questions beyond contractual meaning.

17

DIGITAL JUSTICE FOUNDATION
0100010001001010010001100110001000100101001000100110010000100001001001000110

## **ARGUMENT**

I. **Strong policy concerns favor reversing the district court's application of the parol evidence rule to the statutory question of authorship.**

There are key public interests that are threatened by the district court's radical extension of the parol evidence rule to statutory questions of copyright authorship. Indeed, the district court's unprincipled application of the parol evidence rule below entirely discounts the effects that copyright authorship has on the public at large.

### *A. The application of the parol evidence rule below makes identifying public domain works more difficult.*

The public has an interest in knowing with certainty when copyright protection ends for a particular work. Because authorship determines copyright duration, 17 U.S.C. § 302, the public has an interest in the accurate and clear determination of copyright authorship. If the public can easily determine term length, the public can freely use the work when it enters the public domain. If, however, the public cannot determine term length, the public cannot know the scope of the public domain.

The district court's application of the parol evidence rule would make authorship determinations less certain. The application of the parol evidence rule would subject authorship determinations to obscure contracts and exclude all other

18

DIGITAL JUSTICE FOUNDATION
010001000100101001000110011001000100010100100001100100001000100010010010100010

relevant evidence.  In turn, because term length is determined by who the author is, 17 U.S.C. § 302, the application of the parol evidence rule would make determinations of term length less predictable.  This additional uncertainty will have a chilling effect upon uses of works in the public domain because the scope of the public domain will become less certain.

In fact, because the parol evidence rule would make *all* other facts related to the work's creation into "extrinsic evidence," affirming here would effectively transform authorship into a purely contractual question.  Under such a holding, determining authorship would frequently necessitate litigation and discovery into private contracts.  Additionally, savvy litigants could game the parol evidence rule by signing mid-litigation contracts to exclude evidence that cuts against their desired authorship determination.

Applying the parol evidence rule to the question of copyright authorship discredits the public's interest in the public domain.  Obscuring the public domain, however, is *not* the place of the parol evidence rule.

## B. *The application of the parol evidence rule below makes copyright licensing more difficult.*

The public also has an interest in certainty of authorship because such certainty facilitates the licensing of works.  Licensing permits other creators to

DIGITAL JUSTICE FOUNDATION

build off works and permits the public to enjoy greater distribution and performance of works.

The unprincipled extension of the parol evidence rule by the district court, however, would make chain-of-title analysis, which is essential to licensing, far riskier and more difficult. Easy licensing is in the public interest because the Copyright Act has the purpose of not only getting new works created, but also facilitating works' dissemination throughout society.

Beyond the public interests, there are profound questions of fairness and strong reliance interests potentially at stake in this appeal. When Stanley Kauffmann licensed his works to others, they relied upon those licenses. Before 2004, even an exhaustive chain-of-title search would not have helped them ascertain copyright authorship under the district court's analysis. That is because the contract that purportedly made Mr. Kauffmann's works into works made for hire was not signed until 2004. The licensees' reliance interests, and the rank unfairness of changing authorship decades later, should weigh heavily on this Court as it rules. More broadly, allowing *ex post* contracts to determine authorship will significantly disrupt the licensing ecosystem.

As the district court applied the parol evidence rule, there is nothing Mr. Kauffmann's existing licensees could have done to definitively determine authorship prior to 2004. By contrast, there is much that the Rochester Institute of

20

DIGITAL JUSTICE FOUNDATION
010001000100101001000110010001000101001010010010001100100010001001001001001000110

Technology ("Rochester") could have done to avoid infringing. Had Rochester done its due diligence, it could have known that there were serious questions about the authority of Robert Cardullo, the third-party defendant, to authorize the reproduction of Mr. Kauffman's articles in a book. Rochester is the least cost avoider here.

Ironically, affirming the district court's application of the parol evidence rule would be harmful to those who often license works, including Rochester. Relying upon the parol evidence rule to determine authorship would make preventative due diligence—copyright clearance through a chain-of-title analysis—more treacherous.

Thus, there are strong policy reasons to reverse the application of the parol evidence rule to the question of copyright authorship. Not only was it bad policy, but it was also bad law, as discussed below.

## II.     The district court erred when it applied the parol evidence rule and failed to consider evidence made relevant by the Copyright Act.

Authorship is a statutory matter, *i.e.*, a matter determined ultimately by statute. Moreover, the Supreme Court has clarified that the statutory issue of authorship is also a constitutional issue. See 1 Nimmer on Copyright § 1.06[C] (discussing constitutional implications of authorship on the work made for hire

21

DIGITAL JUSTICE FOUNDATION

doctrine). These statutory and constitutional parameters of authorship cannot simply be contracted around.

The district court erred when it treated the issue of authorship as a matter of pure contract. It was error for the district court to rely on the parol evidence rule, a doctrine of contract law, to determine the issue of authorship. Perhaps, the parol evidence rule speaks to the meaning of the 2004 contract, but the parol evidence rule cannot exclude other evidence that weighs upon the determination of authorship as established in the Copyright Act.

### A.  *Authorship is a statutory question, not a contract question.*

"It is a plain but sometimes overlooked truth that there are but three categories of copyright authorship—individual, joint and work made for hire." Paul Goldstein, <u>Goldstein on Copyright</u> §4.1 (3d ed. 2017).  Where a work meets the statutory definition of work made for hire, the "person for whom the work was prepared is considered the author."  17 U.S.C. §201(b).

Whether a work qualifies under §101 as a work made for hire is not determined by contract law, let alone by agreement between the parties.  Rather, the issue of authorship boils down to specific statutory requirements: "Since the 1976 Act imposes specific requirements for a work to qualify as […] a work for

DIGITAL JUSTICE FOUNDATION
0100010001001010010001100100010001001001000110010001000100101001001000110

hire, a work's failure to meet the requirements […] means that by default the work is one of individual authorship." <u>Goldstein on Copyright</u>, §4.1.

The definition of work made for hire is set forth in Section 101 of the Copyright Act. Specifically, Section 101(2) explicitly identifies three necessary elements of a work for hire that is not made by an employee:

(1) a work is "specially ordered or commissioned;"

(2) "for use as" one of the nine qualifying types of works enumerated in Section 101(2); and

(3) that the "parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."

17 U.S.C. § 101 (defining "work made for hire"). While the existence of a written contract may speak to whether the third element of this statutory definition is satisfied, a contractual fiat amongst parties does not ultimately answer whether a work is a work made for hire.

In the case of non-employees, a work that does not fall into one of nine enumerated types cannot be a work made for hire, regardless of the parties' contract or mutual assent. <u>See</u> <u>Cmty. for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 748 (1989) ("only enumerated categories of commissioned works may be accorded work for hire status."). Likewise, parties cannot simply stipulate by

DIGITAL JUSTICE FOUNDATION
0100010000100101000100011000100001000101001000100001000100100101001000110

contractual agreement that a work be treated like a work made for hire if that work was not specially ordered or commissioned within the meaning of the statute.

A work that does not meet the statutory definition of work made for hire pursuant to Section 101 cannot "become" a work made for hire by contractual fiat. Whether a work is a work made for hire turns on whether all three elements of §101's definition is satisfied. Thus, the question of authorship is not a question of contract law, but rather a statutory question.

### B. Strict adherence to the statute is appropriate to decide questions of authorship

Strict adherence to the specific requirements of the statute is appropriate when determining a work's authorship status as a work made for hire. Indeed, the Supreme Court notes that Section 101's "legislative history underscores the clear import of the statutory language." Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 748 (1989).

The Supreme Court specifically identified Section 101's definition of work made for hire as a "carefully worked out compromise aimed at balancing legitimate interests." Id. It added that "strict adherence to the language and structure of the Act is particularly appropriate where, as here, a statute is the result of a series of carefully crafted compromises." Id. at 748 n.14.

24

Whether a work is a work made for hire is a question of authorship, determined by the Copyright Act's specific statutory requirements. Strict adherence to the statute is mandatory. And the statute, in Section 201(b), places authorship outside the scope of contractual agreements after creation of a work. See Goldstein on Copyright §4.3 ("But, even if the employer and employee agree that ownership of the copyright in a work made for hire shall initially vest in the employee, the employer remains the work's 'author' for all purposes under the Act.").

Authorship "is not subject to variation by agreement between the parties." 1 Nimmer on Copyright § 1.06[C] (2018). Authorship is set by statute.

### C. *The parol evidence rule does not apply to the question of authorship, but merely to the subsidiary question of contractual meaning.*

In its opinion below, the district court writes that "neither side ever addressed what the Court would characterize as the 'elephant in the room,' the parol evidence rule." Decision & Order, Dkt. #73 at 8 (Aug. 8, 2018). However, the parties' decision not to rely on that doctrine manifests more wisdom than the court gave them credit for. After all, the parties were disputing the statutory question of authorship, not a breach of contract.

The court below described the 2004 contract as follows:

DIGITAL JUSTICE FOUNDATION

25

> On its face, it is unambiguous. Both parties agree that since he started writing for the journal, "all articles [he has] written for <u>The New Republic</u> have been 'works made for hire,' as that term is defined under the US Copyright laws."

<u>Id.</u> at 7. (brackets in original). Deciding that the letter was a contract and that the terms were unambiguous, the district court held that "the Estate's submission of extrinsic evidence regarding the Letter is admissible only if it is permitted under the parol evidence rule." <u>Id.</u> It was at this last step that the district court erred.

The use of a contract doctrine to determine authorship is misplaced because authorship is not a contractual matter, but rather a statutory matter. The contract is *a piece* of evidence in answering the authorship question, but the contract's meaning is not dispositive of the authorship question. Thus, it was error to use the parol evidence rule to dispose of this case. <u>See, e.g.</u>, <u>Habets v. Swanson</u>, 2000 MT 367, P21 (Mont. 2000) ("[T]he parol evidence rule was inapplicable because extrinsic evidence was not admitted to interpret or modify a written contract. Rather, the written contract was collateral to the dispositive issue of either case.").

As the New York Court of Appeals has stated, "parol evidence is not admissible to create an ambiguity in a written agreement." <u>R/S Assocs. v. N.Y. Job Dev. Auth.</u>, 98 N.Y.2d 29, 33 (2002) (emphasis added). The Estate's evidence, however, is not primarily attacking the meaning of the agreement. Rather, it is evidence that is probative of the statutory question of authorship,

26

DIGITAL JUSTICE FOUNDATION

namely whether the works at issue were made for hire within the meaning

Section 101 of the Copyright Act.

This other evidence introduced by the Estate may very well be extrinsic

evidence as to the contract, but it is not extrinsic evidence as to the statutory

question of authorship. See Fundamental Long Term Care Holdings, LLC v

Cammeby's Funding LLC, 20 N.Y.3d 438, 444-445 (2013) (noting parties'

concession "that the parol evidence rule has no bearing" where the extrinsic

evidence was not invoked to "explain ambiguous terms in the option agreement").

The Second Circuit has sagaciously noted this distinction in the context of

joint-authorship, noting that "co-authorship intent does not turn solely on the

parties' own words or professed state of mind." See Thomson v. Larson, 147 F.3d

195, 201 (2d Cir. 1998). Rather, the determination of authorship requires "a more

nuanced inquiry into factual indicia of ownership and authorship." Id. It is this

more nuance inquiry that the district court erroneously avoided when it relied upon

the parol evidence rule to decide the question of authorship.

The district court's reliance on the parol evidence rule was not appropriate to

determine this issue of authorship. That reliance caused the district court both to

disregard factual indicia of authorship and to fail to conduct an appropriate inquiry

into whether the works at issue qualified as works made for hire under Section 101.

DIGITAL JUSTICE FOUNDATION

Here, the parol evidence rule is immaterial to the issue of authorship, and the parties were wise to avoid relying on it, below.

## <u>CONCLUSION</u>

This Court should reverse on the parol evidence rule and remand for reconsideration in light of all evidence relevant to the determination of authorship.

October 9, 2018

Respectfully submitted
*/s/ Andrew Grimm*
Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
andrew@digitaljusticefoundation.org

*Counsel for the DJF*

28

DIGITAL JUSTICE FOUNDATION

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

Excluding the parts of the document exempted by Rule 32(f) and local rule, this motion contains 4416 words.

This brief has been prepared in Microsoft word using Times New Roman, size 14-point font.

*/s/ Andrew Grimm*
Andrew Grimm

DIGITAL JUSTICE FOUNDATION
01000100010010100010001100100010001001010010001100100010001001010010001000110

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 9, 2018, I electronically filed the foregoing with the Clerk of this Court using this Court's CM/ECF system. Participants in this case who are CM/ECF users, or represented by CM/ECF users, are hereby served by CM/ECF.

*/s/ Andrew Grimm*
Andrew Grimm

DIGITAL JUSTICE FOUNDATION